**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ROBERT HUNTER BIDEN,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED STATES INTERNAL REVENUE<br>SERVICE,<br><br>                    Defendant. | Civil Action No. 1:23-cv-02711-TJK<br><br>**AMENDED COMPLAINT FOR<br>DECLARATORY RELIEF AND<br>DAMAGES** |

**AMENDED COMPLAINT**

Plaintiff Robert Hunter Biden ("Mr. Biden" or "Plaintiff"), by and through his undersigned counsel, brings this action against the United States Internal Revenue Service (the "IRS" or "Defendant"), to seek redress for the (1) unlawful disclosure of Mr. Biden's confidential return information in violation of 26 U.S.C. § 6103 and 28 U.S.C. § 7431, and (2) willful and intentional failure to establish appropriate administrative, technical, and/or physical safeguards over the IRS's records system to insure the security and confidentiality of Mr. Biden's confidential return information in violation of the Privacy Act, 5 U.S.C. § 552a.

1.      Mr. Biden is the son of the President of the United States.  He has all the same responsibilities as any other American citizen, and the IRS can and should make certain that he abides by those responsibilities.  Similarly, Mr. Biden has no fewer or lesser rights than any other American citizen, and no government agency or government agent has free reign to violate his rights simply because of who he is.  Yet the IRS and its agents have conducted themselves under a presumption that the rights that apply to every other American citizen do not apply to Mr. Biden.  This lawsuit is not about the legitimacy of the IRS investigation of Mr. Biden over the past five

years or any decision to penalize Mr. Biden for any failure to comply with his obligations under the tax laws.  This lawsuit is not about the proper workings of the whistleblower statute and process, nor an official using those procedures properly to make disclosures to authorized government officials.  Rather, the lawsuit is about the decision by IRS employees to disregard their obligations and, either personally or by and through their directions to their authorized representatives, to repeatedly and intentionally publicly disclose and disseminate Mr. Biden's confidential return information outside the exceptions for making disclosures under the law.

2.     Mr. Biden has cooperated fully with the IRS investigation.  He did so with the expectation and understanding that the IRS was committed to compliance with its legal obligations to safeguard and protect his confidential return information from unauthorized disclosure under Section 6103 of the Internal Revenue Code as well as the Privacy Act, 5 U.S.C. § 552a.  Mr. Biden has learned to his detriment that this is not the case.

3.     Rather, IRS agents have targeted and sought to embarrass Mr. Biden via public statements to the media in which they personally or by and through their directions to their authorized representatives disclosed confidential return information about a private citizen's tax matters.  While Mr. Biden has been the victim of various leaks regarding the IRS investigation previously, most recently, two IRS agents—Mr. Gary Shapley and Mr. Joseph Ziegler—both personally and by and through their directions to their attorneys raised the stakes to unprecedented levels with their numerous public appearances and statements that blatantly violated Section 6103 of the Internal Revenue Code by engaging in a campaign to publicly smear Mr. Biden.

4.     This assault on Mr. Biden's rights involved the unauthorized public disclosure of his confidential return information during more than 20 nationally televised and non-congressionally sanctioned interviews and numerous public statements by Mr. Shapley or Mr.

Ziegler personally, or by and through their directions to their counsel in these public appearances. No doubt, with over 27 years of experience in the IRS between them and after hearing admonitions from Congress, Mr. Shapley and Mr. Ziegler knew that making any person aware of any individual's confidential return information in any manner constitutes a violation of federal tax law. *See* 26 U.S.C. § 6103(b)(8). Yet, these IRS agents personally and by and through their directions to their attorneys willfully disregarded federal tax law, undermining Americans' faith in the IRS's dedication to safeguarding confidential return information and maintaining the purported confidentiality of its investigations. These agents' putative "whistleblower" status cannot and does not shield them from their wrongful conduct in making unauthorized public disclosures that are not permitted by the whistleblower process. In fact, a "whistleblower" is supposed to uncover *government* misconduct, not the details of that employee's opinion about the alleged wrongdoing of a *private* person.

5.      Beginning in April 2023, Mr. Shapley's attorney acting on Mr. Shapley's behalf as his authorized representative made the rounds on various news outlets, including CBS and Fox News, to publicly disclose Mr. Biden's confidential return information, using information provided by Mr. Shapley for the purpose of making such unauthorized disclosures. The information disclosed through Mr. Shapley's counsel went beyond the mere existence of an IRS inquiry or investigation. In fact, he alleged that Mr. Biden's IRS investigation was an example of preferential treatment and politics improperly infecting decision making and communicated Mr. Shapley's assertion that supposed anomalies had been identified in the investigative process. This information was disclosed before the matter was the subject of public litigation.

6.      Then, in the days leading up to Mr. Shapley's closed-door testimony before the United States House of Representatives, Committee on Ways and Means, Mr. Shapley himself

agreed to an interview with CBS News.  Similar to the confidential return information disclosed at his direction by his attorney as his authorized representative, Mr. Shapley disclosed Mr. Biden's confidential return information, including details regarding the IRS's investigation into Mr. Biden, the purported "deviations in the investigative process," and the Department of Justice's ("DOJ") involvement in that investigation—all information that is squarely prohibited from disclosure pursuant to 26 U.S.C § 6103(b)(2)(A).

