# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT HUNTER BIDEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | )   Case No. 1:23-cv-02711 |
| UNITED STATES INTERNAL REVENUE | ) |
| SERVICE, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff, Robert Hunter Biden, sues Defendants, the United States of America and the Internal Revenue Service (collectively, "the United States"),[1] alleging that two IRS employees and their personal attorneys unlawfully disclosed his confidential tax return information in violation of I.R.C. § 6103. Plaintiff alleges that, as a result, he is entitled to recover damages under I.R.C. § 7431 (Count I). He also alleges that the IRS failed to establish appropriate administrative, technical, or physical safeguards over the IRS's records system to protect the security and confidentiality of his return information in violation of the Privacy Act, 5 U.S.C. § 552a (Count II). The United States moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) to dismiss Count I of the Amended Complaint, in part, and Count II of the Amended Complaint in its entirety.

Count I must be dismissed to the extent that it brings claims based on the alleged

---

[1] The Amended Complaint names the Internal Revenue Service as the sole defendant. Although the IRS is the proper defendant to Plaintiff's claim under the Privacy Act, 5 U.S.C. § 552a, the United States is the proper defendant to Plaintiff's wrongful disclosure claim. *See* I.R.C. § 7431(a)(1) (providing that a taxpayer may sue the United States for the alleged wrongful disclosure of protected tax return information by an officer or employee of the United States).

wrongful disclosures by the IRS employees' personal attorneys. Plaintiff fails to allege that the attorneys (identified in the Amended Complaint as "Shapley Representative A" and "Shapley-Ziegler Representative B") are officers or employees of the United States. The United States has waived its sovereign immunity for claims arising out of the wrongful disclosure of return information only if the disclosures were made by an "officer or employee of the United States." I.R.C. § 7431(a)(1). If the wrongful disclosure was made by "any person who is not an officer or employee of the United States," the taxpayer's cause of action lies against that person under § 7431(a)(2). The United States has not waived its sovereign immunity for the alleged wrongful disclosures made by IRS employees' personal attorneys.

The Court should also dismiss Plaintiff's Privacy Act claim that the IRS failed to maintain adequate safeguards to prevent disclosure of his personal information. The relief Plaintiff seeks extends beyond the Privacy Act's waiver of sovereign immunity: Plaintiff's request for damages does not allege tangible pecuniary harm as the Supreme Court requires, and the injunctive relief he seeks is not authorized by the statute. In addition, Plaintiff's "safeguards claim" must be dismissed because he does not adequately plead that the IRS failed to implement policies to protect taxpayer information or that the IRS otherwise intentionally or willfully violated the Privacy Act. Plaintiff's safeguards claim is ultimately a repackaging of his improper disclosure claim in Count I of his Amended Complaint and must be dismissed because § 7431 is the exclusive remedy for § 6103 violations.

# BACKGROUND

## I.    Statutory Background

### A.    I.R.C. §§ 6103 and 7431

Section 6103 of the Internal Revenue Code generally prohibits disclosure of return or return information unless expressly authorized by an exception. *See* I.R.C. § 6103. "'Returns and return information' is broadly defined to include everything from a completed tax return submitted by a taxpayer to 'a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, . . . or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return.'" *Welborn v. Internal Rev. Serv.*, 218 F. Supp. 3d 64, 75 (D.D.C. 2016) (citing I.R.C. §§ 6103(b)(1) (return), quoting (b)(2)(A) (return information)).

Section 7431 creates a cause of action under which injured taxpayers may sue the United States for damages stemming from violations of § 6103 committed by United States officers or employees. *Id.* § 7431(a)(1) ("If any officer or employee of the United States knowingly, or by reason of negligence . . . discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States."). If the individual who unlawfully disclosed return information is neither an officer nor employee of the United States, then the taxpayer's cause of action is against the individual who made the unauthorized disclosure. *Id.* § 7431(a)(2).

To state a claim under § 7431, a plaintiff must allege that a person made the unlawful disclosure in violation of § 6103. *See Welborn*, 218 F. Supp. 3d at 83 (citing *Fostvedt v. IRS*, 824 F. Supp. 978, 983 (D. Colo. 1993), *aff'd sub nom. Fostvedt v. United States*, 16 F.3d 416 (10th Cir. 1994)). If a plaintiff prevails on a § 7431 claim, they may recover (1) statutory or actual

damages proximately caused by the violation, whichever is greater; (2) punitive damages in the case of willful or grossly negligent violations of § 6103 that result in actual damages; and (3) attorneys' fees (as allowed by § 7430). I.R.C. § 7431(c).

