# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ROBERT HUNTER BIDEN,

                Plaintiff,

    v.

UNITED STATES INTERNAL REVENUE
SERVICE,

                Defendant.

Civil Action No. 1:23-cv-02711-RC

Hon. Rudolph Contreras

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

Abbe David Lowell, Bar No. 358651DC
Christopher D. Man, Bar No. 453553DC
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
202-282-5000 (ph)
202-282-5100 (fax)

*Counsel for Robert Hunter Biden*

# INTRODUCTION

A core principle of the Internal Revenue Service's *The Taxpayer Bill of Rights* is as follows:

> "**8. The Right to Confidentiality:** Taxpayers have the right to expect that any information they provide to the IRS will not be disclosed unless authorized by the taxpayer or by law.  Taxpayers have the right to expect appropriate action will be taken against employees, return preparers, and others who wrongfully use or disclose taxpayer return information."[1]

This same principle is codified in 26 U.S.C. § 6103.

Quite simply, the IRS violated this fundamental right each time IRS employees improperly disclosed Mr. Biden's confidential tax return information.  That conduct is all the more egregious because the IRS tacitly endorsed those breaches to continue over and over again by failing to take any disciplinary action against the unlawful leakers or otherwise bring their misconduct to a stop. The IRS now improperly seeks to dismiss Mr. Biden's Section 6103 claim (Count I) as to those disclosures made only by the IRS agents' attorneys, claiming the IRS is only responsible when improper disclosures are made directly by IRS employees and not when IRS employees direct others to make the improper disclosures.  (DE 17 ("Mot.") at 1–2.)  In doing so, the IRS seeks to create an exception that would swallow the rule by allowing IRS employees to evade Section 6103 by doing indirectly what the IRS acknowledges they cannot do directly, simply by asking (or hiring) someone else to make the unlawful disclosure for them.  The spokespeople for the two IRS agents were not acting on their own volition.  They were, in every sense, the "agents" of the agents to carry out their wishes.  Such an exclusion is flatly precluded by the language of Section 6103 itself which prohibits IRS employees from causing an improper disclosure "in any manner," whether that is done directly or indirectly.  26 U.S.C. § 6103(a)(1).  It is also illogical and

---

[1] *Your Rights as a Taxpayer, The Taxpayer Bill of Rights*, Internal Revenue Serv., *available at* https://www.irs.gov/pub/irs-pdf/p1.pdf.

inconsistent with basic agency principles where a principal is responsible for what it directs its agents to do.  Moreover, the IRS agents directly made an improper disclosure when they provided the return information to their attorneys, who were not authorized to receive them, knowing that by doing so the information would be further disseminated to the public.

The IRS's attempt to dismiss the remaining claim fares no better.  In seeking to dismiss the Privacy Act claim (Count II), the IRS asserts that Mr. Biden failed to establish a "systematic failure by the IRS" (Mot. at 17), despite the fact that the IRS provided its agents Gary Shapley and Joseph Ziegler (the "agents") unfettered access to Mr. Biden's investigative case file for at least *nine months after* IRS supervisors decided they would remove the two agents from the case due to the poor relationship that had developed between agents Shapley and Ziegler and DOJ prosecutors at the time.[2]  Retrieving confidential return information from the possession of the very individuals

---

[2] According to the Office of Special Counsel David Weiss, in separately filed litigation against Mr. Biden in the Central District of California, IRS leadership decided to remove the agents "from the Biden matter…due to the poor relationship that had developed between Agents Shapley and Ziegler and the Department of Justice [] prosecutors assigned to the case." Ex. 5 (*United States v. Biden*, No. 2:23-cr-00599-MCS (C.D. Cal.) (DE 42-1 at ¶ 3) (Decl. of Michael T. Batdorf).)  The decision to remove the agents was made in December 2022 and they were formally replaced by new agents in May 2023.  *See id.* at ¶¶ 3–5.  The decision to remove the agents came after months of selective leaks to the media about Mr. Biden's case from law enforcement sources inside the investigation.  *See* Evan Perez & Kara Scannell, *Federal Investigation of Hunter Biden Reaches Critical Juncture, Sources Say*, CNN (July 20, 2022), https://www.cnn.com/2022/07/20/politics/hunter-biden-investigation-critical-juncture/index.html ("The federal investigation into Hunter Biden's business activities is nearing a critical juncture as investigators weigh possible charges and prosecutors confront Justice Department guidelines to generally avoid bringing politically sensitive cases close to an election, according to people briefed on the matter."); *see also* Devlin Barrett & Perry Stein, *Federal Agents See Chargeable Tax, Gun-Purchase Case Against Hunter Biden*, Wash. Post (Oct. 6, 2022), https://www.washingtonpost.com/national-security/2022/10/06/hunter-biden-tax-gun-charges/ ("Federal agents investigating President Biden's son Hunter have gathered what they believe is sufficient evidence to charge him with tax crimes and a false statement related to a gun purchase, according to people familiar with the case.").  In response, Mr. Biden's counsel sent several letters to DOJ Inspector General Michael Horowitz, asking that the Department investigate these purported leaks and where they came from.  Mr. Biden's counsel did not receive a response from the Inspector General's office.

