# EXHIBIT 2

# EMPOWER OVERSIGHT
### W h i s t l e b l o w e r s   &   R e s e a r c h



**EMPOWR.us**

April 4, 2024

**Via Electronic Transmission**

The Honorable Merrick B. Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Dear Attorney General Garland:

Empower Oversight represents Internal Revenue Service ("IRS") Supervisory Special Agent ("SSA") Gary Shapley, along with our co-counsel, Nixon Peabody attorney Mark D. Lytle. The Department of Justice ("the Department") has retaliated against both SSA Shapley and his fellow IRS whistleblower, IRS Special Agent ("SA") Joseph Ziegler for their lawfully-protected disclosures about politics improperly infecting Department decisions in the Hunter Biden tax evasion case. Department officials on whom they blew the whistle had them removed from the case and are still in charge of related litigation that provides further opportunity to retaliate against our clients. Those cases include the Department's prosecution of Hunter Biden in Delaware and California, as well as Mr. Biden's own lawsuit against the IRS, which contains a number of allegations regarding SSA Shapley and SA Ziegler.

It is your job to put a stop to this retaliation, yet you have failed to do so.

Rather than vigorously defending the whistleblowers' protected disclosures, the Department's filings in these cases bizarrely ignore the key statutory provision found in the taxpayer privacy laws that authorizes what they did. The provision was adopted by Congress specifically to prevent retaliation against IRS whistleblowers, and SSA Shapley and SA Ziegler relied on this provision in coming forward to Congress.

Yet the Department pretends this critical portion of the taxpayer privacy law doesn't exist and conspicuously avoids citing or relying on it in relevant filings—even though it would be helpful to the Government's position. This failure to make every legal argument available only makes sense in light of the fact that those within the Department handling these cases have personal and institutional incentives to ignore the taxpayer whistleblower law. Regarding the whistleblower disclosures, these Department officials have an obvious conflict of interest, as the statute was used in this instance to blow the whistle on them or their offices. They have already demonstrated their inability to put that aside and objectively make all the legal arguments

available, including those that acknowledge the whistleblower disclosures are authorized and protected by law.

On issues related to the whistleblowers, Department attorneys and Hunter Biden's attorneys are simply not adversarial in these cases. They are acting as if they are on the same side. These conflicts demand your immediate attention. The public deserves to know whether and to what extent you have done your duty to mitigate these conflicts of interest and to ensure that the Department stops whistleblower retaliation rather than actively participating in it.

## BACKGROUND

The Internal Revenue Code's taxpayer privacy provisions, located at 26 U.S.C. § 6103, state that returns and return information shall be confidential.[1] However, at Section 6103(f)(5), the statute contains a clear exception for "Disclosure by whistleblower":

> Any person who otherwise has or had access to any return or return information under this section ***may disclose such return or return information to a committee*** referred to in paragraph (1) or any individual authorized to receive or inspect information under paragraph (4)(A) ***if such person believes such return or return information may relate to possible misconduct, maladministration,*** or taxpayer abuse.[2]

The committees "referred to in paragraph (1)" are the Committee on Ways and Means of the House of Representatives, the Committee on Finance of the Senate, or the Joint Committee on Taxation.[3]

This whistleblower provision in the taxpayer privacy laws was enacted in 1998 when Congress passed the IRS Restructuring and Reform Act of 1998.[4] The act was first introduced in the U.S. House of Representatives in response to Senate Finance Committee hearings in September 1997 that excoriated the IRS for its treatment of taxpayers—and of whistleblowers from within the IRS.[5] In the Senate, the Finance Committee amended the bill to add the new

---

[1] 26 U.S.C. § 6103(a).

[2] 26 U.S.C. § 6103(f)(5) (emphasis added).

[3] 26 U.S.C. § 6103(f)(1).

[4] Pub. L. No. 105-206, § 3708, 112 Stat. 685, 778 (1998).

[5] *Practices and Procedures of the Internal Revenue Service: Hearings Before the S. Comm. on Fin.*, 105th Cong. (1997).

For example, former historian for the IRS Shelley Davis testified to the Committee: "The IRS punished and retaliated against me when I gathered up all my courage and went forward with allegations that the IRS was breaking the law. . . . I went to the Treasury Department Inspector General to complain that the IRS was retaliating against me, and also to raise the issue that to have the very same agent to whom I had entrusted with my information about illegal activities at the IRS turn around and begin to investigate me was a conflict of interest. . . . [T]here has been a serious failure on the part of the IRS to manage employee integrity; wrongdoing by IRS managers is often ignored entirely or ineptly investigated; a pervasive fear exists among IRS employees that reported misconduct or cooperated in an investigation will result in retaliation against them. A mindset exists within IRS that seeks to preserve the agency's public image above all else." *Id.* at 36-38.

IRS employee Jennifer Long testified: "[C]omplaints to the IRS Inspection Division about possible management misconduct are routinely ignored, but often result in retaliation against the IRS employee reporting the problem. This is due to the fact that employees' identities are disclosed when the Inspection Division reports the infraction to management." *Id.* at 122. The IRS reportedly tried to retaliate against Ms. Long for that very testimony before the Committee. *See* United States Senate, Committee on Finance, "Roth Infuriated Over Treatment of IRS Agent-Witness Jennifer Long: Calls Written Warning a 'Clear Act of Retaliation'; Committee Will Investigate," Apr. 16,

Section 6103(f)(5), explaining in its bill report: "The Committee believes that it is appropriate to have the opportunity to receive tax return information directly from whistleblowers."[6] The initial whistleblower provision only covered disclosure of IRS employee or taxpayer abuse. But after another series of Senate Finance Committee hearings on the IRS,[7] a conference committee from the House of Representatives and Senate expanded the provision into its current form more broadly covering disclosures of "possible misconduct, maladministration, or taxpayer abuse."[8] The conference report noted of adding the whistleblower protections: "No inference is intended that such whistleblower disclosures are not permitted under present law."[9]

### *Pre-6103(f)(5) Disclosures to Congress*

In 2023, Empower Oversight began assisting in representing SSA Gary Shapley in pursuing the process to make protected disclosures to Congress under 26 U.S.C. § 6103(f)(5). On April 19, 2023, Empower Oversight's co-counsel, Nixon Peabody attorney Mark Lytle, transmitted a letter to Congress indicating that he represented "a career IRS Criminal Supervisory Special Agent who has been overseeing the ongoing and sensitive investigation of a high-profile, controversial subject since early 2020 and would like to make protected whistleblower disclosures to Congress."[10] Mr. Lytle identified three categories of "possible misconduct [or] maladministration" his client wanted to blow the whistle on pursuant to 26 U.S.C. § 6103(f)(5) and the protections afforded by 5 U.S.C. § 2302(b)(8)(C):

1) information contradicting a senior political appointee's sworn testimony to Congress;

2) the failure to mitigate clear conflicts of interest in the ultimate disposition of the case; and

3) preferential treatment and politics improperly infecting decisions and protocols.

---

1999, https://www.finance.senate.gov/chairmans-news/roth-infuriated-over-treatment-of-irs-agent-witness-jennifer-long.

A Criminal Investigator for the IRS's Internal Security Division, who chose to remain anonymous for fear of retaliation from the IRS, testified: "In the IRS, retaliation is swift and severe. . . . Another person complained to their Congressman. And it was held the employee during promotion and advancement. I hope you will respect the risk that these witnesses took to appear before you and protect them from any act of revenge by IRS management." *Practices and Procedures of the Internal Revenue Service: Hearings Before the S. Comm. on Fin.*, 105th Cong. 149 (1997).

[6] S. REP. NO. 105-174, at 105 (1998).

[7] *IRS Oversight: Hearings Before the S. Comm. on Fin.*, 105th Cong. (1998). In these hearings, Yvonne D. DesJardins, Chief of the Employee and Labor Relations Section in the IRS's Personnel Branch, testified: "I have observed . . . the manner in which the IRS deals with whistleblowers. The whistleblowers are ostracized and careers destroyed . . . ." *Id*. at 19-20.

Senator Chuck Grassley asked Leroy Warren, Chairman of the National Association for the Advancement of Colored Peoples' Criminal Justice Committee: "How wide is retaliation against those employees who complain and who stand up for what might be their rights?" Mr. Warren responded: "I would say it is 90 percent of the time, and it is a death sentence for upward mobility and you are going to be ostracized, you are going to be punished, and you are going to be subject to retaliation. There is a 90 percent chance. I would say it is probably close to 90 percent. I know of very few people who have filed a complaint and not been subject to what I call State-sanctioned terrorism right after they filed the complaint." *Id*. at 113-14.

[8] H.R. REP. NO. 105-599, at 309 (1998) (Conf. Rep.).

[9] *Id*.

[10] Letter from Mark D. Lytle to the Honorable Ron Wyden, et al. (Apr. 19, 2023), at 1, *available at* https://empowr.us/wp-content/uploads/2024/04/2023-04-19-Letter-to-Congress.pdf.

