# EXHIBIT 4

IN THE MATTER OF:

AFFIDAVIT 6

Whistleblower Disclosure Pursuant

Supplemental Production of Records / Affidavit #6 – October 30, 2023

To 26 U.S.C. § 6103(f)(5)

## STATEMENT OF JOSEPH ZIEGLER (WHISTLEBLOWER X)

1. I provide this statement to supplement my testimony I provided to both the majority and minority staff of the United States House Committee on Ways & Means on June 1, 2023, as well as my testimony I provided to the full committee of the United States House Committee on Oversight and Accountability on July 19, 2023. This is also a supplement and in response to the United States House Committee on Ways & Means executive session and the release of additional whistleblower documents held on September 27, 2023.

2. Since November of 2018, I have been a Special Agent for the Internal Revenue Service – Criminal Investigation ("IRS-CI"), United States Department of Treasury. Since that date, I have been the case agent who initiated and was assigned from IRS-CI to the Robert Hunter Biden ("RHB") investigation to investigate related potential criminal violations of Title 26 of the United States Code.

3. As requested by the U.S. House Committees and in further supporting my Whistleblower claims, I would like to disclose further information and documents which are a follow up to my testimony and which would be pursuant to the Whistleblower protections defined by Title 26 U.S.C. § 6103(f)(5). I make these disclosures and provide these documents knowing that I could be subject to criminal prosecution for perjury or for making false statements under Title 18 U.S.C. § 1001.

4. I have made redactions to the following referenced exhibits with guidance and advice from my counsel in order to protect potential ongoing criminal investigations that I was aware of prior to my removal, as well as potential sensitive information.

5. **Exhibit 600A & 600B:** These exhibits are my most recent performance reviews I have received over the last two years. As shown in these performance reviews, I have received an "Outstanding" rating earning the highest rating in nearly every category. I have also

received two consecutive Quality Step Increase Awards, which are considered as a top performance award given to a government employee. I am not a disgruntled employee with perceived performance issues. I am still working active cases with DOJ employees. I am, on the other hand, disappointed and frustrated by the actions taken during the Hunter Biden investigation on behalf of employees of the Department of Justice and of the IRS

6. **Exhibit 601:** This exhibit is email communication Supervisory Special Agent Gary Shapley and I had with the newly assigned IRS Special Agent and Supervisory Special Agent who took over the Hunter Biden tax case. As stated in testimony from our Director of Field Operations, Michael Batdorf, Gary and I were not removed from the investigation for wrongdoing. It can take some time to transfer the case file to the new team. When an investigation is reassigned to a new agent, closed or comes to a conclusion, we do not necessarily "lose our access" to that taxpayer information. We typically help the new agents get up to speed with the case and can be called on to provide updated discovery as well as help for the case. As seen in these emails, we have continued to assist and turnover the Hunter Biden casefile to the new team.

7. **Exhibit 602 & 603:** These exhibits are email communication and direction that I received about "whistleblower activities" from my Supervisor, Gary Shapley (who had forwarded guidance from our Director of Field Operations Michael Batdorf). I have also included updated whistleblower guidance received from our Commissioner of the IRS. As you can see in the email from DFO Batdorf, it is our duty and obligation to support our Whistleblower claims. Further, our IRS Commissioner encouraged a "see something, say something" philosophy and further stated that we can raise this concern to the relevant authorities to include the relevant Oversight Committees of the U.S. Congress. He further stated that upon belief that a return and/or return information may relate to possible misconduct, maladministration or taxpayer abuse, IRS employees may also disclose such return or return information to the chairman of the House Ways and Means Committee, the chairman of the Senate Finance Committee and/or the chairman of the Joint Committee on Taxation, or the examiners or agents as the chairmen of these committees may designate or appoint. Under the Whistleblower provisions set forth under 6103(f)(5), I have followed the law and continue to support and defend our whistleblower claims regarding that return and/ or return information relate to

misconduct and maladministration from the Department of Justice and the IRS. I am also continuing to provide documents and testimony related to my whistleblower claims to the Department of Justice OIG, Treasury IG, and the Office of Special Counsel.

