## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:23-cv-02711 |
| UNITED STATES INTERNAL REVENUE | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPLY IN SUPPORT OF THE UNITED STATES' PARTIAL MOTION TO DISMISS

The United States moved to dismiss Plaintiff's wrongful disclosure claim (Count I) in part and his Privacy Act claim (Count II) in its entirety for obvious jurisdictional defects. Section 7431(a)(1) of the Internal Revenue Code permits suits against the United States only for the wrongful disclosure of return information by officers or employees of the United States. But, as Plaintiff admits, 7 of the 15 alleged wrongful disclosures were made by persons who were not officers or employees of the United States. The United States has not waived its sovereign immunity for Plaintiff's claims for those 7 alleged wrongful disclosures.[1] Nor has the United States waived its sovereign immunity for Plaintiff's Privacy Act claim, which fails to allege any actual damages and seeks injunctive relief not provided in the statute.

Plaintiff cannot cure—and indeed has not cured—these jurisdictional defects in his response to the partial motion to dismiss. Plaintiff recognizes that the IRS employees' private

---

[1] Although the United Seeks to dismiss Count I only in part, the United States disputes that the IRS employees' alleged disclosures violated I.R.C. § 6103 and that Plaintiff is entitled to recover anything under I.R.C. § 7431(a)(1). After the Court decides the pending partial motion to dismiss, the United States will answer the remaining allegations in the amended complaint and will raise all available defenses.

counsel who made the 7 alleged wrongful disclosures at issue in the motion to dismiss are not officers or employees of the United States. Yet he urges the Court to disregard the unambiguous language of § 7431 and allow his claims for these alleged wrongful disclosures to proceed under an agency theory.

To support expanding § 7431(a)(1)'s waiver of sovereign immunity, Plaintiff asserts that the United States should not evade liability because an IRS employee uses a "middleman" to disclose return information to the public. ECF No. 20 at 11. But this argument ignores that the United States may be liable for the disclosure from the IRS employee to the middleman if such disclosure were unauthorized. Indeed, § 7431(a)(1) limits the United States' liability to the initial disclosure by the officer or employee, not any future disclosures by non-federal actors. *See, e.g.*, *Miller v. United States*, 66 F.3d 220, 224 (9th Cir. 1995) ("[T]he statute punishes 'disclosure,' not subsequent disseminations.").

Although Plaintiff now describes the disclosures by the IRS employees to their attorneys as "improper" and "unauthorized," he made no such allegations in his Amended Complaint. His wrongful disclosure claim is grounded in the alleged unauthorized disclosures made by either the IRS employees' private counsel to Congress and the media (which disclosures are the subject of the United States' current motion to dismiss), or the IRS employees to the media. *See* ECF No. 15 at 23–24. The latter claim falls within § 7431(a)(1)'s waiver of sovereign immunity and will be defended on the merits. But his claim for the alleged wrongful disclosures by the private counsel of IRS employees must be dismissed as it falls outside the United States' limited waiver

of sovereign immunity.[2]

Plaintiff's Privacy Act claim should also be dismissed. Despite filing an Amended Complaint, Plaintiff still fails to allege any tangible pecuniary harm, as the Supreme Court has held is required for a Privacy Act claim for damages, and he effectively concedes that he is not entitled to injunctive relief. Plaintiff's Privacy Act claim also must be dismissed because he does not adequately plead that the IRS failed to implement policies to protect taxpayer information or that the IRS otherwise intentionally or willfully violated the Privacy Act.

## ARGUMENT

I.      **Plaintiff may not maintain a cause of action against the United States under I.R.C. § 7431 for disclosures made by persons who are neither officers nor employees of the United States.**

Congress enacted § 7431 to allow taxpayers to seek redress for the unauthorized disclosure of their tax return information. The statute provides taxpayers with different remedies depending on who made the unauthorized disclosure. For unauthorized disclosures made by "officer[s] or employee[s] of the United States," the taxpayer may sue the United States. I.R.C. § 7431(a)(1). And for unauthorized disclosures by "any person who is not an officer or employee of the United States," the taxpayer's remedy is to sue that person directly. I.R.C. § 7431(a)(2). The limited waiver of sovereign immunity in § 7431(a)(1) must be strictly construed. *Dep't of*

---

[2] In his response, Plaintiff argues that the IRS employees made unauthorized disclosures that are not protected whistleblower disclosures. ECF No. 20 at 12–13. Tellingly, however, he makes no claim that Special Agent Shapley and Ziegler's testimony to Congress violated § 6103 in apparent recognition of § 6103(f)(5), which permits "[a]ny person who otherwise has or had access to any return or return information under this section [to] disclose such return or return information to a committee referred to in paragraph (1) or any individual authorized to receive or inspect information under paragraph (4)(A) if such person believes such return or return information may relate to possible misconduct, maladministration, or taxpayer abuse." I.R.C. § 6103(f)(5).

