**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:23-cv-02711 |
| UNITED STATES INTERNAL REVENUE | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**JOINT MOTION TO INTERVENE AS INTERVENOR-DEFENDANTS AND**
**INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 2

LEGAL STANDARD ........................................................................................................... 4

   I.    INTERVENTION AS OF RIGHT. ...................................................................... 4

   II.   PERMISSIVE INTERVENTION. ......................................................................... 5

   III.  INTERVENTION FOR PURPOSES OF RAISING MOTIONS UNDER FEDERAL
        RULE OF CIVIL PROCEDURE 12 ..................................................................... 5

ARGUMENT ...................................................................................................................... 6

   I.    THIS COURT SHOULD GRANT INTERVENTION AS OF RIGHT. .............................. 6

      A.  This Motion is Timely. .......................................................................... 6

      B.  The Proposed Intervenors' Strong Interest in Defending their Protected
          Whistleblower Conduct Will Be Impaired if Plaintiff Prevails, Hence the
          Proposed Intervenors Have Standing to Intervene. ................................. 8

      C.  The IRS Will Not Adequately Protect the Proposed Intervenors' Interest in this
          Proceeding. ......................................................................................... 14

   II.   ALTERNATIVELY, THIS COURT SHOULD GRANT PERMISSIVE
       INTERVENTION ............................................................................................. 17

      A.  There Are Common Questions of Law and Fact. ..................................... 17

      B.  Allowing Intervention at this Early Stage Would Cause No Delay or Prejudice. .......... 18

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*100Reporters LLC v. United States Dep't of Just.*,
  307 F.R.D. 269 (D.D.C. 2014)........................................................................................9, 18

*Appleton v. F.D.A.*,
  310 F. Supp. 2d 194 (D.D.C. 2004) ......................................................................................4

*Ass'n of Am. Physicians & Surgeons, Inc. v. Food & Drug Admin.*,
  539 F. Supp. 2d 4 (D.D.C. 2008) ..........................................................................................5

*Berger v. North Carolina State Conference of the NAACP*,
  597 U.S. 179 (2022).............................................................................................................14

*In re. Brewer*,
  863 F.3d 861 (D.C. Cir. 2017) ............................................................................................15

*Cal. Valley Miwok Tribe v. Salazar*,
  281 F.R.D. 43 (D.D.C. 2012)................................................................................................5

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
  595 U.S. 267 (2022)...........................................................................................................6, 7

*Campaign Legal Ctr. v. Fed. Election Comm'n*,
  334 F.R.D. 1 (D.D.C. 2019)..................................................................................................6

*Campaign Legal Ctr. v. Fed. Election Comm'n*,
  466 F. Supp. 3d 141 (D.D.C. 2020) ..................................................................................5, 6

*Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*,
  386 U.S. 129 (1967).............................................................................................................14

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
  788 F.3d 312 (D.C. Cir. 2015) ..................................................................................14, 15, 16

*Defs. Of Wildlife v. Perciasepe*,
  714 F.3d 1317 (D.C. Cir. 2013) ..........................................................................................10

*District of Columbia v. Potomac Elec. Power Co.*,
  826 F. Supp. 2d 227 (D.D.C. 2011) ....................................................................................10

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998) ......................................................................................5, 18

*Elec. Priv. Info. Ctr. v. Fed. Trade Comm'n*,
No. 18-942, 2019 WL 11307643 (D.D.C. Aug. 28, 2019) ................................... 18

*In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165*,
704 F.3d 972 (D.C. Cir. 2013) ............................................................................. 17

*Env't Integrity Project v. Pruitt*,
709 Fed. Appx. 12 (D.C. Cir. 2017) ...................................................................... 8

*Foster v. Gueory*,
655 F.2d 1319 (D.C. Cir. 1981) ........................................................................... 12

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ...................................................................... *passim*

*Giglio v. United States*,
405 U.S. 150 (1972) ............................................................................................. 13

*Hodgson v. United Mine Workers of America*,
473 F.2d 118 (D.C. Cir. 1972) ............................................................................... 5

*Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*,
105 F.R.D. 106 (D.D.C. 1985), *aff'd*, 784 F.2d 1131 (D.C. Cir. 1986) ................... 4

*Jones v. Prince George's County, Md.*,
348 F.3d 1014 (D.C. Cir. 2003) ...................................................................... 4, 10

*Karsner v. Lothian*,
532 F.3d 876 (D.C. Cir. 2008) .......................................................................... 4, 7

*Kyles v. Whitley*,
514 U.S. 419 (1995) ............................................................................................. 14

*Liu v. Mayorkas*,
No. 21-1725, 2022 WL 203432 (D.D.C. Jan. 24, 2022) ....................................... 19

*Mayo v. Jarvis*,
No. 14-1751, 2014 WL 12804733 (D.D.C. Nov. 12, 2014) ............................. 14, 15

*Mountain States Legal Foundation v. Glickman*,
92 F.3d 1228 (D.C. Cir. 1996) ........................................................................ 10, 13

*NAACP v. New York*,
413 U.S. 345 (1973) ............................................................................................... 6

*Natural Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) .......................................................................... 9, 10

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) ........................................................................5, 18

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt,*
    331 F.R.D. 5 (D.D.C. 2019) ..................................................................................18

*Scenic Am., Inc. v. U.S. Dep't of Transp.,*
    983 F. Supp. 2d 170 (D.D.C. 2013) ........................................................................5

*Town of Chester v. Laroe Estates, Inc.,*
    137 S. Ct. 1645 (2017) ............................................................................................8

*Town of Chester v. Laroe Estates, Inc.,*
    (No. 16-605),  Brief for the United States as Amicus Curiae Supporting
    Petitioner ................................................................................................................9