7.     In late May and early June 2023, respectively, IRS agents Shapley and Ziegler testified in closed-door sessions before the Committee on Ways and Means, well before the matter was the subject of public litigation.  Whatever basis the agents had for invoking their ability to speak to Congress, the transcripts from their testimony are clear: the Committee on Ways and Means "consider[ed] th[e] entire interview and the resulting transcript as protected confidential information under Section 6103….  Given the statutory protection for this type of information, we ask that you not speak about what we discuss in this interview to individuals not designated to receive such information."  The Committee on Ways and Means even "remind[ed] the witness and everyone in the room that 26 U.S.C. Section 7213 makes it unlawful to make any disclosure of returns or return information not authorized by Section 6103.  Unauthorized disclosure of such information can be a felony punishable by fine or imprisonment."  The Committee on Ways and Means further instructed that Mr. Shapley and Mr. Ziegler "not speak about what we discuss in this interview to individuals not designated to receive such information."  A campaign of numerous public news appearances is "information not authorized by Section 6103."

8.     Despite these straightforward directions and explicit reminders of the repercussions that would result from violations, these IRS agents and the Chairman of the Committee on Ways and Means, Congressman Jason Smith, proceeded in their public campaign to selectively disclose

certain confidential return information to embarrass and inflict harm on Mr. Biden.  The public disclosure of Mr. Biden's confidential return information in the face of these unambiguous admonitions included multiple interviews of Mr. Shapley that aired, and continue to air, on Fox News, CBS, The Megyn Kelly Show, and John Solomon Reports, and interviews of Mr. Ziegler that aired on CNN, The Megyn Kelly Show, and John Solomon Reports.  During these interviews, Mr. Shapley and Mr. Ziegler provided unsubstantiated and selectively chosen allegations of nefarious and potentially criminal behavior.  These disclosures went beyond confirming the existence of an investigation or audit; rather, interviewers provided detailed allegations from the investigative case file regarding the specific tax years under investigation, the amounts of deductions, the nature of those deductions, and allegations of liability regarding specific tax years and the amount thereof, that could only be known to them based on a review of the confidential return information in Mr. Biden's administrative files, including, but not limited to, the physical tax returns themselves.  As if disclosing these unsubstantiated allegations were not enough, counsel for Mr. Shapley and Mr. Ziegler rejoined the media circus to serve as their clients' authorized spokespeople, communicating their clients' false accusations, repeating their unsubstantiated claims, and blatantly violating the federal law protecting confidential return information in the process.

9.      Then Mr. Shapley and Mr. Ziegler went a step further and disclosed *new* allegations that had not previously been released by the Committee on Ways and Means.  For example, in a July 20, 2023, interview with Jake Tapper of CNN, Mr. Ziegler alleged for the first time publicly that he had recommended *felony* and misdemeanor charges for Mr. Biden for tax year 2017.  Under oath, Mr. Ziegler had previously stated that he only recommended misdemeanor charges for Mr. Biden for tax year 2017.  Similarly, in an August 1, 2023, interview that aired on Fox News, Mr.

Shapley alleged for the first time publicly that Jason Jones, FBI General Counsel, could substantiate Mr. Shapley's allegations regarding Mr. Biden's confidential return information but had not done so because he received a letter from the Department of Justice "basically telling him not to talk." These public statements fall well outside the bounds of the whistleblower protections found in Section 6103(f) of the Internal Revenue Code.

10.     Mr. Biden disputes many of the allegations made by Mr. Shapley, Mr. Ziegler, Mr. Smith, and those made at their directions by and through their authorized representatives. Nonetheless, the harm he has suffered—reputationally and emotionally—from their wrongful conduct has been staggering. This action seeks to force compliance with federal tax and privacy laws and forestall the continued propagation of unsubstantiated allegations concerning the unauthorized, unlawful disclosure of Mr. Biden's confidential return information.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1340, 1346, 26 U.S.C. § 7431(a), and 5 U.S.C. § 552a(g)(1)(D).

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1) because the defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred here.

## THE PARTIES

13.     Plaintiff Robert Hunter Biden is a private citizen of the United States and a resident of Los Angeles, California.

14.     Defendant Internal Revenue Service is a bureau of the United States Department of the Treasury and is responsible for the administration and enforcement of the Internal Revenue Code.

15.     Non-party Jason Smith is a member of the United States House of Representatives for Missouri's 8th congressional district and the Chairman of the Committee on Ways and Means.

16.     Non-party Gary Shapley has been a supervisory special agent with the IRS Criminal Investigation for over 14 years and a registered Republican.

17.     Non-party Joseph Ziegler has been a special agent with the IRS Criminal Investigation for over 13 years.

18.     Non-party Attorney A is an attorney who represents Mr. Shapley ("Shapley Representative A") in connection with his IRS whistleblower testimony and public statements related to Mr. Biden's confidential return information.  Shapley Representative A previously worked as Associate Counsel for the Office of the White House Counsel under former President Donald J. Trump.  At all relevant times, Shapley Representative A acted as an authorized agent of Mr. Shapley and, therefore, had apparent and actual authority to act on Mr. Shapley's behalf, including with the improper disclosure of confidential return information provided to Shapley Representative A by Mr. Shapley for such purpose.