### B.      The Privacy Act of 1974

The Privacy Act of 1974 establishes "a comprehensive and detailed set of requirements" for federal agencies that maintain systems of records containing individuals' personal information. *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 287 (2012). As relevant here, the Privacy Act requires agencies to "establish appropriate administrative, technical, and physical safeguards" in order to ensure that records remain secure and to guard against anticipated security threats that could substantially harm, embarrass, inconvenience, or cause unfairness to an individual for whom an agency record is maintained. 5 U.S.C. § 552a(e)(10).

The form of civil relief authorized by the Privacy Act depends on the particular violation alleged. For instance, the Act allows for injunctive relief in two circumstances: (1) to order an agency to amend inaccurate, incomplete, irrelevant, or untimely records, 5 U.S.C. § 552a(g)(1)(A), (g)(2)(A); and (2) to order an agency to allow an individual access to his records, *id.* § 552a(g)(1)(B), (g)(3)(A). The Privacy Act authorizes courts to award monetary damages when the agency fails "to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." 5 U.S.C. § 552a(g)(1)(D), (g)(4). The "adverse effect" requirement "acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue." *Doe v. Chao*, 540 U.S. 614, 624 (2004).

To recover monetary damages, however, a plaintiff must do more than demonstrate

standing and show that the agency failed to satisfy its Privacy Act obligations. The plaintiff must also plead and prove facts showing "that the agency acted in a manner which was intentional or willful" and that, as a result, the plaintiff suffered "actual damages." 5 U.S.C. § 552a(g)(4). "Actual damages" under the Privacy Act "are limited to actual pecuniary loss, which must be specially pleaded and proved." *Cooper*, 566 U.S. at 296, 299. The federal government retains sovereign immunity from liability for all other kinds of injury. *Id.* at 304.

## II.    Factual Background[2]

Plaintiff has alleged that, over the past several years, he has been the subject of an IRS investigation. ECF No. 15 ¶ 1. Indeed, even prior to the disclosures that form the basis of his claims in this matter, Plaintiff made public statements regarding a federal tax investigation, which resulted in substantial media coverage. *See, e.g.*, Matt Zapotosky, et al., *Hunter Biden Confirms He Is Under Federal Investigation*, Wash. Post. (Dec. 9, 2020, 6:58 PM) (tax investigation by the U.S. Attorney's Office in Delaware); CBS News, *Hunter Biden Addresses Laptop Reports, Ongoing Federal Investigation into His Taxes*, (Apr. 5, 2021), *available at* https://www.cbsnews.com/video/hunter-biden-addresses-laptop-reports-ongoing-federal-investigation-into-his-taxes ("At the end of last year, Biden acknowledged an ongoing investigation by federal authorities for potential tax law violations."); Adam Goldman, et al., *Hunter Biden Discloses He Is Focus of Federal Tax Inquiry*, N.Y. Times (published Dec. 9,

---

[2] The relevant facts are drawn from those alleged in the Amended Complaint, which the Court must accept as true, documents incorporated by reference in the Amended Complaint, and other matters of which the Court may take judicial notice. *See Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.").

2020), *available at* https://www.nytimes.com/2020/12/09/us/politics/hunter-biden-tax-investigation.html (updated Aug. 13, 2021) (Department of Justice tax investigation).[3] Plaintiff predicates his instant claims on subsequent statements regarding this same investigation by two IRS employees (Supervisory Special Agent Gary Shapley and Special Agent Joseph Ziegler) and their personal attorneys ("Shapley Representative A" and "Shapley-Ziegler Representative B"). ECF No. 15 ¶¶ 16–19, 54.

Specifically, the Amended Complaint alleges that on or around April 19, 2023, Shapley Representative A, on behalf of Mr. Shapley, sent a letter to various members of Congress, claiming that his unnamed client "has been overseeing the ongoing and sensitive investigation of a high-profile, controversial subject since 2020." ECF No. 15 ¶ 21. Shapley Representative A requested that his client be given an opportunity to testify before certain congressional oversight committees. *Id.* Various media outlets reported that the letter was referring to the investigation of Plaintiff. *Id.*

Messrs. Shapley and Ziegler were afforded that opportunity and, in late May and early June 2023, "testified in closed-door sessions before the [United States House of Representatives,] Committee on Ways and Means." ECF No. 15 ¶¶ 7, 27, 29. On June 22, 2023, the Committee on Ways and Means submitted to the House of Representatives the transcript and exhibits to Messrs. Ziegler's and Shapley's testimony, and it posted the transcripts of the

---

[3] The Court may take judicial notice of information published in news articles. *See Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (taking judicial notice of newspaper articles that publicized an ongoing investigation); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 132 n.1 (D.D.C. 2016) (taking judicial notice of news articles "not for their truth but merely for the fact that they were published"); *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 113 (D.D.C. 2015) (taking judicial notice of news articles "for the fact that they contained certain information," regardless of the truth).

testimony on its website. *Id.* ¶¶ 31, 32. On July 19, 2023, Messrs. Shapley and Ziegler publicly testified before the United States House of Representatives, Oversight and Accountability Committee regarding their testimony before the Committee on Ways and Means. *Id.* ¶¶ 20, 38. Although the agents testified about the IRS's criminal investigation of Plaintiff, Plaintiff does not allege that the testimony violated § 6103 and asserts no claim for it under § 7431. *Id.* ¶ 54.