who are threatening to make, are making, or have made unauthorized disclosures of that material is the most basic form of procedural safeguard that taxpayers should be able to expect from the IRS.  Failure to do so, whether implicitly or explicitly, serves as ratification of the agents' prior unauthorized disclosures and a tacit endorsement of the agents' subsequent unauthorized disclosures.  The IRS's motion to dismiss Count I in part and Count II of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) should be denied.

At this stage in the proceedings, Mr. Biden need only allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011) (the court must accept all material allegations of the complaint as true and view them in the light most favorable to the plaintiff). "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Espos Tech. Ltd. v. Pegasus Techs. Ltd.*, 636 F. Supp. 2d 57, 63 (D.D.C. 2009) (quoting *Twombly*, 550 U.S. at 555).  Mr. Biden has more than met his burden on both Counts.

Section 6103(a)(1) provides that "no officer or employee of the United States . . . shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section."  To recover under 26 U.S.C. § 7431(a)(1), a plaintiff need only prove: (1) a government employee knowingly or negligently disclosed confidential return information; and (2) the disclosure was not authorized by Section 6103.  *See Welborn v. IRS*, 218 F. Supp. 3d 64, 85 (D.D.C. 2016).  Here, Mr. Biden pled more than sufficient facts to establish his claim.  It is undisputed that Mr. Shapley and Mr. Ziegler are employees of the United States who obtained Mr. Biden's confidential return

information through their employment.  (Am. Compl. ¶ 3; *see supra* n.2.)  The agents made countless unauthorized disclosures to news media and other sources—which they were prohibited from doing *in any manner*—including by and through their lawyers, who were acting as the agents' agents.

5 U.S.C. § 552a(e)(10) requires the IRS to "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained."  The IRS's inexplicable failure to safeguard Mr. Biden's confidential return information is memorialized in the agents' own emails and affidavits, showing they retained access to the investigative file as recently as September 2023, months after IRS became aware of the first unauthorized disclosure.  The IRS's failure to remove Mr. Biden's investigative case file from the compromised agents' possession is just one example of the countless systematic failures that led to the reputational, emotional, and monetary harm Mr. Biden has suffered and for which he seeks redress.

## FACTUAL BACKGROUND

Beginning in at least April 2023, IRS agents Shapley and Ziegler began a relentless campaign to smear Mr. Biden in blatant violation of Section 6103 of the Internal Revenue Code ("IRC").  Mr. Shapley and Mr. Ziegler, with the help of their agents—here, private attorneys— and outside organizations (including the conservative fringe group, Empower Oversight), made repeated and numerous unauthorized disclosures of Mr. Biden's confidential return information during more than 20 nationally televised and non-congressionally sanctioned interviews in violation of 26 U.S.C. § 6103(b)(8).  (Am. Compl. at ¶ 4.)  These interviews included discussions

of, among other things, search warrants executed on Mr. Biden's property, allegedly improper deductions taken by Mr. Biden, and purported charges recommended by the investigating agents to Delaware prosecutors. *Id.* at ¶¶ 21–37. These blatant violations of the IRC undermine taxpayers' faith in the IRS's stated commitment to safeguarding confidential return information and maintaining the purported confidentiality of its investigations.

Beginning in April 2023, by and through his attorney, Mr. Shapley began directing (and then himself making) unauthorized disclosures of Mr. Biden's confidential return information to the public. His attorney-agent ("Shapley Representative A") made appearances on several news programs, communicating Mr. Shapley's assertion that the five-year IRS investigation of Mr. Biden was an example of preferential treatment and politics improperly infecting decision making at DOJ, before the matter was the subject of public litigation. *Id.* at ¶ 5. Mr. Shapley personally made unauthorized disclosures to the media soon after, as early as May 24, 2023 including allegations of "deviations in the investigative process" in the investigation of Mr. Biden. *Id.* at ¶ 26.