These allegations fall squarely within the types of information the law explicitly authorizes whistleblowers to disclose through Section 6103(f)(5), although Mr. Lytle's letter indicated that "[o]ut of an abundance of caution regarding taxpayer privacy laws, my client has refrained from sharing certain information even with me in the course of seeking legal advice."[11] Mr. Lytle requested that Congress work with him to "facilitate sharing this information with Congress legally," indicating he would move forward only "[w]ith the appropriate legal protections and in the appropriate setting."[12]

To be clear, the April 19 letter did not identify Hunter Biden either explicitly or implicitly.[13] It did not even disclose that the investigation in question was being conducted in the District of Delaware. Nor did the letter specify which sworn congressional testimony the disclosures would contradict, which public officials had the unmitigated conflicts of interest, or which political considerations had improperly infected key decision—arguably all of which could have been lawfully disclosed at that time without explicitly naming Hunter Biden.

In fact, the public did not learn of the IRS investigation into Hunter Biden from our legal team or our client—the public learned of it from Hunter Biden when he announced it on December 9, 2020.[14] Yet Mr. Lytle stuck to the information in his letter when appearing on news media. When confronted with press speculation that the disclosures his client wanted to make involved Hunter Biden, Mr. Lytle explicitly refused to confirm such speculation.[15]

Despite the lack of any identifying taxpayer information whatsoever in Mr. Lytle's April 19 letter, which clearly expressed an intent to respect all relevant laws, on April 21, 2023, Mr. Biden's attorney Christopher Clark wrote to both the U.S. Attorney's Office for the District of Delaware and the Department's Tax Division regarding Mr. Lytle's April 19, 2023 letter to Congress.[16] Mr. Clark alleged that the letter constituted "a severe and concerning leak of the deliberations of the Office and the Tax Division regarding an ongoing tax investigation."[17]

---

[11] *Id.* at 2.

[12] *Id.*

[13] Neither our legal team nor SSA Shapley confirmed the identity of the subject *at any time* prior to the House Committee on Ways and Means voting on June 22, 2023 to submit to the House of Representatives information publicly revealing that Mr. Biden was the subject of the investigation in question.

[14] On December 9, 2020, Mr. Biden publicly announced: "I learned yesterday for the first time that the U.S. attorney's office in Delaware advised my legal counsel, also yesterday, that they are investigating my tax affairs." *See, e.g.*, Adam Goldman, et al., *Hunter Biden Discloses He Is Focus of Federal Tax Inquiry*, N.Y. TIMES, Dec. 9, 2020, *available at* https://www.nytimes.com/2020/12/09/us/politics/hunter-biden-tax-investigation.html.

[15] For example, in an April 19, 2023 appearance that aired on CBS Evening News, CBS chief investigative correspondent Jim Axelrod stated in a voiceover: "Lytle wouldn't talk in specifics, declining to identify either his client or the target of the investigation his client helped conduct." Mr. Axelrod then asked Mr. Lytle on camera: "Can you identify him?" Mr. Lytle responded: "I can't at this stage, Jim." *See* https://www.cbs.com/shows/video/jvL6_Mye_3V9eE8trZt8UZ2gQuPV2mCw.

Similarly, in an appearance on Fox News' Special Report with Bret Baier on April 20, 2023, Mr. Lytle stated: "There are laws in place, federal laws, that protect the privacy of taxpayers and taxpayer information. They're very specific about what can be said and what can't be said, and under what circumstances that can take place. . . . We are not able to talk about any particular cases. . . . [SSA Shapley] has spotted and observed things that were done differently in this particular matter, which I can't identify . . . . I can't talk specifically about who it was that my client's talking about, and I know there's been a lot of reporting, and I can't address that." *See* https://www.foxnews.com/video/6325470127112.

[16] Letter from Christopher J. Clark to Mark F. Daly, et al. (Apr. 21, 2023), *available at* https://www.politico.com/f/?id=0000018a-96d6-dd5e-abfe-9fd6541e0000.

[17] *Id.* at 2.

Mr. Clark failed to mention in his letter to the Department Mr. Lytle's request that Congress work with him to "facilitate sharing this information with Congress legally" via 26 U.S.C. § 6103(f)(5) ("Disclosure by whistleblower").[18] Mr. Clark understood Mr. Lytle's request but seemed determined to misinform the Department. Mr. Clark's next line falsely claimed: "Moreover, the leaker, who styles himself as a whistleblower, appears to seek to disclose further information about the investigation into our client, in clear violation of the confidentiality mandates of Fed. R. Crim. Proc. 6(e) and 26 U.S.C. § 6103."[19]

In an apparent attempt to ensure that political appointees of his client's father became involved, Mr. Clark also wrote Associate Deputy Attorney General Bradley Weinsheimer, who reports to your Deputy Attorney General Lisa Monaco, to repeat his false claims: "[E]arlier this week, an agent from the IRS leaked information to Congress and the press, apparently in violation of federal law, regarding the investigation of our client . . . . We ask that the Department inform us of the steps it is going to undertake to end these pernicious leaks in a case of national interest."[20]

Mr. Clark's allegation that the April 19, 2023 letter represented a "violation of federal law" is laughably absurd, but his efforts to lobby the Biden Administration to "end" this protected whistleblowing raises seriously alarming issues that undermine the public's faith in the integrity of the Department and whistleblower protections in general.

### *Protected 6103(f)(5) Disclosures to Congress*

Following the April 19, 2023 letter carefully exploring how our client could actually disclose taxpayer information to Congress with fully informed advice of counsel, which had not yet occurred, **two** congressional committees (one chaired by a Democrat and the other chaired by a Republican) explicitly affirmed his right to make such disclosures and actively participated in facilitating them, pursuant to their statutory authorities.

Both the U.S. House Committee on Ways and Means and the U.S. Senate Committee on Finance authorized SSA Shapley to disclose protected information to his attorneys for the purpose of preparing relevant disclosures to the committees under 26 U.S.C. § 6103(f)(5). The law explicitly empowers the relevant committee chairs to designate individuals as its agents to review tax return information and both did so in writing.

On April 26, 2023, Ways and Means Chairman Jason Smith provided a written authorization to Mr. Lytle and myself to "designate[] [us] as agents under Internal Revenue Code section 6103(f)(4) for purposes of the whistleblower complaint . . . [and] for the purpose of properly administering section 6103(f)(5)."[21]

On April 27, 2023, Finance Chairman Ron Wyden provided a similar written authorization to "designate [us] as my agent[s] for the limited purpose of providing legal

---

[18] Letter from Mark D. Lytle to the Honorable Ron Wyden, et al. (Apr. 19, 2023), at 2.

[19] *Id.* at 2.

[20] Letter from Christopher J. Clark to Brad Weinsheimer (Apr. 21, 2023), at 1, *available at* https://www.politico.com/f/?id=0000018a-96d6-dd5e-abfe-9fd6541e0000.

[21] Letter from the Honorable Jason Smith to Mark Lytle and Tristan Leavitt (Apr. 26, 2023), at 1.

representation to an individual who seeks to make *permitted disclosures* pursuant to section 6103(f)(5) . . . ."[22]

On May 24, 2023, the CBS Evening News aired an interview with SSA Shapley.[23] It occurred as various news outlets were on the verge of confirming and reporting SSA Shapley's identity without his consent. The interview was SSA Shapley's first public acknowledgement that he was the whistleblower represented by Mr. Lytle and seeking to make protected disclosures to Congress under 26 U.S.C. § 6103(f)(5). But like Mr. Lytle in interviews before him, SSA Shapley refused to identify the subject of the case about which he sought to make protected disclosures.

In a voiceover, CBS chief investigative correspondent Jim Axelrod stated: "In January 2020, [SSA Shapley] was assigned to what he called a high-profile investigation." At the outset of the piece, SSA Shapley was shown saying, "When I took control of this particular investigation, I immediately saw it was way outside the norm of what I've experienced in the past." But when Mr. Axelrod asked SSA Shapley: "Who's the subject of the investigation?" SSA Shapley responded: "I can't confirm or deny the subject of this investigation." Mr. Axelrod asked, "Why not?" SSA Shapley responded: "Because . . . part of the tax secrecy laws don't allow it."[24] When asked, "Did you let prosecutors know you were unhappy?" SSA Shapley responded, "I don't think I can answer that." Mr. Axelrod noted in the piece: "Shapley is seeking legal protections from Congress so he can share specifics of his allegations."[25]

When SSA Shapley sat for his May 26, 2023 transcribed interview with both Democratic and Republican staff of the House Ways and Means Committee, counsel for the Committee reassured SSA Shapley of his legal right to make protected disclosures to the Committee under 26 U.S.C. § 6103(f)(5). As recorded in the now-public transcript of the interview, Committee counsel informed SSA Shapley:

> 26 U.S.C. Section 6103 makes tax returns and return information confidential, subject to specific authorizations or exceptions in the statute. *The statute anticipates and provides for whistleblowers like yourself to come forward and share information with Congress under Section 6103(f)(5).* Specifically, that statute permits a person with access to returns or return information to disclose it to a committee referred to in subsection (f)(1) or any individual authorized to receive or inspect information under paragraph (4)(A) if the whistleblower believes such return or return information may relate to possible misconduct, maladministration, or taxpayer abuse.[26]

The Committee counsel then asked: "Have you had access to return information that you

---

[22] Letter from the Honorable Ron Wyden to Tristan Leavitt (Apr. 27, 2023), at 1 (emphasis added); letter from the Honorable Ron Wyden to Mark Lytle (Apr. 27, 2023), at 1 (emphasis added).