8. **Exhibit 604:** This exhibit is communication I had with my IRS leadership at the time regarding moving forward with the Hunter Biden investigation. I had originally forwarded the email I received from DOJ-Tax Attorney Mark Daly on December 8, 2022, to my leadership in which he stated that any further discussions on the investigation were going to be held between the Special Agent in Charge (Darrell Waldon) and the Delaware U.S. Attorney (David Weiss). Up until this point, we were having bi-weekly and/ or monthly meetings with the Hunter Biden team. Both the November and December 2022 meetings were abruptly cancelled with no reasons provided. In my email, I had told DOJ-Tax Attorney Daly that I had some discovery questions as well as questions about one of the tax spin-off investigations. I had further told SAC Waldon that the tax spin-off investigations had stopped since November of 2022 and asked if there was any further information regarding charging decisions on the Hunter Biden case. SAC Waldon responded on January 9, 2023, and confirmed a meeting held with DFO Batdorf, SAC Waldon and U.S. Attorney Weiss (Believed to be the December 22, 2022 phone call referenced in DFO Batdorf's transcript but not in SAC Waldon's transcript). SAC Waldon stated that there was no update to provide.

9. I believe that this "no update" comment is disputed in DFO Batdorf's testimony and the decision had been made to remove Gary Shapley (as well as myself) from the Hunter Biden investigation. I would also like to note that DFO Batdorf made the claim in his testimony that there were no other investigative steps in the Hunter Biden investigation and that was why they weren't reassigning the case at that point. This statement is rebutted by this email as I am telling SAC Waldon that the tax spinoff investigations had stopped and that I had further questions with those cases. Those tax investigations sat idle for more than 6 months until the decision was communicated by US Attorney Weiss to charge and plea the Hunter Biden Case. The case was then reassigned to the new IRS agent / investigative team.

10. **Exhibit 605:** This exhibit is forwarded email communication I received from SSA Gary Shapley in May of 2022. I can recall SSA Shapley sending this email to SAC Waldon

and DFO Batdorf after an in-person meeting and presentation that week. We presented on the updated evidence and on-going analysis of potential defenses regarding the Hunter Biden tax investigation. During this meeting, I can recall us telling SAC Waldon and DFO Batdorf that we may need to formally make a request to DOJ to assign an independent 3rd party (Special Counsel) to review the evidence and I can recall Gary and I asking how we do that. The response we received from SAC Waldon and DFO Batdorf was that they didn't know. I don't believe and I didn't hear of any follow up that SAC Waldon or DFO Batdorf did to follow up with our objectivity concerns as well as the Special Counsel request. You can also see in this email that SSA Shapley makes further protected disclosures to our leadership about potential statute issues on the case.

11. **Exhibit 606:** This exhibit is a follow up to previously provided Affidavit 2, Exhibit 202 and 203 & Affidavit 3, Exhibit 315A through D. As a part of the investigation, we received email headers from various identified email accounts (would include date, To, From and CC field of an email). I have searched those productions and have included a summary of the suspected emails for former Vice-President Joseph Biden (using known and identified aliases provided by Congress). This would include suspected email accounts using the aliases Robin Ware, JRB Ware, and Robert Peters. Again, these believed aliases of former Vice-President Joseph Biden were not known by the IRS investigators and were not included in the search terms in Affidavit 3, Exhibit 315A through D.