*Army v. Fed. L. Rel'ns Auth.*, 56 F.3d 273, 277 (D.C. Cir. 1995).

Despite the unambiguous language of § 7431(a)(1), Plaintiff claims that, if a United States officer or employee discloses information to a non-federal actor with the intention of that person disclosing the information to others, further dissemination of that information by the non-federal actor constitutes "disclosure" by the federal officer or employee. To support this argument, Plaintiff advocates for a broad interpretation of the definition of "disclosure" in § 6103. "Disclosure" is statutorily defined as "making known to any person in any manner whatever a return or return information." I.R.C. § 6103(b)(8). According to Plaintiff, the phrase "in any manner whatever" should be read to include using an intermediary to disclose information to others. In other words, under Plaintiff's theory, a federal actor makes a "disclosure" not just when he discloses information to a third party but also when that third party discloses information to others. Plaintiff's argument—which has not been adopted by any court—should be rejected.

Courts construe the phrase "in any manner whatever" to describe the method a person who has access to return information conveys that information, *e.g.*, by email, orally, by fax, anonymously, and so on. *See, e.g.*, *Payne v. United States*, 290 F. Supp. 2d 742, 751 (S.D. Tex. 2003) (noting that IRS agent made disclosures of return information "through phone calls, in-person meetings, and fax cover letters"), *aff'd*, 107 F. App'x 445 (5th Cir. 2004); *Comyns v. United States*, 155 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001) (noting that IRS agents made disclosures through "personal interviews and letters"), *aff'd*, 287 F.3d 1034 (11th Cir. 2002).

Indeed, when counting the number of disclosures to calculate statutory damages, courts look to the actions of the person making the initial disclosure. *See Miller*, 66 F.3d at 224 ("[T]he disclosure of information to a person who is likely to publish that information is relevant in

4

determining the degree of negligence or recklessness involved, *not the number of disclosures*.") (emphasis added); *see also Snider v. United States*, 468 F.3d 500, 509 (8th Cir. 2006) ("[T]he proper limitation of liability is the initial act of disclosure, not secondary disclosures made by others such as the media."). Interpreting the phrase "in any manner whatever" to include not just the initial disclosure by the person required to comply with § 6103, but all further disseminations of that information by a third party disclosure greatly expands the definition of "disclosure," is unsupported by the caselaw, and conflicts with § 7431(a)—which limits the United States' liability for violations of § 6103 to wrongful disclosures made by federal officers or employees.

To reconcile his expansive reading of "disclosure" with § 7431(a), Plaintiff urges this Court to improperly expand § 7431(a)(1)'s waiver of sovereign immunity beyond its unambiguous text under common law agency principles. *See* ECF No. 20 at 11. The plain language of § 7431(a) excludes disclosures made by non-federal actors from the waiver of sovereign immunity. *Compare* I.R.C. § 7431(a)(1) *with* I.R.C. § 7431(a)(2). Adopting Plaintiff's novel and unsupported agency argument would require the Court to rewrite both statutes.[3] Rewriting the statute is not only improper, but unnecessary. *See Comm'r of Internal Rev. v. Lundy*, 516 U.S. 235, 252 (1996) ("We are bound by the language of the statute as it is written and . . . . we are not at liberty to rewrite the statute because we might deem its effects susceptible of improvement.") (quoting authority omitted); *see also United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) ("[O]ur job is reading statutes as written,

---

[3] Section 7431(a)(1) would need to change from "any officer or employee of the United States" to "any officer or employee of the United States *or an agent of any officer or employee of the United States*." And section 7431(a)(2) would need to change from "any person who is not an officer or employee of the United States" to "any person who is not an officer or employee of the United States *or an agent of an officer or employee of the United States*."

not rewriting them 'in an effort to achieve that which Congress is perceived to have failed to do.'") (quoting *United States v. Locke*, 471 U.S. 84, 95 (1985); *see also* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 93–94 (2012) (explaining that courts should not supply provisions absent from the text of a statute).