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 (1972) ..................................................................................... *passim*

*United States v. Agurs,*
    427 U.S. 97 (1976) ................................................................................................14

*United States v. American Tel. & Tel. Co.,*
    642 F.2d 1285 (D.C. Cir. 1980) ...........................................................................12

*United States v. Biden,*
    No. 2:23-cr-00599-MCS (C.D. Cal. 2023) ..........................................................13

*United States v. Philip Morris USA Inc.,*
    No. 99-2496, 2005 WL 1830815 (D.D.C. July 22, 2005) ..................................5, 19

*Vestal v. Dep't of Treasury,*
    1 F.4th 1049 (Fed. Cir. 2021) ..............................................................................12

*Virginia v. Ferriero,*
    466 F. Supp. 3d 253 (D.D.C. 2020) ................................................................15, 16

*Waterkeeper All., Inc. v. Wheeler,*
    330 F.R.D. 1 (D.D.C. 2018) ......................................................................... *passim*

*Wildearth Guardians v. Salazar,*
    272 F.R.D. 4 (D.D.C. 2010) ...................................................................................9

**Rules/Statutes**

5 U.S.C. § 2302 ............................................................................................................11, 12

26 U.S.C. § 6103 .................................................................................................... *passim*

Fed. R. Civ. P. 24(a) .......................................................................................... *passim*

Fed. R. Civ. P. 24(b) .......................................................................................... *passim*

I.R.C. § 6103 .......................................................................................... 1, 12, 13

I.R.C. § 7431(a)(1) .......................................................................................... 1, 11

**Other Authorities**

Email from IRS Special Agent Joseph Ziegler to IRS Deputy Commissioner for
    Services and Enforcement Douglas O'Donnell, *et al.* (May 18, 2023),
    *available at* https://empowr.us/wp-content/uploads/2024/04/2023-05-22-
    Letter-to-Congress-re-retaliation.pdf .......................................................... 13

Letter from Christopher J. Clark to the Honorable Michael E. Horowitz (June 29,
    2023), *available at* https://www.politico.com/f/?id=0000018a-96d6-dd5e-
    abfe-9fd6541e0000 .......................................................... 13

Letter from Empower Oversight President Tristan Leavitt to U.S. Office of
    Special Counsel (May 17, 2023), *available at*
    https://www.documentcloud.org/documents/24663991-2023-05-
    17_shapley_ppp_complaint_redacted .......................................................... 12

N.Y. Times (June 27, 2023), *available at*
    https://www.nytimes.com/2023/06/27/us/politics/irs-official-justice-dept-
    hunter-biden.html; .......................................................... 13

IRS Supervisory Special Agent Gary Shapley and IRS Special Agent Joseph Ziegler (the "Proposed Intervenors"), by and through their respective undersigned counsel, respectfully move this Court for leave to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), or alternatively, permissively under Federal Rule of Civil Procedure 24(b)(1) ("Motion"). Pursuant to Rule 24 and Local Civil Rule 7(j), the Proposed Intervenors' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Exhibit 1) and Memorandum of Law in Support of that motion (Exhibit 2) is attached hereto to this Motion.

At its core, this Motion boils down to an important but simple premise: seasoned IRS Criminal Investigation ("IRS-CI") special agents Shapley and Ziegler made protected whistleblower disclosures about the U.S. Department of Justice's, the U.S. Department of Justice's Tax Division's and the IRS's preferential treatment of Plaintiff Hunter Biden—and the Government has already retaliated against them since 2022. With that context, the Tax Division's partial defense of the IRS agents' fully lawful disclosures and failure to move to dismiss this lawsuit in its entirety exposes the clear conflict between the interests of the Plaintiff Hunter Biden, the whistleblowers, and the governmental entities on which they blew the whistle.[1]

In this lawsuit, Plaintiff Hunter Biden has wrongly alleged that Shapley and Ziegler violated the tax secrecy and federal privacy statutes—allegations that would cause significant harm for these two federal agents if the IRS fails to defend the protected disclosures as legally authorized. Through this Motion, Shapley and Ziegler seek to do what the Tax Division and the

---

[1] In its Reply in support of its partial motion to dismiss (ECF No.21), the IRS stated: "Although the United Seeks to dismiss Count I only in part, the United States disputes that the IRS employees' alleged disclosures violated I.R.C. § 6103 and that Plaintiff is entitled to recover anything under I.R.C. § 7431(a)(1). After the Court decides the pending partial motion to dismiss, the United States will answer the remaining allegations in the amended complaint and will raise all available defenses." *See* Note 1, ECF No. 21. However, this does not explain why the IRS has failed to raise readily available arguments that support dismissal of Plaintiff's Amended Complaint in its entirety now. *See* 26 U.S.C. § 6103(f)(5) ("Any person who otherwise has or had access to any return or return information under this section may disclose such return or return information to a committee referred to in paragraph (1) . . . .").

IRS have failed to do: (1) move to dismiss the Amended Complaint in its entirety, and (2) cite to legal authority not yet submitted to the Court by either party, to establish that their whistleblower activities were completely lawful, pursuant to whistleblower protections built into federal law, and important in ensuring that no person is above the law regardless of partisan affiliation or familial relationship.

The Proposed Intervenors contacted counsel for the parties to seek their respective positions on this motion to intervene. Both Plaintiff Hunter Biden and the IRS oppose this Motion.