19.     Non-party Attorney B is an attorney who is President of Empower Oversight and represents Mr. Shapley and Mr. Ziegler ("Shapley-Ziegler Representative B") in connection with their IRS whistleblower testimony and their public statements related to Mr. Biden's confidential return information.  Shapley-Ziegler Representative B recently announced he is running as a GOP candidate for West Virginia state House, and previously worked for the United States Office of Special Counsel under former President Donald J. Trump.  At all relevant times, Shapley-Ziegler Representative B acted as an authorized agent of Mr. Shapley and Mr. Ziegler and, therefore, had apparent and actual authority to act on Mr. Shapley's or Mr. Ziegler's behalf, including with the

improper disclosure of confidential return information provided to Shapley-Ziegler Representative B by Mr. Shapley or Mr. Ziegler for such purpose.

## FACTUAL ALLEGATIONS

20.     Mr. Biden has been subjected to extraordinary scrutiny by the media and court of public opinion during the course of the IRS investigation.  In the past year, however, that scrutiny has escalated due to unprecedented leaks by people involved in the investigation of him and by the improper disclosures from IRS employees who are required by statute to protect and safeguard Mr. Biden's confidential return information.  These public statements disclosing confidential return information began, at the latest, in April 2023, when IRS agents working on Mr. Biden's case began giving public interviews and prior to any congressional testimony regarding Mr. Biden's confidential return information.  Despite clear warnings from Congress that they were prohibited from disclosing the contents of their testimony to the public in another forum, Mr. Shapley and Mr. Ziegler's testimony only emboldened their media campaign against Mr. Biden. And finally, since their public testimony before the House of Representatives on July 19, 2023, the agents have become regular guests on national media outlets and have made new allegations and public statements regarding Mr. Biden's confidential return information that were not previously included in their transcripts before the Committee on Ways and Means.

**I.     IRS Personnel Willfully Disclosed Mr. Biden's Confidential Tax Information *Prior To* Any Public Disclosure by the Committee on Ways and Means.**

21.     On or around April 19, 2023, Shapley Representative A, on behalf of Mr. Shapley, sent a letter to various members of Congress, including Mr. Smith, in which he disclosed confidential return information provided to him by his client for such purpose and stated that his client, then unnamed but now understood to be Mr. Shapley, "has been overseeing the ongoing and sensitive investigation of a high-profile, controversial subject since early 2020…."  The letter

requested that Mr. Shapley be given the opportunity to testify before certain congressional oversight committees and promised that his client's testimony would "(1) contradict sworn testimony to Congress by a senior political appointee, (2) involve failure to mitigate clear conflicts of interest in the ultimate disposition of the case, and (3) detail examples of preferential treatment and politics improperly infecting decisions and protocols that would normally be followed by career law enforcement professionals in similar circumstances if the subject were not politically connected."  Various media outlets, including NBC News, CBS News, and the Wall Street Journal, immediately reported that the letter was referring to the investigation of Mr. Biden.  These public statements in the April 19, 2023, letter disclosed Mr. Biden's confidential return information provided to Mr. Shapley's counsel for purposes of such unauthorized disclosure, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing and the determination of the possible existence of liability of Mr. Biden.

22.     On or around April 19, 2023, John Solomon of the Spotify podcast John Solomon Reports interviewed Shapley Representative A.  During the John Solomon Reports interview, Shapley Representative A, on behalf of Mr. Shapley, publicly disclosed Mr. Biden's confidential return information provided to Shapley Representative A by Mr. Shapley for purposes of such unauthorized disclosure.

23.     At the outset of the interview, Mr. Solomon described "a new whistleblower raising concerns about political interference in the Hunter Biden investigation" and introduced Shapley Representative A as the "lawyer for that whistleblower."  Shapley Representative A thanked Mr. Solomon for having him on John Solomon Reports and proceeded with the interview, giving any reasonable listener the impression that Shapley Representative A was discussing the IRS's investigation into Mr. Biden and disclosing his confidential return information.   Shapley

9

Representative A stated that his client, then unnamed but now understood to be Mr. Shapley, "has been working diligently on a high-profile case… and that's for others to put that together… and he would attend meetings in this investigation and he was concerned about some statements by a senior political appointee from the Department of Justice that contradicted what he knew to be the facts of the case."  Shapley Representative A explained that Mr. Shapley attended meetings "with both agents and prosecutors" regarding Mr. Biden's confidential return information.  These statements containing information provided to Shapley Representative A by Mr. Shapley for this purpose publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing and the determination of the possible existence of liability of Mr. Biden.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

24.     On or around April 19, 2023, Shapley Representative A appeared in an interview with Jim Axelrod of CBS News on behalf of Mr. Shapley and discussed Mr. Biden's confidential return information provided to Shapley Representative A for purposes of making such unauthorized disclosures.  Shapley Representative A communicated the allegation of his client, then unnamed but understood to be Mr. Shapley, that "typical steps that a law enforcement investigator would take were compromised because of political considerations."  Shapley Representative A also stated that "the things [Mr. Shapley's] been through are very well documented in emails and other communications with the Department of Justice."  These statements made on behalf of Mr. Shapley publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing and the determination of the possible existence of liability of Mr. Biden.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