Separately, between April 19, 2023, and August 11, 2023, Messrs. Shapley and Ziegler and their personal attorneys gave interviews to various media outlets. ECF No. 15 ¶ 54. Plaintiff claims that all four individuals disclosed his confidential tax return information during the interviews in violation of § 6103 and that he is entitled to recover damages as a result. He alleges:

1. On or around April 19, 2023, Shapley Representative A sent a letter to various members of Congress, which allegedly disclosed Plaintiff's tax return information. ECF No. 15 ¶¶ 21, 54.

2. On or around April 19, 2023, Shapley Representative A appeared on *John Solomon Reports*, a podcast, in which he allegedly made statements disclosing Plaintiff's tax return information. ECF No. 15 ¶¶ 22–23, 54.

3. On or around April 19, 2023, Shapley Representative A appeared in an interview on CBS News, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 24, 54.

4. On or around April 20, 2023, Shapley Representative A appeared in an interview on Fox News, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 25, 54.

5. On or around May 24, 2023, Mr. Shapley appeared in an interview on CBS News, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 26, 54.

6. On or around June 28, 2023, Mr. Shapley appeared in an interview on Fox News, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 33–35, 54.

7.  On or around June 28, 2023, Mr. Shapley appeared in an interview on CBS News, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 36, 54.

8.  On or around June 29, 2023, Mr. Shapley appeared on *John Solomon Reports*, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 37, 54.

9.  On or around July 20, 2023, Mr. Ziegler appeared in an interview on CNN, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 39, 54.

10. On or around July 20, 2023, Messrs. Shapley and Ziegler appeared in an interview on *The Megyn Kelly Show*, a podcast, in which they allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 40, 54.

11. On or around July 21, 2023, Shapley-Ziegler Representative B appeared on *John Solomon Reports*, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 41, 54.

12. On or around July 24, 2023, Mr. Ziegler appeared on *John Solomon Reports*, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 42, 54.

13. On or around July 26, 2023, Shapley Representative A appeared in an interview on Fox News, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 43, 54.

14. On or around July 31, 2023, Shapley Representative A appeared in an interview on Fox News, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 44, 54.

15. On or around August 11, 2023, Mr. Shapley appeared in an interview on CNN, in which he allegedly made statements disclosing Plaintiff's confidential tax return information. ECF No. 15 ¶¶ 46, 54.

Plaintiff asserts two causes of action in his Amended Complaint, a claim brought under

§ 7431 for alleged violations of § 6103, *see* ECF No. 15 ¶¶ 48–61, and a claim that the IRS failed

to establish appropriate administrative, technical, or physical safeguards over the IRS's records

system to protect the security and confidentiality of his return information in violation of the

Privacy Act, *see id.* ¶¶ 62–68. Plaintiff seeks a declaration that the IRS violated § 6103,

8

monetary damages, injunctive relief, and attorneys' fees and costs. *See id.*, Prayer for Relief.

## ARGUMENT

I. **The United States Has Not Waived its Sovereign Immunity Under § 7431(a) for Unlawful Disclosures Allegedly Made by Persons Who Are Neither Officers nor Employees of the United States.**

The United States is immune from suit unless it has explicitly waived its immunity.

*United States v. Mitchell*, 445 U.S. 535, 538 (1980). Waivers of sovereign immunity must be

strictly construed in favor of the Government and must not be "enlarged beyond" the language of

the statute. *Dep't of Army v. Fed. L. Rel'ns Auth.*, 56 F.3d 273, 277 (D.C. Cir. 1995). Section

7431 provides the exclusive remedy for a taxpayer to recover damages for the alleged

unauthorized disclosure of their return information in violation of § 6103. *See* I.R.C. § 7431(a);

*see also Welborn*, 218 F. Supp. at 81. Subsection (a)(1) waives the United States' sovereign

immunity for actions for damages if an "officer or employee of the United States" disclosed that

taxpayer's return or return information in violation of § 6103. *Id.* But § 7431(a)(1)'s waiver of

sovereign immunity does not apply for the unauthorized disclosure of return information by a

person who is not an officer or employee of the United States. By enacting § 7431(a)(2),

Congress unambiguously provided that when a person who is not an officer or employee of the

United States discloses return information in violation of § 6103, the taxpayer's remedy is

against "such person," not the United States. I.R.C. § 7431(a)(2).