In late May and early June 2023, respectively, Mr. Shapley and Mr. Ziegler testified in closed-door sessions before the House Committee on Ways and Means. At the beginning of their congressional interviews, Mr. Shapley and Mr. Ziegler were each reminded that federal law requires them "not to speak about what we discuss in this interview to individuals not designated to received such [§ 6103 confidential return] information." *Id.* at ¶ 8. Despite this clear reminder of federal law, which they acknowledged and affirmed that day with respect to one specific taxpayer, Mr. Shapley and Mr. Ziegler did not heed it (despite their combined 27 years of experience at the IRS). Instead, the agents engaged in a public media campaign to selectively,

intentionally, and illegally disclose certain elements of Mr. Biden's tax return information, emboldened by those who seek to harm the President's son for political reasons.

Interviews with Mr. Shapley, Mr. Ziegler, and their attorney-agents aired on *CNN*, *CBS News*, *Fox News*, *The Megyn Kelly Show,* and *John Solomon Reports*, among others.  *Id*. at ¶¶ 22–26, 36–37, 39–46.  The contents of their media appearances highlight the extent of the unauthorized disclosures.  Not only did the agents confirm the existence of an investigation (which alone is a violation of Section 6103), the interviewers provided detailed allegations from the investigative case file.  The specific tax years under investigation, deduction amounts taken, the nature of those deductions, specific wire transfers of money, individual payments ascribed to memberships and tuition payments, and allegations of tax liability regarding specific tax years and amounts owed by Mr. Biden could only have been known to interviewers based upon a review of Mr. Biden's administrative file, including, but not limited to, the physical tax returns themselves.  *Id.* at ¶ 8.  In media interviews, Mr. Shapley and Mr. Ziegler later disclosed new allegations that had not been previously released by the House Ways and Means Committee, including that Mr. Ziegler had personally recommended *felony* and misdemeanor charges against Mr. Biden for tax year 2017. *Id.* at ¶ 9.  That recommendation based on confidential return information is subject to Section 6103 protection.

Importantly, Mr. Shapley and Mr. Ziegler remained members of the team investigating Mr. Biden until May 2023 (*see supra* n.2), weeks after they began their relentless media campaign against the target of the investigation and after Shapley Representative A sent letters to various members of Congress, dated April 19, 2023.  (Am. Compl. at ¶ 21.)  Although the decision to remove them from the case team was purportedly made five months earlier in December 2022 (Ex. 5 ¶ 3), Mr. Shapley and Mr. Ziegler inexplicably retained unfettered access to continue to mine

confidential return information from his case file until at least September 2023. Their continued access to the case file facilitated one unauthorized disclosure after another, and caused Mr. Biden significant reputational, emotional, and monetary harm.

On February 5, 2024, Mr. Biden filed an Amended Complaint (DE 15) against the IRS, seeking redress for the unlawful disclosure of his confidential return information in violation of 26 U.S.C. § 6103 and 28 U.S.C. § 7431, and the willful and intentional failure to establish appropriate administrative, technical and/or physical safeguards over the IRS's record system to ensure the security and confidentiality of his return information in violation of the Privacy Act, 5 U.S.C. § 552a. *Id.* at 1.

## ARGUMENT

### I. SECTION 6103 PROHIBITS UNAUTHORIZED DISCLOSURES "IN ANY MANNER"

The IRS ignores that Section 6103(a)(1) prohibits unlawful disclosures from being made "in any manner" in its effort to invent an exception where the "manner" involves an IRS agent ensuring that an improper disclosure is made by simply asking or hiring someone else to do it. In seeking the partial dismissal of Count 1, the IRS's only claim is that the disclosures made by the attorney-agents of Mr. Shapley and Mr. Ziegler, at their direction, are not the IRS's responsibility because those agents are not "officer[s] or employee[s] of the United States." (Mot. at 9.) This is wrong because the IRS is responsible for disclosures made "in any manner" by officers and employees of the United States, which Mr. Shapley and Mr. Ziegler unquestionably are. They made an improper disclosure to their attorneys, and they caused that disclosure to be amplified publicly by instructing their attorney-agents to broadcast the confidential information through news outlets. There is no "I just told one unauthorized person" exception, whether that person is a reporter or the IRS agent's attorney, and the IRS remains liable even if it is the attorney or

reporter who then amplifies the harm by disclosing confidential information to a wider audience.[3] The IRS could easily have instructed *their* agents to stop making improper disclosures and to stop having the agents' "agents" from doing the same.  The IRS did neither.