[23] *Available at* https://www.cbs.com/shows/video/PQb14_UPMfgheb2lK0vDdqc3moElVDQ5.

[24] We do not know on what basis CBS News or any other news outlet purported to have learned that the investigation was into Hunter Biden.

[25] In fact, CBS News misunderstood the nature of our interactions with Congress. While Mr. Lytle and I sought legal protections for SSA Shapley to share the taxpayer privacy information *with us* so we could effectively represent him in making disclosures under 26 U.S.C. § 6103(f)(5), for anyone who legally "otherwise has or had access to any return or return information," section (f)(5) fully protects the right to make whistleblower disclosures of such information directly to the correct committee of Congress. The statute does not require that such whistleblowers obtain additional protection or approval from Congress.

[26] United States House of Representatives, Committee on Ways and Means, Interview of Gary A. Shapley, Jr. (May 26, 2023), at 6, *available at* https://waysandmeans.house.gov/wp-content/uploads/2023/06/Whistleblower-1-Transcript_Redacted.pdf.

believe may relate to possible misconduct, maladministration, or taxpayer abuse?" When SSA Shapley answered in the affirmative, the Committee counsel asked: "Do you wish to disclose such information to the committee today?"[27] When he again answered in the affirmative, the Committee counsel stated:

> In addition to Section 6103(f)(5), the chairman of the committee on Ways and Means has authority under Section 6103(f)(4)(A) to designate agents to receive and inspect returns and return information. To facilitate the disclosures you wish to make here today, Chairman Smith has designated the individuals in this room for the purposes of receiving the information you wish to share. The chairman considers this entire interview and the resulting transcript as protected confidential information under Section 6103.[28]

With those assurances, SSA Shapley proceeded under Section 6103(f)(5) to make protected disclosures to the designated staff about the Department's handling of the investigation and prosecution of Hunter Biden—particularly the U.S. Attorney's Office for the District of Delaware, led by U.S. Attorney David Weiss, and the Department's Tax Division. His interview contained no grand jury information.

According to the now-public transcript subsequently released by the Committee pursuant to its statutory authority, counsel for the Ways and Means Committee provided similar assurances to IRS SA Joseph Ziegler when he was interviewed on June 1, 2023.[29]

### *Congress's Statutory Release of Taxpayer Information Under 6103(f)(4)(A)*

Three weeks later, on June 22, 2023, the Committee debated in closed executive session whether to release the interview transcripts of SSA Shapley and SA Ziegler, along with certain supplemental materials, to the full House of Representatives pursuant to 26 U.S.C. § 6103(f)(4)(A). That section states, in part:

> Any committee described in paragraph (1) or the Chief of Staff of the Joint Committee on Taxation shall have the authority, acting directly, or by or through such examiners or agents as the chairman of such committee or such chief of staff may designate or appoint, to inspect returns and return information at such time and in such manner as may be determined by such chairman or chief of staff. ***Any return or return information obtained by or on behalf of such committee pursuant to the provisions of this subsection may be submitted by the committee to the Senate or the House of Representatives, or to both.***[30]

According to the now-public transcript of the closed debate, Chairman Smith designated the present Members of Congress and Committee staff as his agents under 26 U.S.C.

---

[27] *Id.* at 6-7.

[28] *Id.* at 7.

[29] United States House of Representatives, Committee on Ways and Means, Interview of [Redacted] (June 1, 2023), at 6-7, *available at* https://waysandmeans.house.gov/wp-content/uploads/2023/06/Whistleblower-2-Transcript_Redacted.pdf.

[30] 26 U.S.C. § 6103(f)(4)(A) (emphasis added).

§ 6103(f)(4)(A), thereby authorized to receive information otherwise protected by Section 6103.[31] Chairman Smith admonished those present:

> Before we begin, I would like to remind those in this room that during today's meeting we will discuss confidential tax information protected by Internal Revenue Code section 6103. Unauthorized disclosure of tax information is a felony and is punishable by a fine of up to $5,000 or imprisonment of not more than 5 years. Given the potential consequences for improper disclosure, the Committee takes the protection of this information extremely serious[ly].[32]

Chairman Smith further declared:

> Only the Ways and Means Committee has the ability to legally report this information to the full House of Representatives and thereby make it known to the public. . . . Our solemn duty today is to consider the merits of presenting these materials to the full House of Representatives.[33]

Ultimately, the Committee voted 25 to 18 to submit the materials in question to the full House of Representatives.[34] The Committee subsequently posted the materials on its website.[35] The Committee's vote resulted in the materials' official release into the public domain, and with that official release, the loss of any taxpayer's legal right to privacy in the public information. *See William E. Schrambling Accountancy Corp. v. United States,* 937 F.2d 1485, 1489 (9th Cir. 1991) (information contained in Notice of Federal Tax Lien and bankruptcy petition are no longer confidential, therefore disclosure did not violate section 6103), cert. denied, 502 U.S. 1066 (1992); *Lampert v. United States,* 854 F.2d 335, 338 (9th Cir. 1988) (once tax return information is made a part of the public domain, that taxpayer can no longer claim a right to privacy in that information). Members of Congress who received the confidential information under 26 U.S.C. § 6103(f) were then free to speak about the materials officially released to the public—and did.[36]

---

[31] *Consideration of Documents Protected Under Internal Revenue Code Section 6103: Exec. Session Before the H. Comm. on Ways and Means*, 118th Cong. 3 (June 22, 2023).

[32] *Id.*

[33] *Id.* at 3-4, 6.

[34] *See* United States House of Representatives, Committee on Ways and Means, Votes of the Committee (June 22, 2023), https://gop-waysandmeans.house.gov/wp-content/uploads/2023/06/COMPILED_Votes-06.22.pdf.

[35] United States House of Representatives, Committee on Ways and Means, "Meeting on Documents Protected Under Internal Revenue Code Section 6103," June 22, 2023, https://waysandmeans.house.gov/event/meeting-on-documents-protected-under-internal-revenue-code-section-6103.

[36] *See, e.g.,* C-SPAN, "Rep. Jason Smith News Conference on Hunter Biden Investigation," June 22, 2023, https://www.c-span.org/video/?528915-101/rep-jason-smith-news-conference-hunter-biden-investigation; C-SPAN, "House Ways and Means Committee Democrats on IRS Whistleblowers Evidence," Sept. 27, 2023, https://www.c-span.org/video/?530771-1/house-ways-means-committee-democrats-irs-whistleblowers-evidence (Reporter: "What exactly did you guys vote to release?" Ranking Member Richard Neal: "The transcripts. Yeah. Lloyd did a really fine job." Reporter: "No documents?" Rep. Lloyd Doggett: "Seven hundred pages of documents. . . . I invite you to sift through it and find anything that points a finger with direct evidence against President Biden. There is one thing that does, and that's from this guy Bobinksi [sic]. It's a[n] FBI interview, and he is the same fella who told Tucker Carlson in two interviews that he had audio of the President. . . . You go through that 700 pages you see all this WhatsApp, you see all these letters going back and forth . . . . We released [the IRS whistleblower] transcripts on June 22. This is 700 pages of documents that they have produced since that time to the Committee, their affidavits with them. There are some transcripts, but much of the information is just documents they provided, like an FBI interview. . . . There's another interview . . . with James Biden, and they have the summary, but they don't have the transcript. . . . If there's evidence of corruption or wrongdoing here, I want it out.")

The Internal Revenue Manual is the official authoritative source of guidance for all IRS employees, including SSA Shapley and SA Ziegler.[37] The Manual recognizes the "public record exception" and instructs IRS employees that it applies once "a taxpayer's return information is lawfully disclosed."[38] Accordingly, in their public appearances after the Committee's release of the information about Mr. Biden into the public domain, SSA Shapley and SA Ziegler relied on their agency's official guidance that the information was no longer confidential. Mr. Lytle and I also publicly discussed the information, which like any American citizen we had a First Amendment right to do. None of us discussed any information about Mr. Biden which had not been included in the Committee on Ways and Means' June 22, 2023 release.