12. **Exhibit 607 & 607A:** This exhibit is a memorandum of interview from an interview of Troy Schmidt, the partner for Edward White & Co. and the partner overseeing the Hunter Biden tax return preparation engagement (which would include preparation of the 2017 and 2018 delinquent tax returns). This interview was not recorded and there would not be a transcription of the interview. This exhibit is provided to further support my whistleblower claims made regarding the recommended tax charges, as well as support for investigative steps that I believe were not taken throughout this investigation. Item 12A refers to notes taken from a crisis meeting held at Kevin Morris's residence on or about January 23, 2020. These notes were completely redacted other than the date of the meeting and a list of the people in attendance at that meeting. Throughout the investigation, the investigative team was continually not provided unredacted versions of

documents claiming various privileges. Delaware U.S. Attorney's Office and DOJ-Tax Attorney's stated that some of these claims of privilege were not valid, and they had failed to take the necessary steps to compel the production of the unredacted documents. 12A would be a one-off example of this.

13. You can see further in the memo that Schmidt was asked about an email regarding filing the delinquent tax returns (Item 24 which references **Exhibit 607A**). Schmidt was asked about an email sent from Kevin Morris in which Morris stated: "Emergency is off for today. Still need to file Monday- we are under considerable risk personally and politically to get the returns in. Sorry for the pressure earlier. Please send the issues list ASAP." Schmidt stated that this statement delves into other areas and that they were under pressure to file the tax returns. During the time of this email, Hunter Biden had a significant amount of external pressure related to these unfiled tax returns. The external sources of this pressure known at the time by the investigative team was from Hunter's Arkansas child support court case and from potentially being in breach of his marital separation agreement with his ex-wife.

14. **Exhibit 608A & 608B:** This exhibit was obtained via records received from an electronic email search warrant obtained from Google. This exhibit was an attorney engagement letter that was emailed on October 10, 2017 from Mervyn Yan to Hunter Biden, James Biden and Sara Biden. Patrick Ho was ultimately arrested and charged in the Southern District of New York, on or about November 17, 2017, one month after this retainer agreement. Hunter Biden is not included as an attorney on record for the Patrick Ho case in the Southern District of New York. This engagement letter related to the $1 million allegedly paid for the legal representation of Patrick Ho. The $1 million payment was paid to Hunter Biden and his entity Owasco LLC on or about March 22, 2018, 9 days prior to Hunter Biden leaving for California for his self-proclaimed exile. This payment was referenced in the Hunter Biden failed plea agreement statement of facts filed in the District of Delaware (Referenced Below):

> Despite his large outstanding tax liability and profligate spending, on or about April 17, 2018, the due date for 2017 tax payments, Biden did, in fact, have the funds available to pay his outstanding 2017 tax liability for both his personal and corporate returns. On or about March 22, 2018, Biden received a $1,000,000 payment into his Owasco, LLC bank account as payment for legal fees for Patrick Ho and $939,000 remained available as of tax day. Over the next six months Biden would spend almost the entirety of this balance on personal expenses, including large cash withdrawals, transfers to his personal account, travel, and entertainment.

I believe as it was drafted in the filed documents in the District of Delaware, Hunter Biden would have received immunity from any potential criminal wrong-doing from this $1 million transaction. As stated in Hunter Biden's email on or about August 2, 2017 (Affidavit 1, Exhibit 1i), Hunter proposed that the reason he was being paid by CEFC was for "introductions alone". Further, in the memorandum of interview of Gal Luft (Affidavit 1, Exhibit 400, Page 5), Hunter Biden and his associates were receiving the payments from CEFC and Chairman Ye, because Ye "was generally aware of a corruption investigation of his activities by Chinese Authorities." And that Luft believed that Ye was trying to build a political asylum request and parachute from this investigation and that the Biden Family could assist with this. I have reason to believe, based on evidence obtained throughout the investigation, that this "parachute" extended to members and employees of CEFC (to include Patrick Ho) and shielding them from potential investigations in the U.S. The evidence further indicates that this $1 million payment was not for legal fees and was misrepresented by the Delaware U.S. Attorney's Office in the statement of facts, and that its ultimate purpose was still under investigation by DOJ.

15. If the committee has any follow up questions for me, or if they need my assistance in any way, please let myself or my Attorney Dean Zerbe know.

Dated: **October 30, 2023**                                        *Joseph A. Ziegler*