There is no reason to expand § 7431(a)(1) to waive the United States' sovereign immunity for disclosures made by an officer or employee's agent because a taxpayer may, barring an applicable exception to § 6103, sue the United States for the *initial* disclosure to the agent. In other words, agency theory is not necessary to hold the United States liable for unauthorized disclosures of return information by its employees because an unauthorized disclosure by an IRS employee to his agent is actionable against the United States. *Cf. Vestal v. Dep't of Treasury*, 1 F.4th 1049, 1054–55 (Fed. Cir. 2021) (holding that a revenue agent was properly fired for disclosing tax information, in violation of § 6103, to her private attorney in connection with a Merit Systems Protection Board complaint). That's an academic point here as Plaintiff's Amended Complaint contains no allegation that Special Agents Shapley and Zeigler violated § 6103 by disclosing Plaintiff's return information to the attorneys they retained to represent them as whistleblowers.[4]

Turning to his actual claims, it is sufficient to note that Plaintiff's suggestion of a "loophole" that will allow the United States to escape liability for the unauthorized disclosures by IRS employees through an agent who is not a government employee simply does not exist. It is the initial disclosure by the government employee (assuming the disclosure was unauthorized) that gives rise to a claim against the United States, not the subsequent dissemination of that information. Similarly, for individuals who are *not* employees of the United States but who are

---

[4] Plaintiff asserts that claim for the first time in his response brief.

authorized to receive tax information, but who then disclose it in an authorized fashion, Section 7431 provides that the taxpayer may sue the individual directly. *See* I.R.C. § 7431(a)(2). Thus, the statute provides a complete remedial scheme for taxpayers injured by unauthorized disclosures.

Plaintiff's citation to the recent criminal case against Charles Littlejohn for the unauthorized disclosure of return information to media outlets further undercuts his agency argument. ECF No. 20 at 12–13 (discussing *United States v. Littlejohn*, No. 1:23-cr-343 (D.D.C. 2023)). In *Littlejohn*, an employee for a company that contracted with the IRS was charged with unlawfully disclosing the return information of others. Mr. Littlejohn pled guilty to violating I.R.C. § 7213 and admitted that he disclosed others' return information to *The New York Times* and *ProPublica* in violation of I.R.C. § 6103. Plaintiff claims that "[s]urely the IRS would not argue that Mr. Littlejohn did not violate § 6103 because the improper disclosure was disseminated more broadly by *The New York Times* or *ProPublica*." ECF No. 20 at 14. He is correct. The United States prosecuted Mr. Littlejohn because he violated § 6103 by covertly disclosing third-party return information he accessed as an IRS contractor to *The New York Times* and *ProPublica* without authorization. Mr. Littlejohn's guilt stems from that act, *not* the media outlets' publication of the information he provided.

The same analysis applies here. According to Plaintiff, the IRS employees violated § 6103 when they allegedly disclosed his return information to various media outlets. We disagree. While questions whether Special Agents Shapley and Ziegler made any disclosure of Plaintiff's return information (as defined by § 6103(b)(8)), and if so, whether such disclosure(s) were authorized or based on a good faith interpretation of § 6103 must await further proceedings, any subsequent publication or dissemination of that information by media outlets is irrelevant to all

of them.

To determine whether the United States is liable under § 7431(a)(1), the focus must be on the actions of the federal officers or employees who made the initial disclosure. The United States may be sued only for the actions of the federal officers or employees who unlawfully disclose return information, not the actions of the recipients of the information who elect to disseminate the information to others. Consequently, Plaintiff's claims rooted in the disclosure of his return information by private citizens to Congress and the media should be dismissed.