## **PRELIMINARY STATEMENT**

Shapley and Ziegler seek to intervene in this action to defend their lawfully-protected disclosures concerning, *inter alia*:

- Conflicts of interest in the investigation and disposition of the federal criminal tax investigation of Plaintiff Hunter Biden; and

- Preferential treatment and political motivations improperly infecting the Department of Justice's and the IRS's decisions in its investigation of Plaintiff Hunter Biden for criminal tax offenses.

Despite putting duty over self, these two career IRS-CI special agents have already suffered considerable retaliation at the hands of the IRS and others within the federal government for their protected whistleblowing conduct. This lawsuit is merely the latest in a series of actions by Plaintiff Hunter Biden seeking to punish Shapley and Ziegler for conduct that is unambiguously protected under federal law. The Tax Division's failure to move to dismiss Plaintiff Hunter Biden's Complaint, and later, the Amended Complaint, threatens to make this litigation yet another vehicle for improper reprisals against Shapley and Ziegler.

The conflicts of interest could not be more clear. Shapley and Ziegler blew the whistle against the handling of an investigation by the U.S. Attorney's Office for the District of Delaware, the Justice Department's Tax Division, and the IRS into the conduct of the sitting President's son.

Without intervention, the Tax Division is now tasked with defending the legality of disclosures critical of the Tax Division and the IRS. The bottom line remains that Shapley and Ziegler did not violate the law in their disclosures and need the opportunity to intervene to defend their interests.

For these reasons, Shapley and Ziegler respectfully request leave of this Court to intervene in this action—as a matter of right or, in the alternative, permissively—so that they may present a valid, good-faith basis to dismiss this action in its entirety (a basis not argued by the IRS in this litigation) and so that they may continue to protect their concrete interests in this litigation. This motion is timely as this Court has not yet ruled on the IRS's partial motion to dismiss the Amended Complaint, the IRS has not yet filed an answer to the Amended Complaint, and the parties have not yet engaged in the discovery necessary to litigate this case to the extent it is not fully resolved by dismissal under Federal Rule of Civil Procedure 12(b)(6).

**Intervention as of Right:** Pursuant to Federal Rule of Civil Procedure 24(a), Shapley and Ziegler have a strong interest in defending their protected whistleblower conduct, which is the subject of Plaintiff Hunter Biden's allegations in this lawsuit. If the Plaintiff prevails in this case, Shapley's and Ziegler's interests will unquestionably be impaired because such an outcome would subject them to further retaliation and punishment. For these same reasons, they have standing. The IRS's pattern and demonstrable history of retaliation against them make it clear that the IRS will not be an adequate representative of their interests in this action—and that the Tax Division, the very component of the Department of Justice on which Shapley and Ziegler blew the whistle, has a conflict of interest in representing Defendant IRS's interests. Indeed, Shapley and Ziegler seek to intervene precisely because the IRS, through its legal counsel at the Tax Division, has twice refused to raise obvious and good-faith arguments in support of total dismissal, exposing the IRS's unwillingness to vigorously defend the Proposed Intervenors' protected conduct.

**Permissive Intervention:** In the alternative, and for the same reasons, Shapley and Ziegler seek to intervene to raise a defense that is available to the IRS, thus establishing Federal Rule of Civil Procedure 24(b)'s requirement of sharing a common question of law or fact with the parties' claims or defenses. And permitting intervention at this early stage of the proceedings will not cause delay or prejudice to any party.

## LEGAL STANDARD

## I.   INTERVENTION AS OF RIGHT.

Upon the filing of a timely motion, Rule 24(a) requires a district court to "permit anyone to intervene who . . . claims an interest relating to . . . the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). *See also Karsner v. Lothian*, 532 F.3d 876, 881 n.4 (D.C. Cir. 2008). In other words, a proposed intervenor's right to intervene depends on:

> (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties.

*Appleton v. F.D.A.*, 310 F. Supp. 2d 194, 196 (D.D.C. 2004) (citations omitted). *See also Jones v. Prince George's County, Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (listing the four elements of Rule 24(a) as "timeliness, interest, impairment of interest, and adequacy of representation"). In addition, a proposed intervenor must *arguendo* demonstrate standing. *Appleton*, 310 F. Supp. 2d at 196 (citations omitted).

It is well settled in this Circuit that Rule 24(a) should be interpreted liberally in favor of allowing intervention. *See Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 105 F.R.D. 106,

4

110 (D.D.C. 1985), *aff'd*, 784 F.2d 1131 (D.C. Cir. 1986) (a "liberal approach to intervention as of right . . . governs disposition of rule 24(a) motions in the District of Columbia"); *United States v. Philip Morris USA Inc.*, No. 99-2496, 2005 WL 1830815, at *1 (D.D.C. July 22, 2005) (quoting *Nuesse v. Camp,* 385 F.2d 694, 701 (D.C. Cir. 1967)) (referencing the D.C. Circuit's view that "Rule 24 (a)(2) was 'obviously designed to liberalize the right to intervene in federal actions'").

## II.    PERMISSIVE INTERVENTION.

Upon the filing of a timely motion, Rule 24(b) allows a district court "to permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). The decision whether to grant permissive intervention is left to the district court's discretion. *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046-48 (D.C. Cir. 1998) (citing *Hodgson v. United Mine Workers of America*, 473 F.2d 118, 125 n. 36 (D.C. Cir. 1972)) ("[P]ermissive intervention is an inherently discretionary enterprise . . . . [W]ide latitude [is] afforded to district courts under the rule . . . .") (internal quotations omitted). Additionally, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

## III.    INTERVENTION FOR PURPOSES OF RAISING MOTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12

It is well settled that non-parties may intervene in federal civil litigation for the purpose, *inter alia*, of filing motions pursuant to Federal Rule of Civil Procedure 12. Indeed, federal courts within this judicial district have repeatedly considered Rule 12(b)(6) motions to dismiss filed by intervenor-defendants. *See, e.g.*, *Campaign Legal Ctr. v. Fed. Election Comm'n*, 466 F. Supp. 3d 141, 148–50 (D.D.C. 2020); *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 983 F. Supp. 2d 170, 173 (D.D.C. 2013); *Cal. Valley Miwok Tribe v. Salazar*, 281 F.R.D. 43, 48 (D.D.C. 2012); *Ass'n of Am. Physicians & Surgeons, Inc. v. Food & Drug Admin.*, 539 F. Supp. 2d 4, 9 (D.D.C. 2008).