25.     On or around April 20, 2023, Shapley Representative A appeared in an interview with Bret Baier of Fox News on behalf of Mr. Shapley and discussed Mr. Biden's confidential return information.  During that interview, Mr. Baier stated that "we have sources telling us that this has to do with the Hunter Biden investigation."  Shapley Representative A did not object or otherwise address this characterization and, instead, proceeded with the interview, giving any reasonable listener the impression that Shapley Representative A was discussing the IRS's investigation into Mr. Biden and his confidential return information.  In other portions of the interview, Shapley Representative A communicated his client's position that his client "has spotted and observed things that are done differently in this particular matter… and he wants to talk about them."  Mr. Baier also noted that there has been reporting that the "senior political appointee" referenced in Shapley Representative A's April 19, 2023, letter "may be the attorney general."  Mr. Baier then played a video clip of the White House Press Secretary, Karine Jean-Pierre, responding to a question as to whether the United States Attorney General has upheld his ethical obligations when addressing Mr. Biden's IRS investigation.  Mr. Baier then asked, "does your client think that this, what he's coming forward with, is explosive, is jarring?"  Shapley Representative A responded that his client, "a career law enforcement officer[,] who knows the right way to do an investigation, when he hears a senior politically appointed official at the Department of Justice, under sworn testimony, say something, and, in his mind, it's directly contradictory to what he knows is going on with the investigation… [w]hat he can prove with documents.  He wants to come forward."  These statements publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing and the determination of the possible

existence of liability of Mr. Biden.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

26.     On or around May 24, 2023, Mr. Shapley himself appeared on a CBS News interview with Jim Axelrod.  During the CBS News interview, Mr. Shapley shared and discussed Mr. Biden's confidential return information.  For example, Mr. Shapley stated that he became involved in the investigation in January 2020 and asserted that "for a couple years, we'd been noticing these deviations in the investigative process.  And I just couldn't, you know, fathom that DOJ might be acting unethically on this."  These statements publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing—namely, investigation by the DOJ.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.  On information and belief, the IRS did not even instruct Mr. Shapley or his representatives to refrain from publicly and unlawfully disclosing Mr. Biden's confidential return information, much less take reasonable steps to prevent its personnel from unlawfully disclosing Mr. Biden's tax return information.

27.     On May 26, 2023, Mr. Shapley testified before the Committee on Ways and Means regarding Mr. Biden's confidential return information.  It was clear to everyone involved that Mr. Shapley's testimony was "confidential."  The Committee on Ways and Means noted that it "consider[ed] this entire interview and the resulting transcript as protected confidential information under Section 6103[,]" and "remind[ed] the witness and everyone in the room that 26 U.S.C. Section 7213 makes it unlawful to make any disclosure of returns or return information not authorized by Section 6103.  Unauthorized disclosure of such information can be a felony punishable by fine or imprisonment."  The Committee on Ways and Means could not have made the instructions clearer: "[g]iven the statutory protection for this type of information, we ask that

you not speak about what we discuss in this interview to individuals not designated to receive such information." The numerous media outlets on which the agents appeared and spoke are "not designated to receive such information."

28.     Mr. Shapley proceeded to selectively and publicly disclose certain potentially sensitive aspects of Mr. Biden's confidential return information. For example, Mr. Shapley disclosed a description of the timeline of Mr. Shapley's involvement in Mr. Biden's case, Mr. Shapley's purported communications with members of DOJ, information obtained from stolen data belonging to Mr. Biden and accessed in violation of Delaware state and federal law, and Mr. Shapley's biased lay opinions and conclusions regarding Mr. Biden's potential tax liability.

29.     On June 1, 2023, Mr. Ziegler testified before the Committee on Ways and Means regarding Mr. Biden's confidential return information. As with Mr. Shapley's testimony the week before, it was clear to everyone involved that Mr. Shapley's testimony was "confidential." The Committee on Ways and Means noted that it "consider[ed] this entire interview and the resulting transcript as protected confidential information under Section 6103[,]" and "remind[ed] the witness and everyone in the room that 26 U.S.C. Section 7213 makes it unlawful to make any disclosure of returns or return information not authorized by Section 6103. Unauthorized disclosure of such information can be a felony punishable by fine or imprisonment." Once again, the Committee on Ways and Means explained that "[g]iven the statutory protection for this type of information, we ask that you not speak about what we discuss in this interview to individuals not designated to receive such information." Again, the numerous media outlets on which the agents appeared and spoke are "not designated to receive such information."

30.     Mr. Ziegler proceeded to selectively and publicly disclose certain potentially sensitive aspects of Mr. Biden's confidential return information. For example, Mr. Ziegler

disclosed a timeline of Mr. Ziegler's involvement in Mr. Biden's case and his purported communications with members of the Department of Justice. In addition, Mr. Ziegler publicly disclosed information obtained from what he described as a laptop but which, wherever the data was from, was accessed in violation of Delaware state and federal law, as well as Mr. Ziegler's lay opinions and conclusions regarding Mr. Biden's potential tax liability.

## II.  IRS Personnel Continued to Discuss Mr. Biden's Confidential Tax Information Publicly Despite Clear Instructions During Their Testimony Before the Committee on Ways and Means.

31.     On June 22, 2023, the Committee on Ways and Means submitted to the House of Representatives documents protected under IRS Section 6103 pursuant to a 25-18 vote (the "June 22 Vote"). The statement announcing the June 22 Vote read, in its entirety, "[t]he motion to submit to the House of Representatives documents protected under Internal Revenue Code Section 6103 was ordered favorably reported to the House of Representatives by a roll call vote of 25 yeas to 18 nays (with a quorum being present). The vote was as follows [vote omitted]."