Plaintiff seeks to hold the United States liable for fifteen alleged disclosures. ECF No. 15

¶ 54. Disclosures 1, 2, 3, 4, 11, 13, and 14 relate to statements allegedly made by two

unidentified individuals described in the Amended Complaint as "Shapley Representative A"

and "Shapley-Ziegler Representative B." In lieu of their identities, the Amended Complaint

alleges that Shapley Representative A "previously worked as Associate Counsel for the Office of

the White House Counsel under former President Donald J. Trump" and that Shapley-Ziegler

Representative B is President of Empower Oversight who "previously worked for the United

States Office of Special Counsel under former President Donald J. Trump." ECF No. 15 ¶¶ 18–

19.

Notably, the Amended Complaint never alleges that Shapley Representative A and

Shapley-Ziegler Representative B were officers or employees of the United States when they

obtained Plaintiff's return information or when they made the disclosures Plaintiff attributes to

them. Nor does it change the substantive allegations central to Plaintiff's purported claim.

Instead, he merely resorts to a different naming convention to recharacterize the alleged

violations of § 6103—by Attorneys A and B in the original complaint—as ones made by Messrs.

Shapley and Ziegler "by and through" those same individuals. *See* ECF No. 15-1 at ¶ 54.

Plaintiff's recasting of his allegations does not change the underlying facts he alleges.

The disclosures that Plaintiff alleges—and for which he seeks statutory damages—were

allegedly made by private attorneys who were not then, and are not, officers and employees of

the federal government. Plaintiff cannot use an alleged agency relationship to create liability

where it does not exist. A waiver of sovereign immunity must be "strictly construed, in terms of

its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also Hubbard

v. Adm'r, EPA*, 982 F.2d 531, 532–33 (D.C. Cir. 1992) ("[W]aivers of sovereign immunity are to

be construed strictly. We may not find a waiver unless Congress' intent is unequivocally

expressed in the relevant statute. . . . [Plaintiff] must demonstrate a legislative intent so clear and

explicit as to brook no reasonable doubt." (cleaned up)); *Mitchell*, 445 U.S. at 538 ("A waiver of

sovereign immunity 'cannot be implied but must be unequivocally expressed.'" (citing *United

States v. King*, 395 U.S. 1, 4 (1969)). And § 7431's waiver of sovereign immunity is

10

unambiguous: it applies only for unauthorized disclosures by an "officer or employee of the United States." I.R.C. § 7431(a)(1). For cases, such as here, where an alleged disclosure is made by a person who is not an officer or employee of the United States, the taxpayer may bring an action against the disclosing individual, but not the United States. I.R.C. § 7431(a)(2). Thus, to the extent the personal attorneys of Messrs. Shapley and Ziegler are bound by § 6103 as persons covered under § 6103(a)(3), Plaintiff may seek redress against them pursuant to I.R.C. § 7431(a)(2).

## II.    Plaintiff's Privacy Act Claim (Count II) Should Be Dismissed.

### A.    The Relief Plaintiff Seeks Is Not Available Under the Privacy Act.

As the Supreme Court has said "on many occasions . . . a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *Cooper*, 566 U.S. at 290. "Any ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *Id.* (citations omitted). The question is not "whether Congress has consented to be sued for damages" in the abstract, but the "*scope* of that waiver," such that courts "construe any ambiguities in the scope of a waiver in favor of the sovereign." *Id.* at 291 (emphasis in original).

Plaintiff's claim should be dismissed because the relief he seeks goes beyond the Privacy Act's waiver of sovereign immunity. As discussed below, although Plaintiff seeks monetary damages and injunctive relief, Plaintiff does not allege any actual damages, and the injunctive relief he seeks is not authorized under the Privacy Act.

### 1.    Plaintiff Has Not Alleged Any "Actual Damages."

As discussed above, to maintain a claim for monetary damages under the Privacy Act, a plaintiff must plead facts showing, among other things, that they have suffered "actual damages"

11

as a result of a particular Privacy Act violation. 5 U.S.C. § 552a(g)(4). In *Cooper*, the Supreme

Court held that the term "actual damages" in the statute is "limited to proven pecuniary or

economic harm," which is a form of "special damages" that must be "specially pleaded and

proved." 566 U.S. at 295, 299. The United States retains sovereign immunity for all non-

economic harms, including "loss of reputation, shame, mortification, injury to the feelings and

the like." *Id.* at 295–96, 299, 304, and failure to establish "actual damages" is fatal to monetary

recovery. *Id.* at 295 (explaining that "the Privacy Act's remedial provision authorizes plaintiffs

to recover . . . but only if they prove at least some 'actual damages'") (quoting 5 U.S.C.