### A.    The Agents' Disclosures To Their Attorneys Were Not Authorized

Section 6103 prohibits Mr. Shapley and Mr. Ziegler, as employees of the United States, from making unauthorized disclosures, including unauthorized disclosures to any of their agents— here, private, for-hire attorneys.  Their unauthorized disclosures to their representatives are just as unlawful as disclosing confidential return information to anyone else who is not authorized to receive it.  Critically, the agents' disclosures *are not* afforded any special treatment because the recipient of the information is an attorney.  In *Vestal v. Dep't of Treasury*, 1 F.4th 1049 (Fed. Cir. 2021), IRS agent Ms. Vestal received notice of her proposed suspension "for displaying discourteous and unprofessional conduct and for failing to follow managerial directives."  *Id.* at 1051.   In preparing her defense, Ms. Vestal sent her attorney confidential taxpayer return information.  *Id.*  As a result, Ms. Vestal was removed from service for making an unauthorized disclosure in violation of Section 6103.  Ms. Vestal appealed her removal, but an administrative judge upheld her removal, finding that she did "'act[] intentionally in that she knowingly transmitted a taxpayer's record to her attorney'" despite the fact that Ms. Vestal "incorrectly believed that attorney-client privilege protected the disclosure to her attorney from being unauthorized."  *Id.* at 1052 (citing administrative judge decision).

The facts here are indistinguishable.  The agents made unauthorized disclosures of Mr. Biden's confidential return information to their hired agents, here legal representatives.  And, they

---

[3] The IRS seeks to dismiss Count 1 only with respect to the disclosures Mr. Shapley and Mr. Ziegler directed their attorney-agents to make.  The IRS does not seek dismissal of Count 1 as to improper disclosures made by Mr. Shapley and Mr. Ziegler personally.

did not do that simply to obtain legal advice, but then had their attorneys go out and be part of the public disclosures that occurred.  There is no question (and the IRS has not contested) that these disclosures were intentional.  Accordingly, even if the agents "incorrectly believed that attorney-client privilege protected the disclosure[s] to" Shapley Representative A and Shapley-Ziegler Representative B from being unauthorized, the agents have still violated Section 6103.  *Id.*

### B.   The Agents' Disclosures By and Through Their Attorneys Were Not Authorized

Section 6103 also prohibits Mr. Shapley and Mr. Ziegler from making unauthorized disclosures *in any manner*, including unauthorized disclosures *by and through* their agents—here, private attorneys.  "Disclosure is the making known of returns or return information in any manner. *A disclosure may be either direct or indirect*."  *Payne v. United States*, 91 F. Supp. 2d 1014, 1024 (S.D. Tex. 1999) (quoting Internal Revenue Manual—Administration, Special Agents Handbook, ¶¶ 348.1–348.2) (emphasis added); *see Comyns v. United States*, 155 F. Supp. 2d 1344, 1348 (S.D. Fla. 2001) ("Section 6103(b)(8) defines 'disclosure' broadly to include directly or indirectly 'making known to any person in any manner whatever.'), *aff'd*, 287 F.3d 1034 (11th Cir. 2002); *see also United States v. Recognition Equip. Inc.*, 720 F. Supp. 13, 14 (D.D.C. 1989) ("The rules governing the disclosure of tax returns and return information are strictly construed.") (citations omitted).

Mr. Shapley and Mr. Ziegler made unauthorized disclosures of Mr. Biden's confidential return information to their hired agents (in this case, legal representatives), then used their attorneys (Shapley Representative A and Shapley-Ziegler Representative B) as tools to make further unauthorized disclosures of Mr. Biden's confidential return information to as broad of an audience as possible.  There is no way to divorce Mr. Shapley and Mr. Ziegler from the actions of their agents.  By directing and utilizing their agents (here, private attorneys) as mouthpieces, Mr.

Shapley and Mr. Ziegler were indirectly making unauthorized disclosures of Mr. Biden's confidential return information to the public.  By the same token, when an IRS agent improperly leaks confidential information to a reporter or a blogger, the IRS cannot pretend that the IRS agent is not accountable just because the disclosure is more widely disseminated through the press or online by more than the one person the IRS agent spoke with.