### *Retaliatory Response from Hunter Biden and His Legal Team*

On June 27, 2023, five days after the Committee's vote, Michael Schmidt, a reporter for *The New York Times*, contacted our legal team to seek comment on a story he was writing. Mr. Schmidt said that Hunter Biden's defense counsel had sent the Department a letter asking in writing that it investigate our client, SSA Shapley, for allegedly breaking laws protecting the privacy of grand jury deliberations. When asked for a copy of the letter, Mr. Schmidt claimed neither he nor his colleagues at the paper had a copy, and when pressed for details of the allegations on which he was seeking comment, his replies were vague and inconsistent. It was unclear whether he learned of the defense counsel allegations from Mr. Biden's legal team or from the Department. Either way, the story published by *The New York Times* failed to share with readers the detail that the Biden attorneys had made their allegations in writing, instead reporting merely: "Hunter Biden's lawyers have told the Justice Department that Mr. Shapley has broken federal laws that keep grand jury material secret."[39]

On June 28, 2023, our legal team contacted the Department's Inspector General, Michael Horowitz, to report this effort to retaliate against SSA Shapley for his protected

---

This is similar to when the Committee on Ways and Means voted in 2022 to release the tax returns of former President Donald Trump: members of that Committee publicly discussed then the taxpayer information formerly protected by 26 U.S.C. § 6103. *See, e.g.,* C-SPAN, "Ways and Means Cmte. Chair Rep. Richard Neal Holds Press Conference on Pres. Trump's Tax Returns," Dec. 20, 2022, https://www.c-span.org/video/?524979-1/ways-means-cmte-chair-rep-richard-neal-holds-press-conference-pres-trumps-tax-returns; *see also* C-SPAN, "House Ways and Means Committee Democrats on IRS Whistleblowers Evidence," Sept. 27, 2023, https://www.c-span.org/video/?530771-1/house-ways-means-committee-democrats-irs-whistleblowers-evidence (Ranking Member Richard Neal: "We were very careful in following the legal advice suggesting 'stick to the facts in the case' under 6103.").

[37] According to the Manual:

1. The IRM is the official compilation of IRS policies, procedures and guidelines.

2. The purpose of the IRM is to provide instructions to staff. These instructions relate to administration and operation of the IRS for all business units. The IRM ensures employees have the approved guidelines, policies and authorities they need to carry out their responsibilities in administering tax laws and other agency obligations. The IRM explains what needs to be done, how to do it and who is responsible to ensure consistent work performance.

Internal Revenue Manual 1.11.6.2 (03-23-2022).

[38] Internal Revenue Manual 9.3.2.6 (06-05-2006).

[39] Glenn Thrush and Michael S. Schmidt, *Competing Accounts of Justice Dept.'s Handling of Hunter Biden Case*, N.Y. Times, June 27, 2023, *available at* https://www.nytimes.com/2023/06/27/us/politics/irs-official-justice-dept-hunter-biden.html.

disclosures and intimidate him as a cooperating witness in the Inspector General's investigation of those disclosures.[40]

On June 29, 2023, Mr. Clark *also* wrote privately to Inspector General Horowitz.[41] Mr. Clark falsely declared: "The dissemination of grand jury and taxpayer information, including through multiple nationally-televised on-camera interview of IRS Supervisory Special Agent Gary Shapley, is a *clear-cut crime* unprotected by any whistleblower statute or other federal law . . . ." Although Mr. Clark acknowledged the House Ways and Means Committee's release of his client's information, Mr. Clark argued to Mr. Horowitz that SSA Shapley's and SA Ziegler's statements about the information in the public domain "are quite simply felonies."[42] Mr. Clark wrote: "[P]erhaps most egregious and outrageous statements by Supervisory Special Agent Shapley are related to his public disclosure directly to national news media of various purported line-item entries in our client's tax returns, which he claims were improper."[43] As Mr. Clark knew well, all of the information discussed by SSA Shapley had already been made a matter of public record when the House Ways and Means Committee voted to deliberately release SSA Shapley's interview on those precise line-item entries. Finally, Mr. Clark baselessly accused SSA Shapley of being the source of prior, unauthorized leaks to the media that occurred before SSA Shapley came forward to Congress.[44] Mr. Clark's letter to Mr. Horowitz was not reported on by the press at the time.

On June 30, 2023, another of Mr. Biden's defense attorneys, Abbe Lowell, wrote to Chairman Smith of the House Ways and Means Committee.[45] Mr. Lowell's letter claimed the Committee's actions "violated the spirit, *if not the letter*, of the tax laws and federal rules governing investigations . . . ."[46] Mr. Lowell falsely asserted: "Mr. Shapley may be reaping the 'reward' from the cover you have given him considering the penalties for agents illegally leaking this type of information."[47] Mr. Lowell's letter—and its false innuendo—were covered in the news media, which reported Mr. Lowell was "implying that Shapley was the source of leaks to the press about the Justice Department's investigation into Hunter Biden."[48]

---

[40] Email from Jason Foster to Inspector General Michael Horowitz, *et al.*, June 28, 2023, 11:09 AM, *available at* https://empowr.us/wp-content/uploads/2024/04/2023-06-08-Foster-email-to-Horowitz_Redacted.pdf.

[41] Letter from Christopher J. Clark to the Honorable Michael E. Horowitz (June 29, 2023), *available at* https://www.politico.com/f/?id=0000018a-96d6-dd5e-abfe-9fd6541e0000.

[42] *Id.* at 4.

[43] *Id.* at 4-5.

[44] *Id.* at 3. In fact, SSA Shapley executed a sworn affidavit under penalty of perjury that he was never the source of *any* unauthorized disclosures. He also publicly released the *Washington Post* from any potential pledge of source confidentially (because none exists). *See* letter from Jason Foster, et al. to Devlin Barrett and Perry Stein (July 3, 2023), *available at* https://empowr.us/wp-content/uploads/2024/03/2023-07-03-Letter-to-WaPo-with-affidavit-2.pdf.

[45] Letter from Abbe David Lowell to the Honorable Jason Smith (June 30, 2023), *available at* https://www.documentcloud.org/documents/23865634-230630-hunter-biden.

[46] *Id.* at 1 (emphasis added).

[47] *Id.* at 4.

[48] Lucien Bruggeman, *In letter to House committee chair, Hunter Biden's lawyer slams IRS whistleblower as 'disgruntled,'* ABC NEWS, June 30, 2023, https://abcnews.go.com/US/letter-house-committee-chair-hunter-bidens-lawyer-slams/story?id=100546653.

### *Mr. Biden's False Claims to Court*

Yet less than a month later, Mr. Biden's legal team began arguing that SSA Shapley and SA Ziegler violated even *the letter* of the taxpayer privacy laws simply by disclosing any taxpayer information to the House Ways and Means Committee, or by the Committee further disclosing the information. On July 25, 2023, Ways and Means Chairman Jason Smith submitted the SSA Shapley's and SA Ziegler's transcripts in a July 25, 2023 amicus curiae brief to the U.S. District Court for the District of Delaware.[49] The amicus brief was accompanied by an earlier July 14, 2023 letter Chairman Smith sent you and U.S. Attorney Weiss, which explained:

> The U.S. House Committee on Ways and Means recently voted to submit to the full House of Representatives the transcripts of whistleblower testimony . . . . Through that process, the transcripts became publicly available. These whistleblowers provided information to the Committee under 26 U.S.C. § 6103(f)(5) . . . .[50]

Yet Mr. Biden's defense counsel contacted counsel for Chairman Smith alleging the material "violated the court's rules because it contained 'grand jury and confidential tax payer information that must be sealed immediately.'"[51] Shortly thereafter, Mr. Clark submitted a letter to the court opposing Chairman Smith's application to intervene as amicus,[52] and attaching a letter to Chairman Smith's counsel which declared: "[Y]ou have refused to file these materials under seal, frivolously claiming that because a congressional committee has improperly disseminated these materials, they no longer need protection. Your position is baseless and abusive."[53]

The next day, after the July 26, 2023 hearing in which Judge Maryellen Noreika rejected Mr. Biden's plea deal, Mr. Biden's legal team doubled down on falsely claiming that the information provided by the IRS whistleblowers is "protected from disclosure under Rule 6(e) and 26 U.S.C. § 6103" and that its "dissemination is prohibited by law."[54] Their filing contained

---

[49] *United States v. Biden*, No. 23-00274-MN (D. Del. July 25, 2023) (Letter) [ECF Doc. 7].

[50] *United States v. Biden*, No. 23-00274-MN (D. Del. July 25, 2023) (Exhibits 1 to 6 to Amicus Brief 2) [ECF Doc. 7-4].

[51] *United States v. Biden*, No. 23-00274-MN (D. Del. July 25, 2023) (Exhibit A) [ECF Doc. 8].

[52] *United States v. Biden*, No. 23-00274-MN (D. Del. July 25, 2023) (Letter) [ECF Doc. 9].