## II.     Plaintiff's Privacy Act Claim (Count II) Should Be Dismissed.

### A.     Plaintiff Fails to Allege Actual Damages Under the Privacy Act.

Plaintiff's Privacy Act claim should be dismissed because he does not allege any actual damages. *See* ECF No. 20 at 11–13. Plaintiff attempts to save his claim by pointing to the typical flexible pleading standards of Rule 8 for general damages, *see* ECF No. 20 at 18, citing *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109 (D.D.C. 2018), which is not a Privacy Act case. However, in *Federal Aviation Administration v. Cooper*, which is a Privacy Act case, the Supreme Court explained that more is required. "[A]ctual damages" are defined as "special damages for proven pecuniary loss," and they must be "specially pleaded." 566 U.S. 284, 295, 298 (2012); *see also id.* at 303 (limiting liability under the Privacy Act only to where plaintiff has put forward "harm that can be substantiated by proof of tangible economic loss"). Accordingly, courts routinely dismiss Privacy Act cases where—as here—concrete allegations of calculable pecuniary loss are not contained in the complaint. *See* Mem. at 12 (citing cases); *see also, e.g.*, *Griffin v. IRS*, Civil Action No. 22-24023, 2024 WL 1717393, *6–7 (S.D. Fla. Apr. 22, 2024) ("[W]hile the Court agrees with [plaintiff] that the complaint alludes to actual damages, the Court agrees with the Government that the mere mention of such damages,

without more, is insufficient to support a claim under the Privacy Act.").

It is beyond dispute that reputational or emotional harm cannot meet the actual damages requirement for a Privacy Act claim brought under § 552a(g)(4). *See Cooper*, 566 U.S. at 304 ("[T]he Privacy Act does not unequivocally authorize an award of damages for mental or emotional distress. Accordingly, the Act does not waive the Federal Government's sovereign immunity from liability for such harms."). Presumably recognizing the deficiency in his pleadings, Plaintiff states in his opposition brief that his "reputational harm is inextricably tied to his pecuniary harm," claiming that "[h]arm to his reputation" has "directly resulted in the loss of present and future financial opportunities, such as his inability to resume his practice of law." ECF No. 20 at 18.

The Court should reject Plaintiff's attempt to add additional allegations through his opposition brief. In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted). Extending that principle, it "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

Plaintiff's Amended Complaint contains no allegations whatsoever to suggest that he has suffered "actual damages" for purposes of the Privacy Act. His Amended Complaint states only that he has suffered "reputationally and emotionally," with no further detail. ECF No. 15 ¶ 10. The Court should ignore Plaintiff's belated attempt to show actual, pecuniary damages, which are not "specially pleaded"—particularly given that he already had the opportunity to amend his

pleadings will full knowledge of this deficiency—and still failed to describe any tangible pecuniary harm in his Amended Complaint. *Cooper*, 566 U.S. at 295; *see also* Def.'s Partial Mot. to Dismiss 11–12, ECF No. 13 (seeking to dismiss the original complaint for failure to plead actual damages).

More fundamentally, Plaintiff's vague attempt to tie alleged reputational harm to his pecuniary interests is insufficient to allege actual damages under *Cooper*. He provides no specifics of how his ability to practice law has been affected and no calculation or estimate of the monetary value of the damage he claims has occurred. *See Welborn v. IRS*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016) ("Plaintiff must specifically allege that they have suffered calculable damages to survive Defendants' motion to dismiss."); *Glass v. U.S. Dep't of Justice*, 279 F. Supp. 3d 279, 281 (D.D.C. 2017) ("Plaintiff's vague description of the harms allegedly sustained as a result of Defendants' disclosure cannot support a demand for actual damages that must be 'limited to *proven* pecuniary or economic harm.'" (quoting *Cooper*, 566 U.S. at 299)).

Nor does he allege sufficient facts to sustain a claim that any alleged damage to his ability to practice law was proximately caused by the alleged Privacy Act violation. 5 U.S.C. § 552a(g)(4) (stating that actual damages must be "sustained by the individual *as a result of*" an intentional and willful violation of the Act) (emphasis added); *Skinner v. U.S. Dep't of Justice*, 584 F.3d 1093, 1097 (D.C. Cir. 2009) (requiring Privacy Act plaintiff to show proximate causation). Plaintiff does not explain how the alleged failure to maintain adequate safeguards affected his ability to practice law—except for vague references to reputational harm—nor does he allege that he would have been able to resume his practice of law but for the alleged safeguards violation. Without such detail, Plaintiff has not adequately pleaded that his inability to practice law is tied to the facts underlying his claim, as opposed to any number of other causal

factors.