For example, in *Campaign Legal Center*, a non-profit organization filed an administrative complaint against the FEC alleging two political action committees had violated campaign finance rules. The FEC dismissed the complaint, and the non-profit filed a federal lawsuit challenging the dismissal. But because the FEC did not garner the four affirmative votes necessary to authorize the agency to defend the civil lawsuit, the FEC could not adequately defend the intervenor-defendants. As such, the district court permitted the two political action committees to intervene and file a motion to dismiss pursuant to Rule 12(b)(6). *See Campaign Legal Ctr. v. Fed. Election Comm'n*, 334 F.R.D. 1 (D.D.C. 2019) (granting motion to intervene); *Campaign Legal Ctr. v. Fed. Election Comm'n*, 466 F. Supp. 3d 141 (D.D.C. 2020) (denying intervenor-defendant's motion to dismiss on the motion's merits). This supports the simple but important legal premise that intervenors, who are the real subject of a pending civil lawsuit but who have not been named as parties, may intervene to defend themselves by filing appropriate pre-trial motions when the federal agency defendant will not or cannot adequately defend the intervenors' interests.

## ARGUMENT

### I.     THIS COURT SHOULD GRANT INTERVENTION AS OF RIGHT.

#### A.  This Motion is Timely.[2]

"Timeliness is to be determined from all the circumstances." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279–80 (2022) (internal quotations and citations omitted). "Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive." *NAACP v. New York*, 413 U.S. 345, 365–66 (1973).

> [T]imeliness . . . is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the

---

[2] For the same reasons discussed here, the Proposed Intervenors' motion is also timely for permissive intervention under Rule 24(b).

applicant's rights, and the probability of prejudice to those already parties in the case.

*Karsner*, 532 F.3d at 886 (internal quotations and citations omitted). *See also Cameron*, 595 U.S. at 279–80 ("[T]he most important circumstance relating to timeliness is that the attorney general sought to intervene 'as soon as it became clear' that the Commonwealth's interests 'would no longer be protected' by the parties in the case.") (citations omitted); *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 6 (D.D.C. 2018) (motion to intervene timely where movants filed, *inter alia*, "before this Court had occasion to make any merits decisions").

This case is still in the earliest stages of federal civil litigation. The Amended Complaint was filed on February 5, 2024. (ECF No. 15.) The Defendant filed a partial motion to dismiss the Amended Complaint on February 27, 2024 (ECF No. 17), which only became fully briefed on May 10, 2024 when the IRS filed its Reply brief on Friday, May 10, 2024 (ECF No. 21). This Court has not yet ruled on the IRS's partial motion to dismiss. The IRS has not yet filed an answer to the Amended Complaint, this Court has not yet entered a scheduling order, the parties have not yet engaged in discovery, this Court has not yet entered any dispositive orders, and no trial date has been set. (*See* Docket). This case was also recently reassigned on April 11, 2024. (ECF No. 19.)

Moreover, Shapley and Ziegler are filing this motion because it has now become apparent that the IRS—individually and through its legal counsel at the Tax Division—will not adequately represent their interests in this proceeding. Specifically, the Proposed Intervenors determined the need for intervention upon the IRS's filing and briefing of its *partial* motion to dismiss the Amended Complaint, in which the IRS failed to raise fundamental and critical arguments for total dismissal of this lawsuit—a basis set out with an abundance of legal authority in the attached

proposed motion to dismiss and memorandum in support of that motion pursuant to Federal Rule of Civil Procedure 12(b)(6).

**B. The Proposed Intervenors' Strong Interest in Defending their Protected Whistleblower Conduct Will Be Impaired if Plaintiff Prevails, Hence the Proposed Intervenors Have Standing to Intervene.**

To the extent Article III standing is required to intervene in this case, Shapley and Ziegler satisfy that requirement. However, as a threshold matter, it is not settled that Article III standing in this context is in fact required. The Supreme Court's decision in *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) calls into question the D.C. Circuit's previous requirement that defendant intervenors must establish standing. *See, e.g., Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) ("Our conclusion that the NRD has constitutional standing is alone sufficient to establish that the NRD has 'an interest relating to the property or transaction which is the subject of the action.'"). In *Town of Chester*, the Supreme Court held a potential intervenor must have standing "to pursue relief *that is different from that which is sought by a party with standing.*" 137 S. Ct. at 1651 (emphasis added). The Court presumed the would-be plaintiff-intervenor lacked standing and remanded so the Second Circuit could determine whether the named plaintiff sought different relief than the plaintiff, *id*. at 1652, but recognized that the "resolution" of the named plaintiff's standing might not "become[] necessary on remand," *id*. at 1650 n. 2. The only way to square *Town of Chester*'s holding with its disposition is to recognize that intervenors do not need to establish standing if they seek the same relief as a party with standing. Thus, if the IRS defends this lawsuit, Shapley and Ziegler do not need standing to defend it as well. *See Env't Integrity Project v. Pruitt*, 709 Fed. Appx. 12, 13 (D.C. Cir. 2017) ("*Town of Chester* held that an intervenor as of right must show Article III standing *when it seeks relief different from that sought by a party.*") (emphasis added). Where, as here, an intervenor seeks to

present written or oral legal arguments supporting the claim of an original party—*i.e.* that Plaintiff Hunter Biden should not prevail—the intervenor does not independently have to establish standing. In fact, this is *precisely* what the United States itself argued to the Supreme Court in an *amicus brief* in *Town of Chester*: "Other actions—such as presenting written or oral legal arguments supporting the claims of the original parties—would not require such a showing [of Article III standing." *See* Brief for the United States as Amicus Curiae Supporting Petitioner, *Town of Chester v. Laroe Estates, Inc.* (No. 16-605) at 16.