32.     The June 22 Vote only released the transcript and exhibits thereto to Mr. Ziegler's May 26, 2023 testimony and Mr. Shapley's June 1, 2023 testimony. The June 22 Vote did not and could not release Mr. Ziegler, Mr. Shapley, their authorized representatives, or any other individual who attended the Committee on Ways and Means testimony of Mr. Ziegler or Mr. Shapley from their obligations not to otherwise disclose Mr. Biden's confidential return information. Following the June 22 Vote, the Committee on Ways and Means posted the full transcripts of Mr. Shapley's May 26, 2023 testimony and Mr. Ziegler's June 1, 2023 testimony publicly on its website.[1] The

---

[1] United States House of Representatives, Committee on Ways and Means, *Smith: Testimony of IRS Employees Reveals Biden IRS, DOJ Interfered in Tax Investigation of Hunter Biden, Revealing Preferential Treatment for Wealthy and Politically Connected*, June 22, 2023, available at https://waysandmeans.house.gov/smith-testimony-of-irs-employees-reveals-biden-irs-doj-

only information that it redacted from the resultant transcript protected Mr. Ziegler's identity and the identities of questioning majority and minority counsel.

33.     On or around June 28, 2023, Mr. Shapley appeared in an interview with Bret Baier of Fox News and discussed Mr. Biden's confidential return information.  Mr. Shapley discussed WhatsApp messages purportedly sent and received by Mr. Biden.  Mr. Shapley stated that "when we received the attorney-client filter-reviewed copy of information from the search warrant to Apple which produced that document, we went back to the prosecutors and we requested to take various investigative steps, and they were not supported."  These statements publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, and data received by, recorded by, prepared by, furnished to, or collected by the Secretary of the Treasury with respect to Mr. Biden's tax return.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

34.     Later in the same interview, Mr. Shapley asserted that prosecutors in Mr. Biden's investigation "stated that probable cause had been achieved."  Mr. Shapley opined that critical steps in the federal investigation into Mr. Biden were "put on the back burner" as the presidential election approached and that "the most substantive felony charges were left off the table."  Mr. Shapley went on to state that he sought to obtain and execute warrants to search Mr. Biden's property between April and June 2020.  These statements publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, and the determination of the possible

---

interfered-in-tax-investigation-of-hunter-biden-revealing-preferential-treatment-for-wealthy-and-politically-connected/.

existence of liability of Mr. Biden.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

35.     Finally, Mr. Shapley asserted that Mr. Biden should have been charged with tax evasion for 2014, false tax returns for 2018 and 2019, and that Mr. Biden did not report income from certain foreign entities.  These statements publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, the purported source of Mr. Biden's income, and the determination of the possible existence of liability of Mr. Biden.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

36.     Also, on or around June 28, 2023, an interview of Mr. Shapley aired—this time on CBS News with Jim Axelrod—in which Mr. Shapley disclosed Mr. Biden's confidential return information.  In that interview, Mr. Shapley asserted that punishment for Mr. Biden's conduct was warranted: "if this was any other person, they likely would have already served their sentence." Mr. Shapley cited to alleged "[p]ersonal expenses that were taken as business expenses— prostitutes, sex club memberships, hotel rooms for purported drug dealers" and claimed that "from 2014 to 2019 [Mr. Biden owed] $2.2 million [in unpaid taxes]."  These statements publicly disclosed Mr. Biden's confidential return information, including the purported nature and source of Mr. Biden's income, payments, deductions, exemptions and tax payments, and the determination of the possible existence of liability (and the amount thereof) of Mr. Biden.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

37.     On or around June 29, 2023, John Solomon of the Spotify podcast John Solomon Reports interviewed Mr. Shapley and his counsel.  During that interview, Mr. Shapley disclosed Mr. Biden's confidential return information.  For example, Mr. Shapley stated that "the evidence

that we collected that, that were, mashed up with the elements of the criminal violations… those elements were met and then some.  If these facts were from the local businessman or the neighbor next door, they would have been charged and they would have already had their entire sentence." Mr. Shapley also asserted that Mr. Biden had not paid sufficient taxes from 2014 through 2019. These statements publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, and the determination of the possible existence of liability (and the amount thereof) of Mr. Biden.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

### III.   IRS Personnel Completely Disregarded Their Confidentiality Obligations After Testifying Before the House of Representatives.

38.     On July 19, 2023, Mr. Shapley and Mr. Ziegler testified before the United States House of Representatives, Oversight and Accountability Committee ("Oversight Committee"). During their six hours of interviews, Mr. Shapley and Mr. Ziegler answered questions from House Democrats and Republicans regarding their testimony before the Committee on Ways and Means. Although Section 6103(f) allows certain Committees of Congress to review an individual's tax return or return information "sitting in closed executive session" to avoid public disclosure, the Oversight Committee is not among them.