§ 552a(g)(4)(A)).

 Applying these principles, courts in this District have routinely dismissed Privacy Act

claims where concrete allegations of calculable pecuniary loss are absent. *See, e.g.*, *Stewart v.

Kendall*, 578 F. Supp. 3d 18, 23–24 (D.D.C. 2022) (dismissing claim because the plaintiff failed

to plausibly allege pecuniary damages caused by the alleged violation); *Bozgoz v. James*, No. 19-

0239 (ABJ), 2020 WL 4732085, *11–12 (D.D.C. 2020) (dismissing claim because plaintiffs

alleged only general damages and "d[id] not specify any pecuniary losses they incurred");

*Welborn*, 218 F. Supp. 3d at 82 (dismissing claims based on alleged reputational and emotional

harm and other conclusory allegations, because plaintiffs failed to "detail[] actual pecuniary or

material damage" in their complaint). *Compare In re U.S. Office of Personnel Mgmt. Data Sec.

Breach Litig.*, 928 F.3d 42, 65–66 (D.C. Cir. 2019) (concluding plaintiffs had alleged "actual

damages" after purchasing credit protection and/or credit repair services following a data breach,

and had fraudulent accounts established and false tax returns filed in their names).

 Here, although Plaintiff seeks a monetary award under § 552(g)(1)(D) and (g)(4), *see*

ECF No. 15 ¶ 68, Prayer for Relief ¶ B, he fails to plead facts showing that he has sustained *any*

calculable monetary loss as a result of the IRS's alleged conduct. Plaintiff states that he has suffered "staggering" harm "reputationally and emotionally." *Id.* ¶ 10. But *Cooper* expressly instructs there is no waiver of sovereign immunity under the Privacy Act for those types of alleged injuries. *See* 566 U.S. at 287, 295–96. And otherwise, Plaintiff's Amended Complaint provides only the barest of allegation that he "will continue to sustain damages directly traceable to the IRS's violation." ECF No. 15 ¶ 68. That is a far cry from "specially pleaded" allegations of actual pecuniary loss. *Cooper*, 566 U.S. at 295; *see also Welborn*, 218 F. Supp. 3d at 82 (declining to assume actual damages based on conclusory statements in the plaintiffs' complaint). Accordingly, Plaintiff has failed to allege actual damages under the Privacy Act.

2.     Plaintiff Is Not Entitled to Injunctive Relief under the Privacy Act.

Plaintiff also seeks injunctive relief—specifically, an "[o]rder[] that the IRS "formulate, adopt, and implement a data security plan that satisfies the requirements of the Privacy Act." *See* ECF No. 15, Prayer for Relief ¶ E. However, as discussed above, the Privacy Act authorizes injunctive relief in only two specific circumstances: (1) to order an agency to amend inaccurate, incomplete, irrelevant, or untimely records, 5 U.S.C §§ 552a(g)(1)(A), (g)(2)(A), and (2) to order an agency to allow an individual access to their records, *id.* § 552a(g)(1)(B), (g)(3)(A).[4] Neither

---

[4] Plaintiff also asks the Court to issue an order requiring the United States to produce "all documents regarding the inspection, transmittal, and/or disclosure of [Plaintiff's] confidential tax return information." *See* ECF No. 15, Prayer for Relief ¶ D. Plaintiff's requested relief could potentially be construed as a claim for access to his records under subsection (g)(1)(B). However, Plaintiff does not invoke that provision in the body of his Amended Complaint, and, in any event, Plaintiff does not allege that he first exhausted his administrative remedies under the applicable IRS regulations before bringing suit, as is required to bring such a claim. *See Mulhern v. Gates*, 525 F. Supp. 2d 174, 187 (D.D.C. 2007); *see also* 31 C.F.R. § 1.26. Thus, to the extent the Court were to construe the Amended Complaint to allege such a claim, it should be dismissed.

circumstance applies here.

Injunctive relief, as the D.C. Circuit has recognized, is not available for any other Privacy

Act violation, including under the catchall provision in § 552a(g)(1)(D) through which Plaintiff

brings his safeguards claim. That subsection provides for a monetary remedy when an agency

"fails to comply with any other provision of [the Privacy Act]," but not an injunctive one. *See*

*Sussman v. U.S. Marshall Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) ("We have held that only

monetary damages, not declaratory or injunctive relief, are available to § 552a(g)(1)(D) plaintiffs

. . . .") (citing *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988)); *see also Cell. Assocs.,*

*Inc. v. Nat'l Insts. of Health*, 579 F.2d 1155, 1161–62 (9th Cir. 1978); *Edison v. Dep't of the*

*Army*, 672 F.2d 840, 846–47 (11th Cir. 1982) (citing *Parks v. IRS*, 618 F.2d 677, 683–84 (10th

Cir. 1980)); *Richardson v. Bd. of Governors of Fed. Reserve Sys.*, 288 F. Supp. 3d 231, 238

(D.D.C. 2018); *Kelley v. FBI*, 67 F. Supp. 3d 240, 253 (D.D.C. 2014); *Houston v. U.S. Dep't of*

*Treasury*, 494 F. Supp. 24, 29 (D.D.C. 1979).