If the Court accepts the IRS's position—that the IRS cannot be responsible for disclosures made by Mr. Shapley and Mr. Ziegler's personal representatives (e.g., the agents' "agents")—then any government employee with access to protected information could disseminate that information at will, so long as they add one layer between them—a person to assist with the logistics or public communications, or here, a cover person to shroud their violations and misdeeds.  That often happens anyway because IRS agents would expect to be fired or prosecuted if it was known that they had broken the law by causing an unauthorized disclosure.  What is particularly shocking here is that Mr. Shapley and Mr. Ziegler were brazen enough not to hide their identities, apparently predicting correctly that the IRS would do nothing to hold them accountable.

Before Mr. Shapley and Mr. Ziegler found the courage to show their faces, they hired their representatives to publicly disclose the information for them.  Under basic agency law principles, these attorney-agents acted at the direction of Mr. Shapley and Mr. Ziegler and, as principals in this agency relationship, Mr. Shapley and Mr. Ziegler are responsible for what they hired others (as their agents) to do on their behalf.  *See* Restatement (Second) of Agency § 140a (1958) ("a principal is subject to liability upon a transaction conducted by his agent, whom he has authorized or apparently authorized to conduct it in the way in which it is conducted, as if he had personally entered into the transaction"); *see also Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 138

(D.D.C. 2016) (agency law "provides that a principal can be liable for the actions of agents") (citation omitted).

### C.    The Agents' Own Disclosures Were Not Protected Whistleblower Disclosures

By violating the law, the agents (and IRS) have forfeited any argument that their unauthorized disclosures are protected whistleblower disclosures.  A central tenant of protected whistleblower disclosures is that the disclosure cannot be prohibited by law.  *See* Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8)(A) (prohibiting retaliation against whistleblowers "if such disclosure is *not specifically prohibited by law*") (emphasis added).  As the agents were well aware due to IRS's extensive training for agents on confidentiality, disclosure of taxpayer return information is prohibited by law.  26 U.S.C. § 6103(a).  However, Mr. Shapley and Mr. Ziegler were not left without means to report their concerns containing confidential return information by virtue of public disclosure being prohibited by law.  The Whistleblower Protection Act specifically allows for protected disclosures to federal inspectors general, the Office of the Special Counsel, and individuals within the whistleblower's agency who are authorized to receive the information. 5 U.S.C. § 2302(b)(8)(B).  Notably missing from that list is every major news network that the agents used to broadcast Mr. Biden's confidential return information.

The agents' own emails show that they were unhappy with the results of following proper reporting procedures for making protected disclosures, and thus decided to go rogue.  On May 18, 2023, after the unauthorized disclosures had begun, Mr. Ziegler wrote to IRS leadership: "For the last couple of years, my SSA [Mr. Shapley] and I have tried to gain the attention of our senior leadership about certain issues regarding the investigation.  I have asked for countless meetings with our chief and deputy chief, often to be left out on an island and not heard from. The lack of IRS-CI senior leadership involvement in this investigation is troubling and unacceptable."  (Ex. 1

(House Ways and Means Comm., Aff. of Joseph Ziegler (Aug. 2, 2023), Ex. 213 (May 18, 2023 email from Joseph Ziegler to Douglas O'Donnell, Daniel Werfel, James Lee, Guy Ficco, Michael Batdorf, Kareem Carter, Lola Watson).)  Unfortunately for the agents, being dissatisfied with the speed at which their internal complaints were being addressed or the actions taken in response does not give them the self-help remedy to air their grievances (and Mr. Biden's confidential return information) to the world.  There is no way their media campaign can be construed as protected whistleblower disclosures.

## II.   UNAUTHORIZED DISCLOSURES FOR THE PURPOSE OF PUBLICATION ARE HARSHLY PUNISHED IN OTHER CONTEXTS

Unauthorized disclosures of confidential government information in other contexts offers helpful insights into the federal government's treatment of disclosures for the purpose of publication.  Transmitting confidential return information to another for the purpose of disseminating is akin to leaking classified information to Wikileaks, which the United States treats as a serious crime worthy of significant prison sentences.  *See United States v. Schulte*, No. 1:17-cr-00548 (S.D.N.Y. 2024) (former CIA Officer Joshua Schulte was sentenced to 40 years in prison in connection with leaking classified information to Wikileaks).  No reasonable person would argue that government officials or employees who leak classified information to Wikileaks should not be held responsible because Wikileaks is the entity that disseminated the information to the public.  Rather, the government official or employee who had access to the information, whose actions proximately resulted in the information being placed in the public domain, is held responsible.