[53] *United States v. Biden*, No. 23-00274-MN (D. Del. July 25, 2023) (Exhibit A) [ECF Doc. 9-1]. According to the docket in that case, Mr. Biden's legal team was nearly sanctioned by Judge Noreika for making false representations surrounding this issue:

> Mr. Kittila asserts that an individual associated with the firm representing Defendant called the Clerk's Office pretending to be associated with Mr. Kittila and requesting the amicus materials be removed from the docket, which the Clerk's Office did. . . . The Court has discussed the matter with the relevant individuals in the Clerk's Office and has been informed that the caller, Ms. Jessica Bengels, represented that she worked with Mr. Kittila and requested the amicus materials be taken down because they contained sensitive grand jury, taxpayer and social security information. It appears that the caller misrepresented her identity and who she worked for in an attempt to improperly convince the Clerk's Office to remove the amicus materials from the docket. THEREFORE, IT IS HEREBY ORDERED that, on or before 9PM TODAY on July 25, 2023, counsel for Defendant shall SHOW CAUSE as to why sanctions should not be considered for misrepresentations to the Court.

*United States v. Biden*, No. 23-00274-MN (D. Del. July 25, 2023) (Oral Order) [ECF Doc 12].

[54] *United States v. Biden*, No. 23-00274-MN (D. Del. July 26, 2023) (Mot. for Leave to File Under Seal 4-5) [ECF Doc. 17].

no specifics whatsoever of what information in the whistleblower disclosures was allegedly grand jury information, nor did it make any reference to 26 U.S.C. § 6103(f)(5) or the Ways and Means Committee's vote under 26 U.S.C. § 6103(f)(4)(A).

On July 31, 2023, counsel for House Ways and Means Chairman Jason Smith filed their opposition in the District of Delaware to Mr. Biden's motion to seal.[55] It made clear that "the Whistleblowers were statutorily permitted to present their testimony and evidence to the Committee, and the Committee was duly authorized to submit the Whistleblower Materials to the full U.S. House of Representatives for inclusion in the Congressional Record."[56] Specifically, it explained: "The Whistleblowers provided their testimony to the Committee under 26 U.S.C. § 6103(f)(5), 'Disclosure by whistleblower' . . . . Thus, in the first instance, the Whistleblowers were statutorily authorized to provide their testimony to the Committee in accordance with Section 6103(f)."[57]

Chairman Smith's opposition also explained: "[T]he Committee, pursuant to its statutory authority under 26 U.S.C. § 6103(f)(4)(A), voted to submit the Whistleblower Materials to the full House of Representatives."[58] It further noted that the Ways and Means Committee was subject to and had properly complied with Rule XI.2(k)(7) of the Rules of the U.S. House of Representatives, which provides that "[e]vidence or testimony taken in executive session, and proceedings conducted in executive session, may be released or used in public sessions only when authorized by the committee, a majority being present."[59]

Chairman Smith's opposition to Mr. Biden's motion to seal also made clear that Mr. Biden's claims fail as a matter of law because "Section 6103 . . . does not prohibit the disclosure of public information":[60]

As the Ninth Circuit has stated, "[t]he relevant inquiry should focus on whether the prior authorized disclosure . . . destroys the confidential nature of the information." *William E. Schrambling Acct. Corp.*, 937 F.2d at 1488-89. Here, for the reasons set forth above, the answer to that question is clearly yes. Just as tax return information loses its confidentiality once it is disclosed in a judicial forum and is therefore no longer protected by Section 6103 (see, e.g., *Lambert*, 854 F.2d at 338), so too is such information no longer protected by Section 6103 once it is disclosed by Congress and widely available to the public.[61]

Nevertheless, in an August 14, 2023 letter to the office of Special Counsel David Weiss, Mr. Lowell continued lobbying for the Department to prosecute SSA Shapley and SA Ziegler.[62] Intentionally omitting reference to the whistleblower disclosure provision at 26 U.S.C. § 6103(f)(5), Mr. Lowell alleged: "The testimony of Messrs. Shapley and Ziegler, as well as

---

[55] *United States v. Biden*, No. 23-00274-MN (D. Del. July 26, 2023) (Opp. to Def. Mot. for Leave to File Under Seal) [ECF Doc. 22-1].

[56] *Id.* at 11.

[57] *Id.* at 9-10.

[58] *Id.* at 10.

[59] *Id.* at 10-11.

[60] *Id.* at 12-13.

[61] *Id.* Critically, the opposition also noted: "[J]ust because material may have some relationship to a grand jury investigation does not mean that such material is prohibited from disclosure pursuant to Rule 6(e)." *Id.* at 13-14.

[62] Letter from Abbe David Lowell to the Honorable David C. Weiss, et al. (Aug. 14, 2023), *available at* https://www.politico.com/f/?id=0000018a-96d9-d776-a3ce-f6f9d4380000.

certain of the exhibits appended thereto, are replete with *illegally disclosed* grand jury and tax return information . . . ."[63] Intentionally omitting reference to the Ways and Means Committee's authority under 26 U.S.C. § 6103(f)(4)(A) to release taxpayer information, Mr. Lowell argued that even the "testimony . . . released publicly on June 22, 2023" was "replete with illegal leaks . . . ."[64] And like Mr. Clark before him, Mr. Lowell failed to acknowledge that Mr. Biden's taxpayer information was now a matter of public record that anyone could comment on in news media.[65] Mr. Lowell summarized: "Mr. Shapley's and Mr. Ziegler's disclosures . . . are quite simply crimes," urging in an accompanying footnote that the whistleblowers should be prosecuted.[66]

### *Judicial Rejection of Mr. Biden's False Claims*

Yet Judge Maryellen Noreika rejected these false claims days later, when she issued an August 17, 2023 order denying Mr. Biden's request to seal the record.[67] Specifically, she held that Mr. Biden's "broad allegations of harm are not sufficient," and, in fact, that "Defendant has failed to make ***any specific showing of harm*** . . . ."[68] What's more, Judge Noreika noted, "[Chairman] Smith has represented that the materials . . . 'are publicly available and have been for some time' and 'will continue to be available to the public.'"[69] Accordingly, Judge Noreika ensured the materials would *also* remain in the public record of the proceedings in Delaware.

Notwithstanding Judge Noreika's rejection of Mr. Biden's false claims, two days later, on August 19, 2023, *The New York Times* reported: "Mr. Biden's . . . lawyers have contended to the Justice Department that by disclosing details about the investigation to Congress, they broke the law and should be prosecuted."[70] It is unclear whether Mr. Lowell's August 14, 2023 letter was released by Mr. Lowell or Special Counsel Weiss's office to *The New York Times*, or whether the journalists were simply repeating the earlier reporting from their June 27, 2023 article.

### *Empower Oversight's Prior Document Requests to the Department*

In light of *The New York Times*' June 27 and August 19 references to Mr. Biden's legal team arguing for the prosecution of SSA Shapley and SA Ziegler, chairmen of the House Committees on Judiciary, Ways and Means, and Oversight and Accountability wrote to Mr. Lowell and Mr. Clark on September 6, 2023 requesting their communications with the Department of Justice.[71]

---

[63] *Id.* at 3 (emphasis added).

[64] *Id.*

[65] *Id.* at 6-8.

[66] *Id.* at 8, fn. 24.

[67] *United States v. Biden*, No. 23-00274-MN (D. Del. Aug. 17, 2023) (Order on Motion to Seal Document) [ECF Doc. 42].

[68] *United States v. Biden*, No. 23-00274-MN (D. Del. Aug. 17, 2023) (Order on Motion to Seal Document 2) [ECF Doc. 42] (emphasis added).
[69] *Id.*

[70] Michael S. Schmidt, et al., *Inside the Collapse of Hunter Biden's Plea Deal*, N.Y. TIMES, Aug. 19, 2023, https://www.nytimes.com/2023/08/19/us/politics/inside-hunter-biden-plea-deal.html; *see also* Betsy Woodruff Swan, *In talks with prosecutors, Hunter Biden's lawyers vowed to put the president on the stand*, POLITICO, Aug. 19, 2023, https://www.politico.com/news/2023/08/19/hunter-biden-plea-deal-collapse-00111974.

[71] United States House of Representatives, Committee on the Judiciary, "Chairmen Jordan, Comer, and Smith Demand Leaked Documents About DOJ Interactions with Hunter Biden Attorneys," Sept. 6, 2023, https://judiciary.house.gov/media/press-releases/chairmen-jordan-comer-and-smith-demand-leaked-documents-

On September 7, 2023, Empower Oversight submitted a Freedom of Information Act ("FOIA") request to the Department for all communications sent by Mr. Biden's legal team to the Department regarding SSA Shapley.[72] To date, the Department has produced no responsive documents—despite the fact that a host of such documents clearly exist (and only some have been publicly released).