In arguing that his vague allegations of harm suffice to meet the pleading standard, Plaintiff relies exclusively on *Fleck v. Dep't of Veterans Affs.*, No. 18-1452 (RDM), 2020 WL 42842 (D.D.C. Jan. 3, 2020). The allegations of actual damages in *Fleck*, however, were significantly more specific and concrete than in this case. In *Fleck*, the plaintiff alleged that he had applied for and received an interview for a position that would have paid him more than the job he held at the time, and that he was rejected shortly after the government unlawfully disclosed information about him. *Id.* at *3. The plaintiff also alleged that "the position would have made him eligible for awards and bonuses that he may not now receive[.]" *Fleck v. Dep't of Veterans Affs.*, No. 18-1452 (RDM), Am. Compl. ¶ 100, ECF No. 12. Although the allegations in *Fleck* were somewhat "lacking in detail," there was a clear line between the alleged Privacy Act violation and a specific economic harm—*i.e.*, the failure to secure the higher-paying position that the plaintiff had applied for around the time of the release of his personal information. 2020 WL 42842 at *8. There is no comparable calculable harm here; nor are there any similar allegations that any actual damages were "as a result" of the alleged failure to safeguard Plaintiff's records.

Plaintiff also misconstrues the Privacy Act by pointing to alleged "substantial legal fees" as a type of actual damages. ECF No. 20 at 18. Legal fees cannot be "actual damages" under the statute, which allows for an award of reasonable attorney fees, but only if a litigant *first* establishes the requisite pecuniary harm. 5 U.S.C. § 552a(g)(1), (g)(4)(B); *Krieger v. U.S. Dep't of Justice*, 562 F. Supp. 2d 14, 18–19 (D.D.C. 2008) (holding that attorneys' fees fail to establish the element of actual damages). To allow litigants to satisfy the actual damages element of a Privacy Act violation through legal fees alone would mean that any plaintiff could show actual damages merely by filing suit.

Finally, Plaintiff fails to satisfy the actual damages element by pointing to an alleged effect on his right to a fair trial. *See* ECF No. 20 at 19. Even taking his allegation at its face, that alleged injury is "nonpecuniary" and has not been "substantiated by proof of tangible economic loss." *Cooper*, 566 U.S. at 301, 303.

**B.      Plaintiff Concedes that Injunctive Relief is Unavailable.**

In its motion to dismiss, the government showed that Plaintiff is not entitled to injunctive relief under the Privacy Act. *See* ECF No. 17 at 13–14. In short, injunctive relief is available only in the specific circumstances described in the statute and is not permitted through the catchall provision in § 552a(g)(1)(D) through which Plaintiff brings his safeguards claim. *See, e.g.*, *Sussman v. U.S. Marshall Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007).

Plaintiff did not address the government's arguments regarding injunctive relief in his opposition to the motion to dismiss. Accordingly, he has conceded the point, and the Court should dismiss his request for injunctive relief in Paragraphs D and E of his Amended Complaint. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)).

**C.      Plaintiff Fails to Allege a Claim Under the Privacy Act's Safeguards Provision.**

Even assuming Plaintiff had adequately alleged actual damages, he would still fail to make out a safeguards claim. Plaintiff puts forward for the first time in opposition to the government's motion to dismiss a new theory of liability under § 552a(e)(10). Relying on documents not cited in or attached to his Amended Complaint, he argues that the IRS failed to safeguard his information by allowing Messrs. Ziegler and Shapley to retain access to his

information after they had been removed from the agency's investigation. *See* ECF No. 20 at 14–17. Specifically, Plaintiff argues that "the IRS should have a procedure to promptly remove investigative files from the possession of compromised agents in order to prevent unauthorized disclosures." ECF No. 20 at 16. The Court should reject this new theory, which is untethered to the allegations in the Amended Complaint.