But even if this Court requires a showing of Article III standing, Shapley and Ziegler unambiguously have standing to intervene. "Courts in this circuit generally treat the standing analysis for intervention as of right as equivalent to determining whether the intervenor has a 'legally protected' interest under Rule 24(a)." *100Reporters LLC v. United States Dep't of Just.*, 307 F.R.D. 269, 276 (D.D.C. 2014) (citations omitted); *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 n. 5 (D.D.C. 2010) ("[T]he standing inquiry will fold into the underlying inquiry under Rule 24(a): generally speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*.") (citations omitted).

"The test for a legally protected interest is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Waterkeeper*, 330 F.R.D. at 7 (internal quotations and citations omitted). To determine whether an interest will be impaired, district courts "look[ ] to the 'practical consequences' of denying intervention, even where the possibility of future challenge . . . remain[s].'" *Fund for Animals*, 322 F.3d at 735 (quoting *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)). "[I]t is not enough to deny intervention under 24(a)(2) because

applicants may vindicate their interests in some later, albeit more burdensome, litigation." *Costle*, 561 F.2d at 910. "An action has the practical consequence of impairing prospective intervenors' interests when the unsuccessful 'disposition of the action would result in a substantial change in the status quo with respect to those interests,' such that 'the task of reestablishing the status quo if [plaintiffs] succeed[] . . . will be difficult and burdensome.'" *Waterkeeper*, 330 F.R.D. at 7 (quoting *District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011)) (further citations omitted).

Similarly, for standing, "[p]rospective defendant-intervenors must also demonstrate Article III standing by establishing injury in fact, causation, and redressability." *Waterkeeper*, 330 F.R.D. at 6 (citations omitted). For purposes of Article III, standing is established even where an injury is speculative or will occur in the future, because "[t]he more drastic the injury" at stake, "the lesser the increment in probability necessary to establish standing." *Mountain States Legal Foundation v. Glickman,* 92 F.3d 1228, 1234 (D.C. Cir. 1996). Courts thus treat proposed intervenors' "factual allegations as true and must grant [the intervenor] the benefit of all inferences that can be derived from the facts alleged." *Defs. Of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013) (internal quotations omitted).

To be clear, the fact that Section 7431 prevents a plaintiff from bringing an action against individual IRS employees, such as Shapley and Ziegler, does not prevent those employees' ability to intervene in this action. "In a motion to intervene under Rule 24(a)(2), the question is not whether the applicable law assigns the prospective intervenor a cause of action." *Jones*, 348 F.3d at 1017–18. "As the Rule's plain text indicates, intervenors of right need only an 'interest' in the litigation—not a 'cause of action' or 'permission to sue.'" *Id*. (quoting FED. R. CIV. P. 24(a)(2)). In other words, the fact that a statute does not contemplate a particular individual's involvement

in an action in the first instance does not necessarily preclude that individual's later, voluntary participation. *See, e.g.*, *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 530-31 (1972) (allowing intervention by union member even though statute expressly prohibited union members from initiating such actions on their own).

The same logic applies with full force in this case. Just because Plaintiff Hunter Biden cannot sue the Proposed Intervenors directly does not mean Shapley and Zeigler do not share an interest in this litigation and cannot later intervene. In fact, to the extent Section 7431(a)(1) is intended to protect individual government employees from the burden of litigation, Shapley's and Ziegler's *voluntary* attempt to intervene in this action is consistent with Section 7431(a)(1)'s purpose—and Section 7431 clearly did not contemplate the parameters of the unusual circumstances here where the alleged disclosures at issue were made by IRS-CI special agents acting as whistleblowers, making legally protected disclosures regarding the conduct of the IRS, DOJ, and the Tax Division in criminally investigating the sitting President's adult son.

Shapley and Ziegler have a significant concrete interest in the outcome of this action: their careers, their reputations, and fending off adverse collateral consequences. Both have pending complaints pursuant to 5 U.S.C. § 2302 where they have alleged the IRS engaged in prohibited personnel practices in reprisal for substantially the same whistleblowing activity and subject matter at the core of this litigation. Thus, it is an understatement that their interests would be impaired if Plaintiff Hunter Biden were to prevail. The "transaction" that is the subject matter of this action concerns the Proposed Intervenors' legally protected whistleblowing conduct authorized by Title 26, United States Code, Section 6103(f)(5) and protected by Title 5, United States Code, Section 2302—which is crucial context to which both parties have failed to alert this Court. Indeed, it was not until the Government filed a reply brief on May 10, 2024 that either party has referenced—and

only in a footnote—the existence of Section 6103(f)(5), the very section that authorizes the whistleblower activity that is the subject of this litigation. (*See* ECF No. 20, fn. 2). And still, neither party has referenced the reprisal complaints pending against the IRS with the U.S. Office of Special Counsel (OSC).[3]

As such, the Proposed Intervenors have a clear interest in this action. *See Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit . . . .") (citations omitted); *United States v. American Tel. & Tel. Co.,* 642 F.2d 1285, 1291–93 (D.C. Cir. 1980) (proposed intervenor possessed an interest where it created the database that was the subject of the action between another company and the government).