39.     On or around July 20, 2023, Mr. Ziegler appeared in an interview with Jake Tapper on CNN.  During the CNN interview, Mr. Ziegler disclosed Mr. Biden's confidential return information.  For example, Mr. Ziegler stated that "the four assigned prosecutors to [Mr. Biden's] case agreed with recommending felony and misdemeanor charges for Hunter Biden."  Mr. Ziegler also stated that he recommended that Mr. Biden should be charged with "felony and misdemeanor tax charges related to 2017, 2018 and 2019" for evasion of income tax.  Mr. Ziegler did not disclose that he proposed felony tax charges for 2017 in his statements to the Committee on Ways and

Means or the Oversight Committee and, in fact, these statements contradict his sworn testimony. Mr. Ziegler stated in his testimony under oath before the Committee on Ways and Means that he only recommended charges for "Section 7203, failure to timely file and pay tax" (a misdemeanor charge) in 2017.  These statements by Mr. Ziegler during his July 20 CNN interview publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, and the determination of the possible existence of liability (or the amount thereof) of Mr. Biden for any tax, penalty, interest, fine, forfeiture, or other imposition or offense.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

40.     On or around July 20, 2023, Mr. Shapley and Mr. Ziegler appeared in an interview with Megyn Kelly on the Megyn Kelly Show.  During the Megyn Kelly interview, Mr. Shapley disclosed Mr. Biden's confidential return information.  For example, Mr. Shapley stated that Mr. Biden "got preferential treatment and if it was a business owner on the corner, he or she wouldn't have gotten that special treatment and he probably would have been in jail already."  These statements publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, and the determination of the possible existence of liability of Mr. Biden.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

41.     On or around July 21, 2023, Shapley-Ziegler Representative B appeared on the Spotify podcast John Solomon Reports on behalf of Mr. Shapley and Mr. Ziegler.  During that interview, Shapley-Ziegler Representative B disclosed Mr. Biden's confidential return information provided to Shapley-Ziegler Representative B by Mr. Shapley and Mr. Ziegler for purpose of making the unauthorized disclosure.  For example, Shapley-Ziegler Representative B asserted that

Mr. Ziegler intended to disclose "a lot" of additional documents regarding Mr. Biden's confidential return information that allegedly corroborated Mr. Shapley and Mr. Ziegler's testimony.  Such disclosures are likely to increase the public statements made by Mr. Ziegler and Mr. Shapley in violation of federal tax laws.

42.     On or around July 24, 2023, Mr. Ziegler appeared on the John Solomon Reports podcast.  During that interview, Mr. Ziegler disclosed Mr. Biden's confidential return information. Mr. Ziegler asserted that there were "deduction[s] that [were] taken on [Mr. Biden's] tax return" that contradicted statements made in his book of business and alleged that Mr. Biden incorrectly described certain payments as loans, which constituted "clear cut tax evasion."  Mr. Ziegler stated that Mr. Biden had "delinquent taxes" going back to the early 2000s and opined that Mr. Biden's activities demonstrated "a willful intent to either deceive or make it so that income is not reported." These statements publicly disclosed Mr. Biden's confidential return information, including the determination of the possible existence of liability of Mr. Biden.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

43.     On or around July 26, 2023, Shapley Representative A appeared in an interview with Martha MacCallum of Fox News on behalf of Mr. Shapley.  During that interview, Shapley Representative A publicly disclosed Mr. Biden's confidential return information provided to Shapley Representative A by Mr. Shapley for the purpose of making the unauthorized disclosure. Specifically, Shapley Representative A stated that Mr. Shapley "wanted the proper authorities to see what happened that was different from all of his fourteen years in, ya know, working as an IRS agent."  Shapley Representative A continued later in the interview: "[t]here really needs to be a Special Counsel, this has really been too messed up.  There needs to be a Special Counsel who not only can decide what to do with the Bidens, the Biden Family, the President, in terms of charges,

but also write a report about what happened behind the scenes here, so it never happens again because clearly a lot of wrong things were done.  And we're hoping that Congress will be able to get to the bottom of it and flush out what caused the preferential treatment, the wrong decisions on investigative steps."   These statements publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, and the determination of the possible existence of liability of Mr. Biden.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

44.     On or around July 31, 2023, Shapley Representative A once again appeared on Fox News after Mr. Biden's purported business associate testified and discussed Mr. Biden's confidential return information provided to Shapley Representative A by Mr. Shapley for the purpose of making such unauthorized disclosure.  Specifically, Shapley Representative A opined that "there needs to be a Special Counsel to step in and not only figure out what to do with Hunter Biden and the Biden family and President Biden, but also to write a report about, about what happened internally with this investigation and how did all of these investigative steps get declined in a context where, ya know, agents who are veterans, who are just trained to follow the money and they are told not to do things.  So, I absolutely do think that would make sense in this case." These statements publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, and the determination of the possible existence of liability of Mr. Biden.  Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

45.     On or around August 1, 2023, Mr. Shapley also appeared on Fox News and discussed Mr. Biden, stating: "They can go talk to the individuals involved and they can get to the bottom of it because every time that we needed to ask questions about President Biden's

involvement in relation to the business dealings, we just weren't allowed to do that." Mr. Shapley alleged that FBI General Counsel, Jason Jones "was given a letter the Sunday before [his July 17 deposition before the House Oversight Committee] from DOJ basically telling him not to talk. I know that he could have confirmed additional material facts on this investigation. And he did confirm the FBI headquarters notifying the transition team and Secret Service." Mr. Shapley did not disclose this confidential return information in his testimony to the Committee on Ways and Means or the Oversight Committee. In fact, Mr. Shapley did not even mention Mr. Jones in his testimony to the Committee on Ways and Means. Unsurprisingly, these alleged revelations grabbed the headlines.[2] These statements publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, and the determination of the possible existence of liability of Mr. Biden. Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

46.    On August 11, 2023, Mr. Shapley again went on CNN's "The Source" with Kaitlan Collins and repeated many of his prior comments, stating again that Mr. Biden was "provided preferential treatment" and that "[the United States Attorney's Office] stymied investigative steps." These statements publicly disclosed Mr. Biden's confidential return information, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, and the determination of the possible existence of liability of Mr. Biden. Mr. Biden did not request, authorize, or otherwise consent to this disclosure.