The conclusion that injunctive relief is available only where specifically authorized is

consistent with the principle that "[w]here [a] 'statute provides certain types of equitable relief

but not others, it is not proper to imply a broad right to injunctive relief.'" *Parks*, 618 F.2d at 684

(quoting *Cell Assoc.*, 579 F.2d at 1161–62). This is especially true with the Privacy Act because

Congress "link[ed] particular violations of the Act to particular remedies in a specific and

detailed manner[,]" which "points to a conclusion that Congress did not intend to authorize the

issuance of [other] injunctions." *Cell Assoc.*, 579 F.2d at 1159. Indeed, as the Ninth Circuit

concluded, were injunctive relief available for violations of the Privacy Act generally, "the

detailed remedial scheme adopted by Congress would make little sense." *Id.* at 1160 ("We think

it unlikely that Congress would have gone to the trouble of authorizing equitable relief for two

forms of agency misconduct and monetary relief for all other forms if it had intended to make injunctions available across the board.").

Because Plaintiff's request for injunctive relief extends beyond the narrow equitable remedies set out in subsections (g)(1) and (g)(2), it must be rejected.

### B.     Plaintiff Has Not Alleged a Viable Claim under the Privacy Act's Safeguards Provision.

Even if the relief Plaintiff seeks were available to him—and it is not—his Privacy Act claim would still fail, because the safeguards provision on which he relies, 5 U.S.C. § 552a(e)(10), does not apply to the alleged conduct in this case.

Section 552a(e)(10) directs agencies to "establish appropriate administrative, technical, and physical safeguards" in order to keep records secure and to guard against anticipated security threats that could substantially harm, embarrass, inconvenience, or cause unfairness to an individual for whom an agency record is maintained. *Id.* "A safeguards-based Privacy Act claim focuses on the particular safeguards created by the agency, and requires an assessment of whether they are, in general, sufficient to protect [an individual's] privacy rights." *White v. Schafer*, 738 F. Supp. 2d 1121, 1142 (D. Colo. 2010), *aff'd*, 435 F. App'x 764 (10th Cir. 2011). Put differently, a safeguards claim requires "a showing that the [agency's] policies, not simply [an agency employee's] implementation of them," was flawed; it distinguishes failures in the policies, which may be actionable, from isolated instances "in which those safeguards proved ineffective," which are not. *Id.*

Accordingly, a safeguards claim is not proper when the agency "has issued numerous rules and regulations regarding the maintenance of records, and plaintiff has not identified any specific failure to issue guidelines," even if there are "allegations of a single violation [of those

rules] against one individual." *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 43 (D.D.C. 2009) (quoting *Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d 29, 54–55 (D.D.C. 2009)). At a minimum, a plaintiff must "identif[y] any rule or safeguard . . . that [the agency] should have established but did not." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1007 n.7 (D.C. Cir. 2009); *see also Dick v. Holder*, 67 F. Supp. 3d 167, 186 (D.D.C. 2014) (same); *Kvech v. Holder*, No. 10-cv-545 (RLW), 2011 WL 4369452, *6 n.11 (D.D.C. Sept. 19, 2011) (finding plaintiff could not maintain a safeguards claim, because "[t]here is nothing in her complaint which might indicate that the employees obtained the information because the FBI's administrative and technical safeguards were insufficient" (quotation omitted)).

These requirements make sense. Were a failure to comply with otherwise adequate regulations sufficient to state a safeguards claim, then a safeguards violation would necessarily collapse into an improper disclosure claim under 5 U.S.C. § 552a(b), because a plaintiff could *always* allege that a disclosure that occurred notwithstanding otherwise proper safeguards was a failure of the adequacy of those safeguards. Such a merged construction would be improper because waivers of sovereign immunity must be narrowly construed, *see Cooper*, 566 U.S. at 290. It would also conflict with the maxim that statutes should be read to avoid superfluity. *See Hibbs v. Winn*, 542 U.S. 99, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

Plaintiff's safeguards claim has no merit when applying the appropriate construction of § 552a(e)(10). The IRS has numerous statutory and policy provisions that provide for the confidentiality of taxpayer information. *See, e.g.*, 28 U.S.C. §§ 6103, 7213, 7213A, 7431; Internal Revenue Service, *Internal Revenue Service Manual*, §§ 1.1.12, 10.5.1, 10.5.5. Plaintiff admits, moreover, that "IRS agents are trained in complying with the confidentiality

requirements of Section 6103." ECF No. 15 ¶ 56 & n.4. Yet, Plaintiff fails to identify any

specific rule or procedure that should have been issued to protect his information but was not.