Additionally, transmitting confidential return information to another for the purpose of disseminating that information publicly is no different than transmitting or discussing confidential return information to or with the media for consumption.  Recently, Charles Littlejohn (a former

12

IRS contractor) was indicted and subsequently plead guilty to the unauthorized disclosure of confidential return information (as defined in 26 U.S.C. § 6103(n)) in violation of 26 U.S.C. § 7213(a)(1)).  *See United States v. Littlejohn*, No. 1:23-cr-343 (D.D.C. 2023).  Mr. Littlejohn admitted to releasing the confidential return information of former President Donald Trump (and others) to *The New York Times* and *ProPublica* and was recently sentenced to five years in prison.[4] Mr. Littlejohn disclosed Mr. Trump's confidential return information "out of a deep, moral belief that the American people had a right to know the information and sharing it was the only way to effect change." *Id.*

Surely the IRS would not argue that Mr. Littlejohn did not violate Section 6103 because the improper disclosure was disseminated more broadly by *The New York Times* or *ProPublica*, rather than by himself personally.  Even the IRS must see the illogical lack of limits to its position, as it has not sought to dismiss Count I with respect to statements made by Mr. Shapley and Mr. Ziegler on *Fox News* on the grounds that it was *Fox News* that actually broadcast their message.

Mr. Littlejohn's justification for disclosing confidential return information mirrors the purported "justifications" offered by these two IRS agents.  Mr. Shapley claimed he was "compelled by my conscience when decision after decision has been made to deviate from our normal investigative processes."  House Ways and Means Comm., Transcribed Interview of Gary A. Shapley, Jr. (May 26, 2023), at 32.  Mr. Ziegler's explanation was similar, that "[t]he American people deserve to know the truth."  House Committee on Oversight and Accountability, Testimony of Special Agent Joseph Ziegler (July 19, 2023), at 1.  Despite the eerily similar justifications for the exact same violation of federal law—unauthorized disclosure of confidential return

---

[4] *See* Brian Faler, *Trump Tax Return Leaker Sentenced to 5 Years in Prison*, Politico (Jan. 29, 2024),       https://www.politico.com/news/2024/01/29/irs-charles-littlejohn-tax-prison-trump-00138367.

information in violation of Section 6103—Mr. Littlejohn is serving a 5-year sentence in federal prison, while Mr. Shapley and Mr. Ziegler purportedly still work for the IRS,[5] where they have unfettered access to confidential return information, while simultaneously doing media appearances broadcasting Mr. Biden's confidential return information as recently as July and August 2023.  (Am. Compl. ¶ 54.)  The disparity in treatment of the Trump tax return information leaker and the Hunter Biden tax return information leakers is striking and could not be farther apart.  To be sure, there are protected whistleblower mechanisms available for persons like Mr. Littlejohn, Mr. Shapley, and Mr. Ziegler to raise concerns of misconduct; however, those lawful avenues surely do not include disclosures to the press or public.

## III.   MR. BIDEN HAS ADEQUATELY PLEAD A CLAIM UNDER THE PRIVACY ACT

### A.   The IRS Ratified The Agents' Prior Disclosures and Tacitly Endorsed Subsequent Disclosures By Allowing Them to Retain Mr. Biden's Investigative File

The IRS improperly seeks dismissal of Mr. Biden's Privacy Act claim by pretending that "he does not adequately plead that the IRS failed to implement policies to protect taxpayer information or that the IRS otherwise intentionally or willfully violated the Privacy Act."  (Mot. at 2.)  Yet, the agents' own emails in the weeks following their removal from the case—provided to the House Ways and Means Committee as part of the agents' continued disclosures—illustrate that the IRS failed to safeguard Mr. Biden's confidential return information from "anticipated threats" of subsequent disclosures by Mr. Shapley and Mr. Ziegler for months.  5 U.S.C. § 552a(e)(10); *see* Ex. 3 (House Ways and Means Comm., Aff. of Joseph Ziegler (Oct. 30, 2023),

---

[5] *See* Ex. 2 at 1 (April 4, 2024 letter from Shapley-Ziegler Representative B to Attorney General Garland) (describing the agents as "Internal Revenue Service ('IRS') Supervisory Special Agent ('SSA') Gary Shapley" and "IRS Special Agent ('SA') Joseph Ziegler").