On September 12, 2023, you received a letter from the Judiciary, Ways and Means, and Oversight and Accountability Committee chairmen.[73] The letter affirmed: "Mr. Shapley and Mr. Ziegler followed the appropriate process by raising their genuine concerns about how the Department conducted its investigation into Mr. Biden."[74] Yet, identifying Mr. Biden's legal team's "brazen effort to intimidate and harass the brave Internal Revenue Service (IRS) whistleblowers who exposed numerous apparent irregularities in the Department's investigation of Hunter Biden," the chairmen requested all communications sent by Mr. Biden's legal team to the Department advocating for or referring to an investigation or prosecution of SSA Shapley or SA Ziegler.[75]

On September 14, 2023, Mr. Lowell sent a letter responding to the House committees' September 6 letter, purporting to produce all requested communications with the Department.[76] Mr. Lowell explicitly noted: "[W]e are also making these materials available to the public."[77] A *Politico* article published contemporaneously[78] released Mr. Lowell's letter to the committees[79] as well as his August 14, 2023 letter to Special Counsel Weiss and his office,[80] with its various attachments, including Mr. Clark's April 21, 2023 letters to various offices in the Department and his June 29, 2023 letter to Inspector General Horowitz.[81] This release marked the first time

---

about-doj-interactions.

[72] *See* Empower Oversight, "Hunter Biden Attorneys' Letter Lobbying the Biden Justice Department to Prosecute IRS Whistleblowers Should be Public," Sept. 7, 2023, https://empowr.us/empower-oversight-hunter-biden-attorneys-letter-lobbying-the-biden-justice-department-to-prosecute-irs-whistleblowers-should-be-public.

[73] *See* United States House of Representatives, Committee on the Judiciary, "Chairmen Jordan, Comer, and Smith Open Inquiry into Efforts to Smear and Prosecute IRS Whistleblowers," Sept. 12, 2023, https://judiciary.house.gov/media/press-releases/chairmen-jordan-comer-and-smith-open-inquiry-efforts-smear-and-prosecute-irs.

[74] Letter from the Honorable Jim Jordan, et al., to the Honorable Merrick B. Garland (Sept. 12, 2023), at 2, *available at* https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2023-09-12-jdj-js-jc-to-garland-re-defense-atty-obstruction.pdf.

[75] *Id.* at 1-2.

[76] Letter from Abbe David Lowell to the Honorable James Comer, et al. (Sept. 14, 2023), *available at* https://www.politico.com/f/?id=0000018a-96ba-d816-a5ba-9fff07150000.

[77] *Id.* at 3.

[78] Betsy Woodruff Swan, *Hunter Biden's lawyer accuses House Republicans of 'congressional manipulation,'* POLITICO, Sept. 14, 2023, *available at* https://www.politico.com/news/2023/09/14/hunter-biden-lawyer-house-republicans-00116140.

[79] Letter from Abbe David Lowell to the Honorable James Comer, et al. (Sept. 14, 2023), *available at* https://www.politico.com/f/?id=0000018a-96ba-d816-a5ba-9fff07150000.

[80] Letter from Abbe David Lowell to the Honorable David C. Weiss, et al. (Aug. 14, 2023), *available at* https://www.politico.com/f/?id=0000018a-96d9-d776-a3ce-f6f9d4380000.

[81] Letter from Abbe David Lowell to the Honorable David C. Weiss, et al. (Aug. 14, 2023), Attachments, *available at* https://www.politico.com/f/?id=0000018a-96d6-dd5e-abfe-9fd6541e0000.

the full extent of the lobbying from Mr. Biden's legal team to advocate for a retaliatory prosecution of SSA Shapley and SA Ziegler became public.

A few days later, on September 18, 2023, Mr. Biden filed a frivolous lawsuit against the IRS reiterating false claims similar to those rejected by Judge Noreika in Delaware.[82] Once again, Mr. Biden falsely claimed that Mr. Lytle's April 19, 2023 letter "disclosed . . . whether [Mr. Biden's] return was, is being, or will be examined or subject to other investigation or processing"—a fact disclosed by Mr. Biden himself on December 9, 2020.[83] Mr. Biden baselessly attributed media references to his identity to disclosures by the IRS whistleblowers or their counsel,[84] and falsely claimed as illegal disclosures fact after fact made public by the June 22, 2023 House Ways and Means Committee vote, pursuant to its explicit statutory authority in Section 6103(f)(4)(A).[85] The suit also included other false information that is easily debunked.[86]

In light of Mr. Biden's lawsuit alleging wrongdoing by our client, Empower Oversight filed two additional FOIA requests with the Department.[87] On September 25, 2023, we filed a request for all communications sent or received by Department employees discussing or mentioning Mr. Biden's legal team's allegations against SSA Shapley (EMRUFOIA092523-3).[88] To date, the Department has produced no responsive documents.

---

[82] *Biden v. Internal Revenue Service*, No. 23-02711-TJK (D.D.C. Sept. 16, 2023) (Complaint) [ECF Doc. 1]; Adam Goldman, et al., *Hunter Biden Discloses He Is Focus of Federal Tax Inquiry*, N.Y. TIMES, Dec. 9, 2020, *available at* https://www.nytimes.com/2020/12/09/us/politics/hunter-biden-tax-investigation.html.

[83] *Biden v. Internal Revenue Service*, No. 23-02711-TJK (D.D.C. Sept. 16, 2023) (Complaint 14) [ECF Doc. 1].

[84] *Id.* at 8-11.

[85] *Id.* at 14-20.

[86] For example, Mr. Biden bizarrely claimed SSA Shapley alleged in a press interview that the FBI general counsel could substantiate his allegations. *Id.* at 5, 19-20. Mr. Biden claimed this was new information that went beyond the transcript the Ways and Means Committee had voted to release. But nowhere in the cited August 1, 2023 interview on Fox News did SSA Shapley say anything about FBI General Counsel Jason Jones corroborating his testimony. Rather, SSA Shapley discussed an FBI SSA's testimony before the House Committee on Oversight and Accountability on matters covered by SSA Shapley's own transcribed congressional interview. *See* United States House of Representatives, Committee on Oversight and Accountability, "Former FBI Supervisory Special Agent Confirms IRS Whistleblower Testimony," July 17, 2023, https://oversight.house.gov/release/former-fbi-supervisory-special-agent-confirms-irs-whistleblower-testimony.

Mr. Biden's complaint cites a *New York Post* article that does mention Mr. Jones, but even that article's author properly describes Mr. Jones' role: "IRS whistleblower Gary Shapley claimed Tuesday that the FBI spooked a retired supervisory agent out of telling Congress all he knows about an alleged cover-up in the criminal investigation of first son Hunter Biden. FBI general counsel Jason Jones wrote a warning letter to the recently retired agent the afternoon before his July 17 deposition before the House Oversight Committee advising him not to share information about any 'deliberations or ongoing investigative activity.'" Steven Nelson, "Hunter Biden whistleblower Gary Shapley claims FBI spooked corroborating witness," N.Y. POST, Aug. 1, 2023, https://nypost.com/2023/08/01/hunter-biden-irs-whistleblower-gary-shapley-says-fbi-spooked-witness; *see also* United States House of Representatives, Committee on Oversight and Accountability, Interview of [Redacted] (July 17, 2023), at 7, *available at* https://oversight.house.gov/wp-content/uploads/2023/08/FBI-SSA-Transcribed-Interview-Transcript.pdf.

Despite filing an Amended Complaint four and a half months after the initial Complaint—more than enough time to remove this portion or at least fix the factual errors—the bizarre section remained in the Amended Complaint, simply adding that SSA Shapley had made the allegations "for the first time publicly[.]" *Biden v. Internal Revenue Service*, No. 23-02711-TJK (D.D.C. Feb. 5, 2024) (Amended Complaint 5-6) [ECF Doc. 15].

[87] *See* Empower Oversight, "Empower Oversight Seeks Communications between Justice Department and Biden Legal Team, Media," Sept. 26, 2023, https://empowr.us/empower-oversight-seeks-communications-between-justice-department-and-biden-legal-team-media.

[88] Letter from Tristan Leavitt to Department of Justice (Sept. 25, 2023), *available at* https://empowr.us/wp-content/uploads/2023/09/2023-09-25-TL-to-DOJ-for-DOJ-response-to-allegations-against-HB-WB-w-Exh-1.pdf.

On September 26, 2023, we filed a request for all communications between any Department employee and members of the press mentioning or discussing SSA Shapley (EMRUFOIA092623-1).[89] To date, the Department has produced no responsive documents.

### *Concerns of Government Collusion to Retaliate Against IRS Whistleblowers*

To say the least, we are concerned about the months of lobbying Mr. Biden's defense counsel have done with the Department against SSA Shapley and SA Ziegler. Those concerns have intensified since it has become clear that the Department refuses to acknowledge the existence of 26 U.S.C. § 6103(f)(5) ("Disclosure by whistleblower").

### *Biden v. Internal Revenue Service*

Typically, a civil lawsuit against a federal agency would be defended by the Federal Programs Branch of the Department's Civil Division. While one attorney from the Federal Programs Branch has filed an appearance in *Biden v. Internal Revenue Service*, the IRS's response is being led by two attorneys from the Department's Tax Division—one of the very offices about which SSA Shapley and SA Ziegler made protected disclosures to Congress about the slow-walking of the case against the President's son.