As discussed above, the Court may consider only the facts alleged in Plaintiff's Amended Complaint, or incorporated therein, and he may not amend his complaint through his opposition brief. *See N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d at 1249; *Arbitraje Casa de Cambio*, 297 F. Supp. 2d at 170. Yet, the Amended Complaint lacks any facts to support Plaintiff's newly asserted safeguards theory. For instance, although the Amended Complaint states that the IRS did not take reasonable steps to prevent its personnel from "unlawfully accessing" his tax return information, ECF No. 15 ¶ 47, it contains nothing on the subject of when Messrs. Shapley and Ziegler were assigned to the investigation of Plaintiff, or when, according to Plaintiff, access should have been withdrawn. The lack of detail is, again, all the more perplexing given that Plaintiff filed his Amended Complaint in February 2024, knowing what arguments the government would raise in its motion to dismiss. *See* ECF No. 13 at 14–19 (arguing that Plaintiff failed to allege a safeguards claim).

Beyond lacking such fundamental details, the Amended Complaint—on its face—still fails to allege that any of the agency's policies were flawed. Indeed, there is no discussion whatsoever in Plaintiff's pleadings of the many statutory and policy provisions the IRS has in place to provide for confidentiality of taxpayer information, and the Amended Complaint does not suggest what the IRS should have done differently. As the government has explained, Plaintiff's claim is, in effect, that the IRS did not prevent individual employees from violating

IRS's existing policies. *See* ECF No. 17 at 17–18. That remains an apt description of the claim, even under the new theory. But that is not a safeguards claim; it is just a (preempted) improper disclosure claim in different garb. Here, where the IRS has "issued numerous rules and regulations regarding the maintenance of records, and [the complaint] has not identified any specific failure to issue guidelines," dismissal is appropriate. *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 43 (D.D.C. 2009) (quoting *Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d 29, 54–55 (D.D.C. 2009)); *see also Dick v. Holder*, 67 F. Supp. 3d 167, 186 (D.D.C. 2014).

The Court should reach the same conclusion even if it were to consider Plaintiff's new safeguards theory as described in his opposition brief (though absent from his Amended Complaint). He argues that the IRS improperly safeguarded his taxpayer information by allowing Messrs. Shapley and Ziegler to allegedly retain access to such information after being removed from the IRS's investigation. *See* ECF No. 20 at 14–17. Yet, although Plaintiff states that Messrs. Shapley and Ziegler were removed from the IRS's investigation in December 2022; *see id.* at 2 & n.2, he says nothing about when they learned the information they disclosed. Indeed, it is plausible that they learned that information before they were removed from the investigation, such that cutting their access off when they were removed (the safeguard Plaintiff claims should have been implemented) would not have prevented them from making the disclosures that Plaintiff complains about. Accordingly, Plaintiff's allegations, even as reimagined in his opposition brief, do not state a safeguards claim. *See Kvech v. Holder*, No. 10-cv-545 (RLW), 2011 WL 4369452, *6 n.11 (D.D.C. Sept 19, 2011) (finding plaintiff could not maintain a safeguards claim, because "[t]here is nothing in her complaint which might indicate that the employees obtained the information *because* the FBI's administrative and technical safeguards were insufficient" (emphasis added)).

14

Plaintiff's Amended Complaint also lacks sufficient facts to support a plausible inference that the government not only failed to establish adequate safeguards but also that it did so intentionally or willfully. *See* ECF No. 17 at 18–20. He now explains his theory that the IRS allegedly "ratified" the disclosures of Plaintiff's information. ECF No. 20 at 17. But here again, he can point to no such allegations in the Amended Complaint. Having failed to adequately allege an intentional or willful violation of the Privacy Act, Plaintiff's claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the United States requests that the Court dismiss Count I to the extent it is based on the alleged unlawful disclosures made by Shapley Representative A and Shapley-Ziegler Representative B and dismiss Count II in its entirety.

Dated: May 10, 2024

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Mary Elizabeth Smith*
MARY ELIZABETH SMITH
Maryland Bar No. 0712110235
Trial Attorney, Tax Division
U.S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9779 (v)
(214) 880-9741 (f)
Mary.E.Smith@usdoj.gov

*/s/ Jeremy A. Rill*
JEREMY A. RILL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-307-0513 (v)
202-514-4963 (f)
Jeremy.A.Rill@usdoj.gov

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
(D.C. Bar No. 988057)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 305-0878 (v)
(202) 616-8470 (f)
Bradley.Humphreys@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on May 10, 2024, I filed the foregoing document with the Clerk of Court

using the CM/ECF electronic filing system, which will send notification to all counsel of record.


*/s/ Mary Elizabeth Smith*
MARY ELIZABETH SMITH