By the same token, Plaintiff Hunter Biden's success in this action would cause the Proposed Intervenors to suffer concrete injuries-in-fact. The Proposed Intervenors could face reputational and professional harm where the current parties allow any mischaracterizations of Shapley's and Zeigler's protected whistleblowing to be presented as violations of Section 6103—when, in fact, Section 6103's whistleblower provisions authorize their legal disclosures and 5 U.S.C. § 2302 protects them. The current lack of a full motion to dismiss Plaintiff Hunter Biden's Complaint, in its entirety, threatens to create a false pretext for possible retaliatory employment action by the IRS, Shapley's and Ziegler's current employer—and federal courts have recognized the IRS's termination of an IRS employee's employment on the ground the agent violated Section 6103. *See, e.g., Vestal v. Dep't of Treasury,* 1 F.4th 1049, 1054–55 (Fed. Cir. 2021) (holding that an IRS revenue agent was properly fired for disclosing tax information, in violation of § 6103, to her private attorney in connection with a Merit Systems Protection Board complaint) (cited by the

---

[3] *See,* Letter from Empower Oversight President Tristan Leavitt to U.S. Office of Special Counsel (May 17, 2023), *available at* https://www.documentcloud.org/documents/24663991-2023-05-17_shapley_ppp_complaint_redacted.

IRS in its Reply, ECF No. 21 at 6). The Proposed Intervenors also face other types of serious retaliation for their actions, including investigation and potential criminal prosecution by the Department of Justice and the Treasury Inspector General for Tax Administration.

These harms are not speculative. The IRS already retaliated against Shapley and Ziegler by improperly removing them from the investigation after Plaintiff Hunter Biden's legal team lobbied the Department of Justice to target them.[4] The Justice Department has also launched a gratuitous and retaliatory attempt to tarnish the Proposed Intervenors' reputations by trying to mischaracterize their protected whistleblowing as wrongful conduct and publicly disclosing that they *may* be under investigation, according to a motion to seal filed by the United States in a related criminal action, *United States v. Biden*, No. 2:23-cr-00599-MCS at Dkt. No. 43 (C.D. Cal. 2023) (referencing "a *potential* ongoing investigation(s)" that "*may* involve allegations of wrongdoing" and that "are <u>not</u> references to any investigation of [the Plaintiff] conducted by the U.S. Department of Justice") (emphasis in added). And even if these harms were speculative (they are not), the stakes are drastic, thus necessitating a lower "increment in probability necessary to establish standing." *Mountain States,* 92 F.3d at 1234.

Furthermore, as federal agents, Shapley's and Ziegler's ability to continue to do their job—and to progress in their careers—could be hampered by a finding by this Court that they violated Section 6103. *See, generally, Giglio v. United States*, 405 U.S. 150, 154 (1972) (prosecutors must disclose material information to a defendant that may be grounds for impeachment of a witness). To be clear, this is not to say that district courts would allow impeachment of Shapley and/or

---

[4] *See* Email from IRS Special Agent Joseph Ziegler to IRS Deputy Commissioner for Services and Enforcement Douglas O'Donnell, *et al.* (May 18, 2023), *available at* https://empowr.us/wp-content/uploads/2024/04/2023-05-22-Letter-to-Congress-re-retaliation.pdf (Attachment 2, Exhibit A within hyperlink); *Glenn Thrush and Michael S. Schmidt, Competing Accounts of Justice Dept.'s Handling of Hunter Biden Case*, N.Y. Times (June 27, 2023), *available at* https://www.nytimes.com/2023/06/27/us/politics/irs-official-justice-dept-hunter-biden.html; Letter from Christopher J. Clark to the Honorable Michael E. Horowitz (June 29, 2023), *available at* https://www.politico.com/f/?id=0000018a-96d6-dd5e-abfe-9fd6541e0000.

Ziegler on these grounds—but when addressing whether they could suffer a concrete injury for purposes of Article III standing, this possible ramification (especially when they did not violate the law and seek to defend their conduct as lawful in this lawsuit) is real. *See United States v. Agurs*, 427 U.S. 97, 108 (1976) ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure."); *Kyles v. Whitley*, 514 U.S. 419, 439 (1995) ("The prudence of the careful prosecutor should not therefore be discouraged."). As the Supreme Court made clear, under Rule 24(a)(2), if a proposed intervenor "would be substantially affected *in a practical sense* by the determination made in an action, he should, as a general rule, be entitled to intervene." *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 134 n.3 (1967) (emphasis added).

### C. The IRS Will Not Adequately Protect the Proposed Intervenors' Interest in this Proceeding.

The D.C. Circuit has described the final requirement for standing as "not onerous" and as "low," *Fund For Animals,* 322 F.3d at 735, 736 n. 7, and "a movant ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation," *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) (internal quotations and citations omitted). *See also Trbovich*, 404 U.S. at 538 n.10 (the burden to prove inadequacy of representation "should be treated as minimal" and "is satisfied if the applicant shows that representation of his interest 'may be' inadequate") (citing 3B J. Moore, Federal Practice 24.09—1 (4) (1969)); *Mayo v. Jarvis*, No. 14-1751, 2014 WL 12804733, at *3 (D.D.C. Nov. 12, 2014) (describing applicants' burden under this factor as "de minimis," requiring only a "showing that there is a possibility that [applicants'] interests may not be adequately represented absent intervention").