47.    On information and belief, the IRS has never instructed Mr. Shapley or Mr. Ziegler, either personally or by and through their authorized representatives, to refrain from publicly and

---

[2] *See* Steven Nelson, *Hunter Biden whistleblower Gary Shapley claims FBI spooked corroborating witness*, New York Post (Aug. 1, 2023), available at https://nypost.com/2023/08/01/hunter-biden-irs-whistleblower-gary-shapley-says-fbi-spooked-witness/.

unlawfully disclosing Mr. Biden's confidential return information, much less taken reasonable steps to prevent its personnel from unlawfully accessing and disclosing Mr. Biden's tax return information.

## COUNT I

**Violation of 26 U.S.C. § 6103 – Willful or Grossly Negligent Unauthorized Disclosure**

48.    Mr. Biden realleges and incorporates by reference paragraphs 1 to 47 as if fully set forth herein.

49.    Title 26, U.S.C. § 6103 provides that "[r]eturns and return information shall be confidential" and prohibits disclosure and inspection by United States employees and other defined persons, except as specifically authorized in the provision.   The IRS publicizes this right of confidentiality as part of its "The Taxpayer Bill of Rights."[3]  As the D.C. Circuit Court of Appeals has explained: "This general ban on disclosure provides essential protection for the taxpayer; it guarantees that the sometimes sensitive or otherwise personal information in a return will be guarded from persons not directly engaged in processing or inspecting the return for tax administration purposes.   The assurance of privacy secured by § 6103 is fundamental to a tax system that relies upon self-reporting."  *Gardner v. United States*, 213 F.3d 735, 738 (D.C. Cir. 2000).

50.    Title 26, U.S.C. § 7431 provides taxpayers a private right of action for damages against the United States for the knowing or negligent unauthorized inspection or disclosure of returns or return information in violation of 26 U.S.C. § 6103.

51.    "Return" is defined as "any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title

---

[3] *See* https://www.irs.gov/pub/irs-pdf/p1.pdf.

which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed."  26 U.S.C. § 6103(b)(1).

52.     "Return information" includes "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense."  26 U.S.C. § 6103(b)(2)(A).

53.     "[D]isclosure" means "the making known to any person in any manner whatever a return or return information."  26 U.S.C. § 6103(b)(8).

54.     As described above, the IRS violated 26 U.S.C. § 6103 by publicly disclosing Mr. Biden's confidential return information via:

- Mr. Shapley's unauthorized disclosure by and through Shapley Representative A's public statements in a letter to the Committee on Ways and Means on April 19, 2023.

- Mr. Shapley's unauthorized disclosure by and through Shapley Representative A's public statements to Mr. Solomon of John Solomon Reports on April 19, 2023.

- Mr. Shapley's unauthorized disclosure by and through Shapley Representative A's public statements to Mr. Axelrod of CBS News on April 19, 2023.

- Mr. Shapley's unauthorized disclosure by and through Shapley Representative A's public statements to Mr. Baier of Fox News on April 20, 2023.

- Mr. Shapley's public statements to Mr. Axelrod of CBS News on May 24, 2023.

- Mr. Shapley's public statements to Mr. Baier of Fox News on June 28, 2023.

- Mr. Shapley's public statements to Mr. Axelrod of CBS News on June 28, 2023.

- Mr. Shapley's public statements to Mr. Solomon of John Solomon Reports on June 29, 2023.

- Mr. Ziegler's public statements to Mr. Tapper of CNN on July 20, 2023.

- Mr. Shapley and Mr. Ziegler's public statements to Ms. Kelly of the Megyn Kelly Show on July 20, 2023.

- Mr. Shapley's and Mr. Ziegler's unauthorized disclosures by and through Shapley-Ziegler Representative B's public statements to Mr. Solomon of John Solomon Reports on July 21, 2023.

- Mr. Ziegler's public statements to Mr. Solomon of John Solomon Reports on July 24, 2023.

- Mr. Shapley's unauthorized disclosure by and through Shapley Representative A's public statements to Ms. MacCallum of Fox News on July 26, 2023.

- Mr. Shapley's unauthorized disclosure by and through Shapley Representative A's public statements on Fox News on July 31, 2023.

- Mr. Shapley's public statements to Ms. Collins of CNN on August 11, 2023.

55.     These statements publicly disclosed Mr. Biden's confidential return information before the matter was the subject of public litigation, including whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, the purported amount

of Mr. Biden's income, payments, deductions, exemptions and tax payments, and the determination of the possible existence of tax liability (and the amount thereof) of Mr. Biden.