*Chambers*, 568 F.3d at 1007 n.7; *Doe*, 600 F. Supp. 3d at 43.

Plaintiff cites only to a GAO report, issued in May 2022. *See* ECF No. 15 ¶ 65 n.5 (citing

Government Accountability Office, GAO-22-105872, *IRS Security of Taxpayer Information*

("GAO Rpt.") (attached as Exhibit 1)).[5] However, Plaintiff is incorrect in claiming that the GAO

report documented "serious deficiencies in [the IRS's] safeguards." ECF No. 15 ¶ 65. To the

contrary, the report summarizes the IRS's extensive policies and practices for protecting

taxpayer information and does not identify any deficiencies on the part of the IRS. *See generally*

GAO Rpt. Although the report discusses that unauthorized disclosures take place, it also explains

that "[m]ore than 82 percent of [unauthorized access] violations resulted in the offending

employee's suspension, resignation, or removal," and that "for the cases where IRS found

employees committed both [unauthorized access] and unauthorized disclosure violations, all

cases resulted in the offending employee's suspension, resignation, or removal." *Id.* at 16.

Rather than identify any systematic failure by the IRS, as is required to make out a

safeguards claim, Plaintiff instead alleges that "the IRS was aware of [Mr. Shapley's, Mr.

Ziegler's, and their representatives' allegedly unauthorized disclosures], [and] on information

and belief, [the IRS] did not nothing to prevent its agents from continuing to disclose Plaintiff's

confidential tax return information." ECF No. 15 ¶ 65; *see also id.* ¶ 47 ("On information and

---

[5] The Court may consider the GAO report in the context of the IRS's motion to dismiss because
the report is incorporated by reference into Plaintiff's Amended Complaint. *See Equal Emp't
Opportunity Comm'n v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir.
1997).

belief, the IRS has never instructed Mr. Shapley, Mr. Ziegler, or their representatives to refrain from publicly and unlawfully disclosing Plaintiff's confidential tax return information, much less taken reasonable steps to prevent its personnel from unlawfully accessing and disclosing Plaintiff's tax return information."), ¶ 27 (same). But these are simply allegations that the IRS did not prevent individual employees from failing to abide by the acknowledged IRS policy to protect taxpayer information, and as such do not state a safeguards claim. *See, e.g.*, *Doe*, 660 F. Supp. 2d at 43; *Dick v. Holder*, 67 F. Supp. 3d at 186; *Kvech v. Holder*, 2011 WL 4369452, at *6 n.11.

Ultimately, although described as a safeguards claim brought under 5 U.S.C. § 552a(e)(10), Plaintiff's Privacy Act claim is a repackaging of his improper disclosure claim in Count I of his Amended Complaint. It is well established, however, that "§ 6103 is the exclusive remedy for a taxpayer claiming unlawful disclosure of his or her tax returns and tax information." *Gardner v. United States*, 213 F.3d 735, 742 (D.C. Cir. 2000). In particular, "the Internal Revenue Code preempts the Privacy Act for remedies for disclosure of tax information." *Id.* at 741–42 (further noting that "§ 6103, with its detailed framework for access to and disclosure of tax records, preempts the relatively generic provisions of the Privacy Act"). Accordingly, because § 7431 is the exclusive remedy for § 6103 violations, a claim under the Privacy Act relating to the unauthorized disclosure of tax returns and return information—which is all that Plaintiff's claim is—must be dismissed. *Id.*; *Welborn*, 218 F. Supp. 3d at 81.

Finally, even if Plaintiff could state a safeguards claim, notwithstanding the failures discussed above, he would still fail to adequately plead that the IRS acted in a manner that was "intentional or willful"—which is a prerequisite for maintaining any damages claim. *See* 5 U.S.C. § 552a(g)(4); *see also Albright v. United States*, 732 F.2d 181,189 (D.C. Cir. 1984)

(explaining that the Privacy Act "does not make the Government strictly liable for every affirmative or negligent action [of an employee] that might be said technically to violate the Privacy Act's provisions"). Interpreting the "intentional or willful" requirement, the D.C. Circuit has explained that the alleged conduct must go beyond even "gross negligence." *Maydak v. United States*, 630 F.3d 166, 179 (D.C. Cir. 2010). To maintain a claim, a plaintiff must allege facts showing that the government acted "without grounds for believing it to be lawful," or in a manner that is "so 'patently egregious and unlawful' that anyone undertaking the conduct should have known it 'unlawful.'" *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (citation omitted).