Ex. 601 (May 24 – Sept. 1, 2023 emails between Joseph Ziegler, Gary Shapley, Lola Watson, Christine Puglisi, and other IRS employees)).  As Mr. Ziegler explained in his Affidavit to the House Ways and Means Committee, "[w]hen an investigation is reassigned to a new agent, closed or comes to a conclusion, we do not necessarily 'lose our access' to that taxpayer information. . . . As seen in these emails, *we have continued to assist* and turnover the Hunter Biden casefile to the new team."  (Ex. 4 at ¶ 6 (Aff. of Joseph Ziegler (Oct. 30, 2023) (emphasis added)).)

We do not have to take Mr. Ziegler's word for it on this one occasion; the agents' emails confirm exactly what he said: they retained unfettered access to Mr. Biden's case file until at least *September 2023.  See* Ex. 3.  For instance, at least three months *after having been removed* by supervisors from the Biden case, on August 30, 2023, Mr. Ziegler responded to an email chain (with Mr. Shapley) regarding transferring Mr. Biden's case file to new IRS case agents, describing how he was still in possession of "probably [] 3-4 banker boxes of [Mr. Biden's case file] records." (Ex. 3 at 2.)  Then, on September 1, 2023, Mr. Ziegler responded to the same email chain (again with Mr. Shapley), stating that he was "still having issues with the [file copying software]," so the copying of Mr. Biden's file was not complete.  *Id.* at 1.  It is remarkable that the IRS would allow these two agents—who by this point were actively commenting about the case in the public square—to maintain any, let alone near complete, access to Mr. Biden's case file.

Worse yet, the agents continued their pursuit to unlawfully interfere with Mr. Biden's case from both outside the investigation via their media campaign, as well as by attempting to influence the ongoing investigation by new case agents brought in to replace them.  For example, on August 29, 2023—just weeks before Mr. Biden was indicted by Special Counsel Weiss in Delaware on September 14[6]—Mr. Ziegler offered to meet in person with the new case agents, calling it a "good

---

[6] *See United States v. Biden*, No. 1:23-cr-00061-MN (D. Del. 2023) (DE 2).

idea" and writing, "I think that we could answer any questions that you might have, and that we could discuss some of the big picture issues we encountered throughout the investigation (this would include, but would not be limited to a discussion of key witness interviews not completed, and investigative steps that were circumvented)."  (Ex. 3 at 3.)

Knowledge that Mr. Shapley and Mr. Ziegler still had Mr. Biden's investigative file was not limited to low-level IRS employees.  On August 30, 2023, Mr. Ziegler sent an email on the same chain (again copying Mr. Shapley), stating, "I spoke with a *CIS Supervisor* yesterday in person [REDACTED] about getting the electronic products up to you.  He is going to check with *his manager at HQ*, but would like to transfer the electronic productions from one CIS to another CIS."  *Id*. at 3 (emphasis added).  It should go without saying, but the IRS should have a procedure to promptly remove investigative files from the possession of compromised agents in order to prevent unauthorized disclosures.  *See Doe v. Dep't of Justice*, 660 F. Supp. 2d 31, 43 (D.D.C. 2009) (requiring plaintiff to identify a rule or safeguard that the agency should have established but did not to state a claim under 5 U.S.C. § 552a(e)(1)).

The sources of the unauthorized disclosures—Mr. Shapley and Mr. Ziegler—still retained access to Mr. Biden's case file nine months after the decision was made to remove them from the investigation because of the risk they posed, and five months after their first instance of unauthorized disclosure (in April 2023).  (Am. Compl. ¶ 21.)  During this time period, Mr. Shapley and Mr. Ziegler provided hundreds of documents to multiple congressional committees (who subsequently released the documents to the public), participated in media interviews, and went on a full-fledged PR campaign to malign Mr. Biden's character.  The IRS was on notice that these

agents were continuously disobeying IRS policies and the law.[7] *See Pilon v. Dep't of Justice*, 796 F. Supp. 7, 12–13 (D.D.C. 1992) (holding that plaintiff satisfied Privacy Act safeguard claim by pleading "that the disclosures which are the subject of this lawsuit occurred after the [DOJ] became aware of several prior disclosures regarding this plaintiff and several requests for investigation and corrective action"). IRS cannot argue it was unaware of the "anticipated threat" of further disclosures of Mr. Biden's confidential return information. As explained by Shapley-Ziegler Representative B in his recent letter to Attorney General Garland, counsel for the agents and counsel for Mr. Biden sent *numerous* letters to DOJ, Inspector General Horowitz, Special Counsel David Weiss, and others complaining about the agents' disclosures. (Ex. 2 at 9–10.)