In January of this year, when the Department filed its first response to Mr. Biden's lawsuit, the Department failed to file a Motion to Dismiss on all counts—despite good faith arguments it could and should make in support of such a Motion.[90] The Department's actual Partial Motion to Dismiss failed to provide the Court with the whistleblower disclosure provisions contained in 26 U.S.C. § 6103(f)(5); the House Ways and Means vote pursuant to Section 6103(f)(4)(A); or the references to the Internal Revenue Manual which provide guidance to IRS employees about Section 6103 and the public records exception.

Because SSA Shapley and SA Ziegler are not parties to Mr. Biden's lawsuit and had not been contacted by the Department regarding the lawsuit, we contacted the Department and had a phone call with the attorneys to ensure they were aware of the statutory process through which SSA Shapley and SA Ziegler blew the whistle. Yet when the Department subsequently responded to an amended complaint from Mr. Biden, it once again failed to mention these critical statutory whistleblower provisions.[91]

It is an understatement to note there are institutional conflicts of interest that could impact how vigorously and effectively the Department (particularly the Tax Division) will defend the actions of SSA Shapley and SA Ziegler. The Department's behavior raises the prospect that the Department may fail to zealously defend the Government's interests in this lawsuit, simply out of a desire to see critics of the President's son punished.

### *United States v. Biden* (California Criminal Case)

Similarly, Mr. Biden's interests appear to align with those of the IRS and Special Counsel David Weiss's office when it comes to attacking the IRS whistleblowers who disclosed

---

[89] Letter from Tristan Leavitt to Department of Justice (Sept. 26, 2023), *available at* https://empowr.us/wp-content/uploads/2023/09/2023-09-26-TL-to-DOJ-for-DOJ-media-comms-re-HB-WBs-w-Exh.pdf.

[90] *Biden v. Internal Revenue Service*, No. 23-02711-TJK (D.D.C. Jan. 16, 2024) (Def. Partial Mot. to Dismiss) [ECF Doc. 13].

[91] *Biden v. Internal Revenue Service*, No. 23-02711-TJK (D.D.C. Feb. 27, 2024) (Def. Partial Mot. to Dismiss) [ECF Doc. 17].

wrongdoing in the Hunter Biden case. Special Counsel Weiss's office recently filed with the U.S. District Court for the Central District of California an Opposition to the Defendant's Motion to Dismiss ("Opposition") that purports to describe how "the IRS has taken responsible steps to address Shapley and Ziegler's conduct."[92] To be clear, the "conduct" in question was blowing the whistle on various IRS and Department officials—including Mr. Weiss. As in the response to the Hunter Biden lawsuit against the IRS, the Opposition nowhere references the whistleblower disclosure provisions of 26 U.S.C. § 6103(f)(5).

The Opposition also references multiple IRS communications received by SSA Shapley and SA Ziegler, inexplicably failing to inform the court that the U.S. Office of Special Counsel required the IRS to retract several of those communications given their failure to comply with whistleblower protection laws.[93]

---

[92] *United States v. Biden*, No. 23-00599-MCS (C.D.Ca. Mar. 11, 2024) (Govt. Opp. to Def. Mot. to Dismiss ("Opposition") 10-12) [ECF Doc. 42].

[93] *Id.*

The first communication referenced on page 10 of the Opposition, an email from SSA Shapley and SA Ziegler's then-Assistant Special Agent in Charge ("ASAC") Lola Watson, was a response to a May 18, 2023 email SA Ziegler sent his IRS chain of command—up through IRS Commissioner Daniel Werfel—that made protected disclosures about the IRS *and Mr. Weiss's own office*. Among other things, SA Ziegler wrote:

> For the last couple years, my SSA and I have tried to gain the attention of our senior leadership about certain issues prevalent regarding the investigation. I have asked for countless meetings with our chief and deputy chief, often to be left out on an island and not heard from. The lack of IRS-CI senior leadership involvement is deeply troubling and unacceptable. . . . [W]hen I said on multiple occasions that I wasn't being heard and that I thought I wasn't able to perform my job adequately because of the actions of the USAO and DOJ, my concerns were ignored by senior leadership[]. The ultimate decision to remove the entire investigatory team from [Mr. Biden's case] without actually talking to that investigatory team, in my opinion was a decision made . . . to side with the US Attorney's office and Department of Justice who we have been saying for some time have been acting inappropriately.

Email from IRS SA Joseph Ziegler to IRS Deputy Commissioner for Services and Enforcement Douglas O'Donnell, et al., May 18, 2023, 9:58 AM, *available at* https://empowr.us/wp-content/uploads/2024/04/2023-05-22-Letter-to-Congress-re-retaliation.pdf (Attachment 2, Exhibit A).

ASAC Watson's response email, quoted in the Opposition, admonishes SA Ziegler for not following his chain of command (despite the fact that every single recipient of SA Ziegler's email was in his chain of command). The Opposition quotes ASAC Watson's spurious allegation that using the nickname of the case in an email to the IRS Commissioner might constitute a breach of 6(e) material. The Opposition fails to quote the end of ASAC Watson's email, which instructed SA Ziegler: "In the future, please follow previously stated directives and this written directive that no information should be sent to the DFO, Deputy Chief, Chief or any other executive without being sent through my office and the SAC office." Email from IRS ASAC Lola Watson to IRS SA Joseph Ziegler, May 19, 2023, 1:20 PM, *available at* https://empowr.us/wp-content/uploads/2024/04/2023-05-22-Letter-to-Congress-re-retaliation.pdf (Attachment 2, Exhibit B).

Special Agent in Charge ("SAC") Kareem Carter contemporaneously sent a similar email to recipients that included SSA Shapley. Email from IRS SAC Kareem Carter to CI-SEA-WDC ASAC, et al., May 19, 2023, 1:23 PM, *available at* https://empowr.us/wp-content/uploads/2024/04/2023-05-22-Letter-to-Congress-re-retaliation.pdf (Attachment 2, Exhibit C) ("There should be no instances where case related activity discussions leave this field office without seeking approval from your direct report (i.e. SA to SSA to ASAC to SAC).").

ASAC Watson's directive and SAC Carter's admonition expressly contradicted the Whistleblower Protection Act, 5 U.S.C. § 2302(b), which allows IRS employees to make protected disclosures to a wide variety of recipients and does not require their being cleared with immediate supervisors. Further, these emails also constituted an illegal gag order under the longstanding annual Grassley Anti-Gag Appropriations Rider ("No funds appropriated in this or any other Act may be used to implement . . . any . . . nondisclosure policy, form, or agreement" that does not contain language making clear the supremacy of whistleblower protections. Further Consolidated Appropriations Act, 2024, Pub. L. 118-47 Div. B § 743 (Mar. 23, 2024).) and 5 U.S.C. § 2302(b)(13), which is enforced by the U.S. Office of Special Counsel. SAC Carter's email was included in a July 5, 2023 congressional referral to the U.S. Office of

Special Counsel for this reason. *See* Senator Chuck Grassley, "Lawmakers Demand Investigation Into IRS Whistleblower Retaliation In Hunter Biden Probe," July 5, 2023, https://www.grassley.senate.gov/news/news-releases/lawmakers-demand-investigation-into-irs-whistleblower-retaliation-in-hunter-biden-probe.

Because "the implementation or enforcement of any nondisclosure policy, form, or agreement" is also a personnel action in and of itself under 5 U.S.C. 2302(a)(2)(A)(xi), ASAC Watson's implementation of such a personnel action *in direct response to SA Ziegler's protected disclosures* also likely constituted a violation of Section 2302(b)(8).

The Opposition next quoted a May 25, 2023 email from IRS Deputy Commissioner O'Donnell to all employees. Opposition at 11; email from IRS Deputy Commissioner Douglas O'Donnell to all DCSE employees, May 25, 2023, 4:53 PM, *available at* https://www.ronjohnson.senate.gov/services/files/18ACAC5D-276C-49B8-B2BE-889AB24581B9. As the Opposition notes, the email was sent "the day before Shapley testified in a closed-door deposition before the House Ways and Means Committee . . . ." Opposition at 11. SSA Shapley's scheduled appearance before the Committee was a matter of public record, widely reported in various news outlets. Accordingly, that Mr. O'Donnell's end-of-day email failed to include Congress in its "'options' for reporting 'potential wrongdoing involving activities where information is subject to protection under' Section 6103 and Federal Rules," Opposition at 11, appeared intended to chill SSA's Shapley's House testimony. As the July 5, 2023 congressional referral to the U.S. Office of Special Counsel noted, Mr. O'Donnell's email could also have broader effect among potential IRS whistleblowers: "This is another example of the IRS seeking to chill whistleblowers from reporting wrongdoing to Congress." Letter from the Honorable Charles E. Grassley, et al., to the Honorable Henry Kerner (July 5, 2023), at 2, *available at* https://www.grassley.senate.gov/imo/media/doc/grassley_johnson_comer_jordan_smith_to_osc_-_whistleblower_retaliation.pdf.