A mere relation of interests between a proposed intervenor and an existing party is not sufficient to presume adequate representation. *Berger v. North Carolina State Conference of the*

14

*NAACP*, 597 U.S. 179, 196-97 (2022) (presumption of adequate representation only applies when a proposed intervenor's interests are "identical to" and "overlap fully" with those of an existing party). *See also Trbovich*, 404 U.S. at 538 (individual's intervention should have been allowed as of right in suit brought by the Secretary of Labor because the relevant statute "plainly imposes on the Secretary the duty to serve two distinct interests, which are related, but not identical"). Moreover, "this Circuit has 'often concluded that [federal] governmental entities do not adequately represent the interests of aspiring intervenors' because the federal government's obligation 'is to represent the interests of the American people' as expressed in federal law, not the interests of other entities or governments." *Virginia v. Ferriero*, 466 F. Supp. 3d 253, 258–59 (D.D.C. 2020) (citing *Fund for Animals*, 322 F.3d at 736) (further citations omitted). *See also Crossroads*, 788 F.3d at 321 ("[W]e look skeptically on government entities serving as adequate advocates for private parties.") (citations omitted).

Although the D.C. Circuit has been "inconsistent as to who bears the burden with respect to this factor [adequacy of representation]," the court recently indicated the burden "rests on those resisting intervention." *In re Brewer*, 863 F.3d 861, 872 (D.C. Cir. 2017). But even if this Court were to hold Shapley and Ziegler to that burden, the Proposed Intervenors have more than met this "de minimis" standard. *Mayo*, 2014 WL 12804733 at *3. Although there is a slight alignment of interests between the Proposed Intervenors and the IRS in defending against Plaintiff Hunter Biden's claims in this action, the IRS's general interest in defending does not entirely overlap with the Proposed Intervenors' specific interests. For example, the Proposed Intervenors are not liable for any financial recovery in this action, unlike the IRS, but they could be subject to disciplinary or employment action, or even investigation and prosecution, and collateral career consequences, all unlike the IRS. And the clear conflict of interest between the IRS and the two whistleblowers

underscores that the interests are not completely aligned. Indeed, the IRS *should* be wholeheartedly defending the actions of Shapley and Ziegler—but the IRS is not.

In this case, if Plaintiff Hunter Biden's entire lawsuit is not dismissed as a matter of law, Plaintiff Hunter Biden's interests will, perhaps surprisingly, overlap with the Proposed Intervenors' interests on certain factual issues. For instance, both Plaintiff and the Proposed Intervenors might have an interest in proving that IRS leadership was fully aware of the whistleblower disclosures and public statements about them over an extended period, but at no time instructed Shapley or Ziegler to cease making those disclosures or commenting about them publicly. That reflects that there are really at least three separate vantage points in this litigation: Plaintiff Hunter Biden's, the IRS's, and Shapley's/Ziegler's.

Even if there were a significant overlap in interests, the fact remains that the IRS is in no position to serve as an adequate advocate for its individual employees, their outside counsel at the time of their disclosures referenced by pseudonym in the Amended Complaint, or a non-profit organization focused on protecting whistleblowers. *See Trbovich*, 404 U.S. at 538; *Fund for Animals*, 322 F.3d at 736; *Crossroads*, 788 F.3d at 321. Thus, "it is not difficult to see that the interests of [the Proposed Intervenors and the Defendant] 'might diverge during the course of the litigation,' particularly since [the Defendant] 'remains free to change its strategy' as the case proceeds." *Virginia*, 466 F. Supp. 3d at 259 (quoting *Fund for Animals*, 322 F.3d at 736 and *100Reporters*, 307 F.R.D. at 280).

The bottom line remains that as long as they have no official voice before this Court, Shapley and Ziegler have no opportunity to be heard, to explain the legal and factual bases authorizing their conduct, or to correct false or inaccurate claims made by either Plaintiff Hunter Biden or the IRS. Plaintiff Hunter Biden, the IRS, and components of the Justice Department on

whom Shapley and Ziegler blew the whistle appear aligned in a desire to punish them for their lawful, authorized, and protected disclosures. The Plaintiff has made no secret of his attempts to press the Department of Justice into investigating and prosecuting the Proposed Intervenors. And some elements of the Department of Justice certainly have an interest in retaliating against them whenever possible. These institutional conflicts of interest will clearly impact how the IRS will defend this action, which in turn directly impacts Shapley and Ziegler.

This situation is fundamentally unfair to Shapley and Ziegler. The Tax Division's representation of the IRS is inadequate and does not represent the interests of the Proposed Intervenors.

In fact, the IRS's lack of willingness to vigorously defend this action is already apparent based on the two partial motions to dismiss it has filed, which is what prompted this motion to intervene. Both partial motions failed to move to dismiss all counts and failed to raise clear, good-faith arguments for the total dismissal of Count I, as detailed in the Proposed Intervenors' motion to dismiss. (ECF Nos. 13, 17.) The IRS has also failed to consult the Proposed Intervenors in the defense of this action, even though they possess directly relevant information that could aid in the defense—but that may be inconsistent with the IRS's institutional interests unrelated to this particular lawsuit. There is no logical reason why the IRS has adopted this particular posture, other than to retaliate against Shapley and Ziegler. Thus, there can be no doubt that the IRS is not an adequate representative of the Proposed Intervenors' interests.

## II.   ALTERNATIVELY, THIS COURT SHOULD GRANT PERMISSIVE INTERVENTION.

### A.  There Are Common Questions of Law and Fact.

Rule 24(b) requires a proposed intervenor to "advance a 'claim or defense' that shares a common question with the claims of the original parties, with the apparent goal of disposing of

17

related controversies together." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998). As with other aspects of Rule 24, this "claim or defense" requirement "is not interpreted strictly so as to preclude permissive intervention," *Nuesse*, 385 F.2d at 704-05, and is even met where the *issues* presented overlap. *See 100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 286 (D.D.C. 2014) (finding that "similarities between the issues presented" by the intervenors and the Department of Justice showed a common question of law or fact).