56.     The repeated disclosures and the media appearances in which they were made make clear that the IRS's public disclosures of Mr. Biden's return information did not result from a "good faith, but erroneous interpretation of section 6103," but rather from a knowing violation, gross negligence, or negligence.  The IRS's knowledge, or at least negligence, is evident because in his April 19, 2023 interview on John Solomon Reports, Shapley Representative A stated that IRS agents are "trained in . . . Title 26 U.S.C. Section 6103."  Further, "Majority Counsel 1" of the Committee on Ways and Means stated that the Committee "considers this entire interview and the resulting transcript as protected confidential information under Section 6103."  "Majority Counsel 1" further stated that "26 U.S.C. Section 7213 makes it unlawful to make any disclosure of returns or return information not authorized by Section 6103.  Moreover, IRS agents are trained in complying with the confidentiality requirements of Section 6103.[4]  Unauthorized disclosures of such information can be a felony punishable by fine or imprisonment."

57.     The IRS, via its agents and by and through their authorized representatives, chose to publicly disclose the confidential return information during interviews with national media outlets, including Fox News, CNN, CBS News, John Solomon Reports, and the Megyn Kelly Show, with the intent that these national media outlets would widely publish the information through its nationally and internationally televised news network, website and other means.

58.     The IRS's public disclosure of Mr. Biden's return information was not "requested by the taxpayer," Mr. Biden, pursuant to 26 U.S.C. § 7431(b)(2).

---

[4] The IRS maintains a training video for its agents on its website, along with tax information security guidelines.  *See*   https://www.irsvideos.gov/Governments/Safeguards/ProtectingTaxInformation; https://www.irs.gov/pub/irs-pdf/p1075.pdf.

59.     The IRS's public disclosure of Mr. Biden's tax return information therefore violated 26 U.S.C. § 6103.

60.     Pursuant to 26 U.S.C. § 7431, Mr. Biden is entitled to statutory damages in the amount of $1,000 per each act of unauthorized disclosure.

61.     Mr. Biden is also entitled to punitive damages pursuant to 26 U.S.C. § 7431(c)(1)(B)(ii) because the IRS's unlawful public disclosure of his confidential return information was either willful or a result of gross negligence.

### COUNT II

### Violation of 5 U.S.C. § 552a(e)(10) – The Privacy Act

62.     Mr. Biden realleges and incorporates by reference paragraphs 1 to 61 as if fully set forth herein.

63.     The IRS is an agency within the meaning of the Privacy Act.

64.     The IRS maintained the records of Mr. Biden, including his confidential return information, in a system of records as those terms are defined in the Privacy Act.

65.     The IRS has long been aware of serious deficiencies in its safeguards.[5]   As explained above, Mr. Shapley and Mr. Ziegler, either personally or by and through their authorized representatives, made statements to the general public.  Even though the IRS was aware of these statements, on information and belief, it did nothing to prevent its agents from continuing to disclose Mr. Biden's confidential return information.  Although federal law prohibits such disclosures of confidential return information, the IRS disregarded the violations of its agents.

66.     In violation of the Privacy Act, the IRS willfully and intentionally failed to establish

---

[5] A GAO Report has documented these deficiencies.  *See* https://www.gao.gov/products/gao-22-105872.

appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records, including Mr. Biden's confidential return information, and failed to protect against any anticipated threats or hazards to those records' security or integrity, including those that could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained.

67.     As a direct and proximate result of its violations of the Privacy Act, the IRS unlawfully disclosed, or failed to take reasonable steps to prevent its personnel from unlawfully disclosing, Mr. Biden's records—his confidential return information—without his prior written consent and for no statutorily permitted purpose, in violation of 5 U.S.C. § 552a(b).

68.     Mr. Biden has and will continue to sustain damages directly traceable to the IRS's violations set forth above.   Mr. Biden is therefore entitled to damages under 5 U.S.C. §§ 552a(g)(1)(D) and (g)(4).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Hunter Biden respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

A. Declaring that the IRS willfully, knowingly, and/or by gross negligence, unlawfully disclosed Mr. Biden's confidential return information in violation of 26 U.S.C. § 6103.

B. Awarding Mr. Biden $1,000 damages for each and every unauthorized disclosure of his confidential return information, including subsequent disclosure, pursuant to 26 U.S.C. § 7431(c)(1) and damages under 5 U.S.C. §§ 552a(g)(1)(D) and (g)(4);

C. Awarding Mr. Biden reasonable costs and attorney's fees pursuant to 26 U.S.C. § 7431(c)(2)-(3) and as may otherwise be permitted by law;

27

D.  Ordering Defendant to produce to Mr. Biden all documents in its possession, custody, or control regarding the inspection, transmittal, and/or disclosure of Mr. Biden's confidential return information;

E.  Ordering the IRS to formulate, adopt, and implement a data security plan that satisfies the requirements of the Privacy Act;

F.  Awarding pre-and post-judgment interest as allowed by law; and

G.  Any such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all claims asserted in this Amended Complaint so triable.

Dated: February 5, 2024                    Respectfully submitted,


                                           /s/ *Abbe David Lowell*
                                           Abbe David Lowell, Bar No. 358651DC
                                           Christopher D. Man, Bar No. 453553DC
                                           WINSTON & STRAWN LLP
                                           1901 L Street, NW
                                           Washington, DC 20036
                                           AbbeLowellPublicOutreach@winston.com
                                           202-282-5000 (ph)
                                           202-282-5100 (fax)


                                           *Counsel for Robert Hunter Biden*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 5, 2024, I filed the foregoing Amended Complaint with the Clerk of Court using the CM/ECF electronic filing system, which will send notification to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*