Plaintiff fails to plead facts showing that any alleged safeguards violation met this standard. Most of his factual allegations on this issue are just restatements of the cause of action, without pleading any facts from which intentionality or willfulness could plausibly be inferred. *See, e.g.*, ECF No 1 ¶ 66 (alleging that "the IRS willfully and intentionally failed to establish appropriate" safeguards, without elaboration); *see also Kelley v. FBI*, 67 F. Supp. 3d 240, 257 (D.D.C. 2014) ("It is true that the talismanic words 'willful' and 'intentional' appear in the amended complaint[,] but those allegations cannot satisfy plaintiffs' pleading burden because they are nothing more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.") (internal quotation omitted). To the extent there are factual allegations regarding intentionality and willfulness at all, Plaintiff states only that the IRS must have been aware of public statements made by "Mr. Shapley, Mr. Ziegler, and their representatives," and "on information and belief, [ ] did nothing to prevent its agents from continuing to disclose Plaintiff's confidential tax information." ECF No. 15 ¶ 65.

The Court should reject such *ipse dixit* assertions. Even accepting Plaintiff's factual

allegations as true, they do not support a plausible inference that the agency intentionally or willfully failed to establish adequate technical or procedural safeguards to prevent disclosures from taking place. In *In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*, the D.C. Circuit allowed a safeguards claim to proceed against the Office of Personnel Management based on prior knowledge of disclosure of records. But it did so only where the agency "effectively left the door to its records unlocked by repeatedly failing to take basic, known, and available steps to secure the trove of sensitive information in its hands"—despite "long know[ing] that its electronic record-keeping systems were prime targets for hackers." *In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*, 928 F.3d at 63; *see also id.* at 64 (detailing warnings and the agency's choice to "continue operating . . . , without implementing even the basic steps needed to minimize the risk of a significant data breach"). Plaintiff's Amended Complaint lacks any similar allegations that the IRS ignored warnings that its data safeguards were inadequate, and, as discussed above, the GAO report Plaintiff relies on does not identify any deficiencies whatsoever in the IRS's safeguards. *See generally* GAO Rpt. Accordingly, Plaintiff's pleadings fail to clear the high hurdle of setting forth an intentional or willful violation of the Privacy Act.

## III.     Plaintiff's Claims for Non-Monetary Relief Should be Dismissed.

The Court should dismiss Plaintiff's requests for non-monetary relief because neither § 7431 nor the Privacy Act provides for the type of extraordinary relief he seeks. *See* ECF No. 15 at 26 (referring to subsections "A," "D," and "E" of Prayer for Relief). In this case, each statute lays out the remedies available to a wronged party, *e.g.*, actual damages (plus punitive damages if warranted) or statutory damages per wrongful disclosure under § 7431, and actual damages with a recovery no less than $1,000 under the Privacy Act. Plaintiff's demanded declaratory relief (*i.e.*, that the Court declare the IRS wrongfully disclosed confidential tax return

information; order the IRS to produce to Plaintiff all documents related to said disclosure; and order the IRS to adopt a data plan that satisfies the Privacy Act) goes well beyond what is available to him under the applicable statutes. "[T]he task for th[e] court is to determine whether plaintiffs' claims are based upon 'express mandates of the controlling statute' or 'go beyond what the statute itself requires.'" *Mason v. City of Huntsville, Ala.*, No. 10-2794, 2012 WL 4815518, at *14 (N.D. Ala. Oct. 10, 2012) (internal citations omitted). These unauthorized requests should be dismissed.

## CONCLUSION

For the foregoing reasons, the United States requests that the Court dismiss Count I to the extent it is based on the alleged unlawful disclosures made by Shapley Representative A and Shapley-Ziegler Representative B and dismiss Count II in its entirety.

Dated: February 27, 2024

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Mary Elizabeth Smith*
MARY ELIZABETH SMITH
Maryland Bar No. 0712110235
Trial Attorney, Tax Division
U.S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9779 (v)
(214) 880-9741 (f)
Mary.E.Smith@usdoj.gov

*/s/ Jeremy A. Rill*
JEREMY A. RILL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-307-0513 (v)
202-514-4963 (f)
Jeremy.A.Rill@usdoj.gov

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
(D.C. Bar No. 988057)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 305-0878 (v)
(202) 616-8470 (f)
Bradley.Humphreys@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on February 27, 2024, I filed the foregoing document with the Clerk of Court using the CM/ECF electronic filing system, which will send notification to all counsel of record.

_/s/ Mary Elizabeth Smith_
MARY ELIZABETH SMITH