As if these communications were not enough, the agents' showed their flagrant disregard for what they knew to be the correct reporting procedure for their purported concerns directly to IRS leadership—those who could have and should have safeguarded Mr. Biden's confidential return information. On May 18, 2023, Mr. Ziegler sent an email expressing his anger with being removed from the investigation of Mr. Biden directly to IRS leadership, writing, "I apologize for breaking the managerial chain of command but the reason I am doing this is because I don't think my concerns and/or words are being relayed to your respective offices." (Ex. 1 at 1.) It is hard to imagine how the agents could possibly have made IRS leadership *more aware* of the threat they posed to the safeguarding of Mr. Biden's confidential return information—they sent letters, sent emails, and appeared on major cable news networks. IRS's ratification of the agents' prior disclosures and endorsement of their subsequent disclosures clearly satisfies the "intentional or

---

[7] According to Shapley-Ziegler Representative B, "neither SSA Shapley nor SA Ziegler have been informed of any investigation into their conduct…" (Ex. 2 at 19).

willful" requirement for maintaining a damages claim under the Privacy Act.   5 U.S.C. § 552a(g)(4).

### B.    Mr. Biden Suffered Actual Damages

Courts are clear that where a plaintiff has sufficiently made out a clear cause of action at the pleading stage, "the lack of detail in the complaint is not a basis for dismissing a claim for damages at this early stage of the litigation as plaintiffs are under no obligation to plead damages with particularity." *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 126 (D.D.C. 2018) (citation omitted).  Viewed under this standard, the IRS incorrectly asserts that Mr. Biden cannot recover under the Privacy Act because he did not allege actual damages at the pleading stage.  (Mot. at 12–13).

Nevertheless, Mr. Biden has sufficiently alleged actual damages at the pleading stage "directly traceable to the IRS's violations" (Am. Compl. ¶ 68), including reputational and emotional harm.  *Id.* at ¶ 10.  As a result of the agents' public and improper disclosures, Mr. Biden's children, close friends, other family members, and even his attorneys have been endlessly questioned and harassed.  Mr. Biden himself faced hours of questioning during a congressional deposition in February as a result of the agents' unlawful disclosures from members of Congress— some of whom received the information during the agents' purportedly "closed door" interviews. *Id.* at ¶¶ 27–29.  Although reputational harm is not ordinarily considered "actual damages" under the Privacy Act, Mr. Biden's reputational harm is inextricably tied to his pecuniary harm.  Harm to his reputation not only caused feelings of shame and embarrassment for himself and his family concerning the tax issues in the investigation but has directly resulted in the loss of present and future financial opportunities, such as his inability to resume his practice of law.  The agents' actions have also required him to incur substantial legal fees.  Moreover, the IRS's failure to

18

safeguard Mr. Biden's confidential return information during the period in which he was under federal investigation—and now that he is facing a nine-count tax indictment in California—makes it infinitely more difficult to afford Mr. Biden his most basic constitutional guarantee: the right to a fair trial.

The above facts more than satisfy Mr. Biden's burden to plead actual damages to sustain his action under the Privacy Act.  *See Fleck v. Dep't of Veterans Affs.*, 2020 WL 42842, at *8 (D.D.C. Jan. 3, 2020) ("The Court concludes that Plaintiff's allegation that he was denied a position that would have paid him more than his present job, although lacking in detail, suffices at the pleading stage. . . ."). Accordingly, alleging a failure to plead specific damages here affords the IRS no basis by which it may seek to partially dismiss the Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Defendant's partial motion to dismiss the Amended Complaint should be denied.

Dated: April 12, 2024                    Respectfully submitted,


                                         /s/ *Abbe David Lowell*
                                         Abbe David Lowell, Bar No. 358651DC
                                         Christopher D. Man, Bar No. 453553DC
                                         WINSTON & STRAWN LLP
                                         1901 L Street, NW
                                         Washington, DC 20036
                                         AbbeLowellPublicOutreach@winston.com
                                         CMan@winston.com
                                         202-282-5000 (ph)
                                         202-282-5100 (fax)

                                         *Counsel for Robert Hunter Biden*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 12, 2024, I filed the foregoing Opposition to Defendant's Partial Motion to Dismiss the Amended Complaint with the Clerk of Court using the CM/ECF electronic filing system, which will send notification to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*