Such an effort could also constitute an illegal gag order under 5 U.S.C. § 7211 ("The right of employees, individually or collectively, to petition Congress or a Member of Congress, or to furnish information to either House of Congress, or to a committee or Member thereof, may not be interfered with or denied.") and under the longstanding annual Lloyd-La Follette Anti-Gag Appropriations Rider ("No part of any appropriation contained in this or any other Act shall be available for the payment of the salary of any officer or employee of the Federal Government, who—(1) prohibits or prevents, or attempts or threatens to prohibit or prevent, any other officer or employee of the Federal Government from having any direct oral or written communication or contact with any Member, committee, or subcommittee of the Congress in connection with any matter pertaining to the employment of such other officer or employee or pertaining to the department or agency of such other officer or employee in any way, irrespective of whether such communication or contact is at the initiative of such other officer or employee or in response to the request or inquiry of such Member, committee, or subcommittee[.]" Further Consolidated Appropriations Act, 2024, Pub. L. 118-47 Div. B § 713 (Mar. 23, 2024).)

Further, as Senator Chuck Grassley and Senator Ron Johnson noted in a June 6, 2023 letter to Commissioner Werfel, Deputy Commissioner O'Connell's May 25, 2023 email not only "blatantly fails [to] provide that IRS employees have a right to make lawful disclosures to Congress," but like the email from ASAC Watson, it "fails to include the specific [Grassley] anti-gag provision language . . . as required by law." Letter from the Honorable Charles E. Grassley and the Honorable Ron Johnson to the Honorable Daniel Werfel (June 6, 2023), at 1-2, *available at* https://www.grassley.senate.gov/imo/media/doc/grassley_johnson_to_dojoig_tigta_-_whistleblower_retaliation.pdf. Accordingly, Senator Grassley and Senator Johnson referred Deputy Commissioner O'Connell's email to Treasury Inspector General for Tax Administration Russell George and Justice Department Inspector General Michael Horowitz for investigation. Letter from the Honorable Charles E. Grassley and the Honorable Ron Johnson to the Honorable Michael E. Horowitz and the Honorable Russell George (June 6, 2023), *available at* https://www.grassley.senate.gov/imo/media/doc/grassley_johnson_to_dojoig_tigta_-_whistleblower_retaliation.pdf.

Following redactions in the Opposition, the final IRS communication the Opposition referenced was a July 7, 2023 email from Commissioner Werfel to all IRS employees. Opposition at 11-12; email from IRS Commissioner Daniel Werfel to all IRS employees, July 7, 2023, 11:30 AM, *available at* https://www.taxnotes.com/research/federal/other-documents/other-irs-documents/werfel-updates-employees-on-whistleblower-reporting-options/7gybm. The Opposition fails to note that Commissioner Werfel's email closed: "This guidance supersedes and replaces the guidance emailed by the Deputy Commissioner of Services and Enforcement to Services and Enforcement employees on May 25, 2023." This retraction of Deputy Commissioner O'Donnell's email was requested by the U.S. Office of Special Counsel and, as indicated above, by Senator Grassley and Senator Johnson. *See* Reese Gorman, *IRS sends memo informing employees of whistleblower rights after pressure from Congress*, WASH. EXAMINER, July 9, 2023, https://www.washingtonexaminer.com/news/1585667/irs-sends-memo-informing-employees-of-whistleblower-rights-after-pressure-from-congress. Commissioner Werfel's July 7, 2023 email did finally include the language required by 5 U.S.C. § 2302(b)(13) and the Grassley Anti-Gag Appropriations Rider.

A significant block of text in the Opposition is redacted, and the government filed an application to seal the unredacted document, which was not opposed by Mr. Biden's defense counsel. According to the Government's application to seal, the redactions in the Opposition are to "a potential ongoing investigation." It's unclear what a "potential" ongoing investigation is or why such a thing would be obliquely revealed while hiding the details from public scrutiny.

In a declaration accompanying the application, Senior Assistant Special Counsel Derek Hines wrote:

> The government was advised by the Office of the IRS Chief Counsel that the investigating entity referenced in [three exhibits] agreed that the document could be provided to the government and used in a filing with the court provided the government asked the court to seal these exhibits and certain references to those exhibits in order to protect the integrity of the potential ongoing investigation(s).

To begin with, neither SSA Shapley nor SA Ziegler have been informed of any investigation into their conduct, which consisted of exercising lawful channels to blow the whistle to Congress. If such an investigation exists, it goes to the heart of Congress's reason for adopting the whistleblower disclosure provision at 26 U.S.C. § 6103(f)(5), which was *precisely* because of concerns about the IRS retaliating against its employees who blew the whistle to Congress.

Here, the whistleblower disclosures to Congress relate not only to IRS conduct, but to the conduct of *Mr. Weiss* himself, and his office's preferential treatment involving Mr. Biden. Mr. Weiss is the subject of an open whistleblower retaliation complaint with the U.S. Office of Special Counsel that has been pending since May 17, 2023.[94] Accordingly, for Special Counsel Weiss's office to have any communications with the IRS Chief Counsel's office regarding SSA Shapley's and SA Ziegler's whistleblowing *on Mr. Weiss* is highly improper. And once inappropriately informed of a potential investigation—assuming Mr. Weiss didn't play a role in initiating such an investigation at the request of Mr. Biden and his counsel—for Special Counsel Weiss's office to make its existence public was simply gratuitous.

## REQUESTS

The judges in each of these cases should be aware of the facts and legal arguments outlined in this letter when considering any legal question that touches on the whistleblowers' disclosures. Yet apparently because of the inherent conflicts of interest, they have not been fully informed and adequately briefed by your Department. Sticking it to the whistleblowers should not be a higher priority than making all the legal arguments available on behalf of the Government, which explicitly authorizes in statute and encourages whistleblowing.

When asked publicly about SSA Shapley and SA Ziegler, you have testified to Congress: "I am a strong proponent of whistleblowers and a strong defender."[95] Standing by these words requires that the Department acknowledge the whistleblower provisions Congress enacted into law at 26 U.S.C. § 6103(f)(5).

It also requires that you address the Department's conflict of interest in *Biden v. Internal Revenue Service*. Surely the Department has other attorneys it can assign to this case besides

---

[94] *See* letter from Tristan Leavitt and Mark D. Lytle to the Honorable Ron Wyden, et al. (May 22, 2023), Attachment 1 (letter from Tristan Leavitt to U.S. Office of Special Counsel, May 17, 2023), *available at* https://empowr.us/wp-content/uploads/2024/04/2023-05-22-Letter-to-Congress-re-retaliation.pdf.

[95] *Oversight of the U.S. Department of Justice: Hearing Before the H. Comm. on the Judiciary*, 118th Cong. (Sept. 20, 2023).

those who come from the same Tax Division at the heart of SSA Shapley's and SA Ziegler's protected disclosures in question in Mr. Biden's lawsuit.

Finally, the public has a strong interest in understanding the Department's actions in these matters. Thus, pursuant to FOIA (5 U.S.C. § 552), Empower Oversight also hereby requests, for the time period from April 19, 2023 to the present:

1) All communications with the Department's Professional Responsibility Advisory Office about SSA Gary Shapley, SA Joseph Ziegler, Hunter Biden, *Biden v. Internal Revenue Service*, or *United States v. Biden*;

2) All communications about SSA Gary Shapley that were exchanged between Mr. Biden's legal team and any Department employee, including but not limited to any employee in Special Counsel Weiss's office or any employee assigned to *Biden v. Internal Revenue Service*;

3) All communications about SA Joseph Ziegler that were exchanged between Mr. Biden's legal team and any Department employee, including but not limited to any employee in Special Counsel Weiss's office or any employee assigned to *Biden v. Internal Revenue Service*;

4) All communications sent or received by any Department employee discussing Mr. Biden's or his legal team's allegations against SSA Shapley or SA Ziegler;

5) All communications about SSA Shapley or SA Ziegler that were exchanged between any Department employee and any individual outside of the Department;

6) All communications about SSA Shapley or SA Ziegler to or from the Office of the Attorney General and Office of the Deputy Attorney General;

7) All communications about Christopher Clark or Abbe Lowell to or from the Office of the Attorney General or Office of the Deputy Attorney General; and

8) All communications about *Biden v. Internal Revenue Service* to or from the Office of the Attorney General or Office of the Deputy Attorney General.

The attachment contains relevant definitions, instructions, and a fee waiver request.

Cordially,

/Tristan Leavitt/
Tristan Leavitt
President

ATTACHMENT

cc:   The Honorable Michael E. Horowitz
      Inspector General, Department of Justice

      Ms. Heather M. Hill
      Acting Inspector General for Tax Administration, Department of the Treasury

      The Honorable Hampton Dellinger
      Special Counsel, U.S. Office of Special Counsel