Where, as here, there is an actual defense shared by the proposed intervenor and the defendant, Rule 24(b)(1)(B) is satisfied. The Proposed Intervenors seek to dismiss Count I of the Amended Complaint (in addition to the Privacy Act count) based on the plain text of Sections 6103(f)(5) and (f)(4)(A) of Title 26 permitting disclosures by whistleblowers, as well as the well-established "public record" exception to Section 6103's ban on disclosure of return or return information. *See Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 14 (D.D.C. 2019) ("That they share this defense in common with the Department is sufficient under Rule 24(b)(1)(B).") (citations omitted); *Elec. Priv. Info. Ctr. v. Fed. Trade Comm'n*, No. 18-942, 2019 WL 11307643, at *1 (D.D.C. Aug. 28, 2019) ("Facebook's defense overlaps with questions of law presented by this suit."). That the Defendant in this action is choosing not to raise this defense does not change the fact that this defense is available to it and the Proposed Intervenors.

### B. Allowing Intervention at this Early Stage Would Cause No Delay or Prejudice.

Lastly, for much the same reasons as to why this motion is timely, permitting intervention will not cause any delay or prejudice to a party in this action. This action is still in its earliest stages, before any dispositive orders have been entered or any discovery exchanged. The Proposed Intervenors seek to intervene for the purpose of presenting additional, essential, and different legal arguments supporting dismissal than those raised by the IRS. The Proposed Intervenors do not

seek to assert any counterclaims or cross-claims that would complicate or prolong the litigation. Nor does Section 7431 permit Plaintiff Hunter Biden to assert any new claims under Section 7431 against the Proposed Intervenors. *See Philip Morris*, 2005 WL 1830815, at *5 (D.D.C. July 22, 2005) (finding no delay or prejudice where "the only purpose of this intervention is to make additional and different legal arguments to the Court"); *Liu v. Mayorkas*, No. 21-1725, 2022 WL 203432, at *3 (D.D.C. Jan. 24, 2022). The Proposed Intervenors have clearly established grounds for permissive intervention under Rule 24(b).[5]

## **CONCLUSION**

For the foregoing reasons, this Court should grant the Proposed Intervenors' Motion to Intervene as of right or, in the alternative, permissively.

Dated: May 17, 2024                                   Respectfully submitted,

                                                      /s/ *Mark D. Lytle*
                                                      Mark D. Lytle (D.C. Bar No. 1765292)

                                                      **NIXON PEABODY LLP**
                                                      Mark D. Lytle (*pro hac vice*)
                                                      799 9th Street NW, Suite 500
                                                      Washington, DC 20001
                                                      (202) 585-8000
                                                      mlytle@nixonpeabody.com

---

[5] It is unsettled in the D.C. Circuit whether standing is required for permissive intervention as well as intervention as of right. *See In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165*, 704 F.3d 972, 980 (D.C. Cir. 2013) ("It remains, however, an open question in this circuit whether Article III standing is required for permissive intervention."); *Waterkeeper*, 330 F.R.D. at 10 (suggesting in *dicta* that standing is not required for permissive intervention under Rule 24(b)). However, even if standing were required for permissive intervention, the Proposed Intervenors have established standing for the same reasons as discussed *supra*. Moreover, for permissive intervention, a proposed intervenor must also show an independent basis for subject matter jurisdiction. *Liu*, 2022 WL 203432, at *3 (D.D.C. Jan. 24, 2022). Here, because subject matter jurisdiction is premised on federal question jurisdiction, this Court has independent jurisdiction over the Proposed Intervenors' motion to dismiss. *Id.*

/s/ *Tristan L. Leavitt*
Tristan L. Leavitt (Id. Bar No. 8801)

**EMPOWER OVERSIGHT**
Tristan L. Leavitt (*pro hac vice*)
11116 Fairfax Boulevard, Suite 500 #1076
Fairfax, VA 22030
tl@empowr.us

/s/ *Justin K. Gelfand*
Justin K. Gelfand (D.C. Bar No. 90023996)

/s/ *Gregory P. Bailey*
Gregory P. Bailey (D.C. Bar No. 1781925)

**MARGULIS GELFAND, LLC**
Justin K. Gelfand (*pro hac vice*)
Gregory P. Bailey
7700 Bonhomme Avenue, Suite 750
St. Louis, MO 63105
(314) 390-0234
justin@margulisgelfand.com
greg@margulisgelfand.com

*Attorneys for Gary Shapley*


/s/ *John P. Rowley III*
John P. Rowley III (D.C. Bar No. 392629)

**SECIL LAW PLLC**
John P. Rowley III
1701 Pennsylvania Ave., N.W., Suite 200
Washington, D.C. 20006
(202) 642-0679
jrowley@secillaw.com

*Attorney for Joseph Ziegler*

20

## **CERTIFICATE OF SERVICE**

I certify that on May 17, 2024, I filed the foregoing document with the Clerk of Court using

the CM/ECF electronic filing system, which will send notification to all counsel of record.

/s/ *Gregory P. Bailey*
Gregory P. Bailey (D.C. Bar No. 1781925)

**MARGULIS GELFAND, LLC**
Gregory P. Bailey
7700 Bonhomme Avenue, Suite 750
St. Louis, MO 63105
(314) 390-0234
(314) 485-2264
greg@margulisgelfand.com