**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:23-cv-02711 |
| UNITED STATES INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

FACTUAL BACKGROUND ..................................................................................... 3

LEGAL STANDARD ................................................................................................ 6

ARGUMENT ............................................................................................................. 7

I.   THE AMENDED COMPLAINT FAILS TO ALLEGE A VIOLATION OF
     SECTION 6103 BASED ON INFORMATION DISCLOSED BY SHAPLEY
     AND ZIEGLER TO THEIR LEGAL COUNSEL OR SUBSEQUENTLY TO
     CONGRESS, OR BASED ON CONGRESS'S SUBSEQUENT RELEASE OF
     THE INFORMATION TO THE PUBLIC. .......................................................... 7

   A.   The Whistleblower Protections of 26 U.S.C. §§ 6103(f)(4)-(5). .................... 8

   B.   The Amended Complaint Fails to State a Claim Based on Information Disclosed
        Pursuant to 26 U.S.C. § 6103(f)(5). ............................................................... 9

   C.   The Amended Complaint Fails to State a Claim Based on Information Disclosed
        Pursuant to 26 U.S.C. § 6103(f)(4)(A). .........................................................11

II.  THE 16 ALLEGED DISCLOSURES IN THE AMENDED COMPLAINT FAIL
     TO ADEQUATELY PLEAD A VIOLATION OF SECTION 6103 ................................ 12

   A.   The Amended Complaint Fails to State a Claim Because, Prior to the Committee
        on Ways and Means' Release, Shapley and His Counsel Disclosed No Taxpayer
        Information, and Demonstrably False Allegations Otherwise Undermine
        Plaintiff's Claim. ........................................................................................... 13

   B.   The Amended Complaint Fails to State a Claim Because, After the Committee on Ways
        and Means' Lawful Public Release, Shapley, Ziegler, and their Counsel
        Only Discussed with the Media Information Already in the Public Domain. ............... 16

      1.   Lawful Disclosures of Tax Information Create a Public Domain Exception to
           Section 6103. ........................................................................................... 17

         a.   The Legislative History of Section 6103 Underscores That Congress
              Intended for Some Situations to Warrant Disclosure of Return Information. ........ 18

         b.   A Majority of the Circuit Courts of Appeals Embrace the Public Domain
              Exception to Section 6103. ................................................................... 20

         c.   The D.C. Circuit Has Embraced the Public Domain Exception in the Context
              of Grand Jury Secrecy—Making it Likely to Follow the Same Principle in
              Section 6103 ....................................................................................... 23

         d.   IRS Policy on the Public Domain Exception to Section 6103 is Consistent
              with the Majority of Circuit Courts of Appeals. ....................................... 25

2.   Congress, the IRS, and the Public All Understood the Information Released by the Committee on Ways and Means Was No Longer Protected by Section 6103. ....................................................................................................... 26

   a.   Congress Viewed Shapley's and Ziegler's Disclosures as Losing Section 6103 Protection After Being Voted Out to the Public Domain. ............................ 26

   b.   The IRS Viewed Shapley's and Ziegler's Disclosures as Losing Section 6103 Protection After Being Voted Out to the Public Domain. ............................ 27

   c.   Alleged Disclosures 6 through 16 Contain No Confidential Information Protected by Section 6103. ....................................................................................... 28

   d.   If Not Prohibited by Section 6103 or Other Restrictions, the First Amendment and the Whistleblower Protection Act Protect a Government Employee's Right to Discuss Facts of Concern. ....................................................................... 31

III.   BECAUSE THE STATEMENTS OF SHAPLEY AND ZIEGLER WERE LAWFUL AND COMPLIED WITH SECTION 6103, PLAINTIFF'S ALLEGATION RELATED TO THE PRIVACY ACT (5 U.S.C. § 552a(b)) MUST ALSO BE DISMISSED. ............................................................................. 32

CONCLUSION ............................................................................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta Orellana v. CropLife Int'l,*
   711 F. Supp. 2d 81 (D.D.C. 2010) .......................................................................7, 29

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................................6

*Bancroft Global Development v. United States,*
   330 F. Supp. 3d 82 (D.D.C. 2018) ...........................................................................25

*Barnes v. United States,*
   17 F.3d 1428 (3d Cir. 1994)......................................................................................21

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................................6

*Boritz v. United States,*
   685 F. Supp. 2d 113 (D.D.C. 2010) ...........................................................................6

*Chambers v. Dep't of Interior,*
   602 F.3d 1370 (Fed. Cir. 2010).................................................................................32

*Comm. On Ways and Means v. Dep't of the Treasury,*
   575 F.Supp.3d 53 (D.D.C. 2021) ..............................................................................12

*Dep't of Homeland Sec. v. MacLean,*
   135 S.Ct. 913 (2015).................................................................................................32

*Deripaska v. Associated Press,*
   282 F. Supp. 3d 133 (D.D.C. 2017) ..........................................................................14

*E.E.O.C. v. St. Francis Xavier Parochial Sch.,*
   117 F.3d 621 (D.C. Cir. 1997) ...................................................................................6

*Est. of Yaeger v. Comm'r,*
   92 T.C. 180 (1989)..............................................................................................13, 20

*Farah v. Esquire Magazine,*
   736 F.3d 528 (D.C. Cir. 2013) .................................................................................14

*Garcetti v. Ceballos,*
   547 U.S. 410 (2006)..................................................................................................31

*Glass v. United States*,
   480 F. Supp. 2d 162 (D.D.C. 2007) ...........................................................................2, 24

*In Re Grand Jury Subpoena, Judith Miller*,
   493 F.3d 152 (D.C. Cir. 2007) ...................................................................................2, 23

*Huffman v. Office of Personnel Mgmt.*,
   263 F.3d 1341 (Fed. Cir. 2001) ......................................................................................32

*Johnson v. Sawyer*,
   120 F.3d 1307 (5th Cir. 1997) .........................................................................................21

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004) .....................................................................................7, 29

*Koerner v. United States*,
   471 F. Supp. 2d 125 (D.D.C. 2007) ...........................................................................2, 24

*Kowal v. MCI Commc'ns Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) .........................................................................................7

*Lampert v. United States*,
   854 F.2d 335 (9th Cir. 1988) ...........................................................................13, 20, 23

*Langeman v. Garland*,
   88 F.4th 289 (D.C. Cir. 2023) ..........................................................................................6

*Mallas v. United States*,
   993 F.2d 1111 (4th Cir. 1993) ........................................................................................22

*Marshall Cnty. Health Care Auth. v. Shalala*,
   988 F.2d 1221 (D.C. Cir. 1993) .......................................................................................7

*Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*,
   791 F.2d 183 (D.C. Cir. 1986) .........................................................................................8

*Ning Ye v. Holder*,
   644 F. Supp. 2d 112 (D.D.C. 2009) .............................................................................7, 29

*In re North*,
   16 F.3d 1234 (D.C. Cir. 1994) .......................................................................................23

*Noske v. United States*,
   No. 92-2761, 1993 WL 264531 (8th Cir. July 15, 1993) ..............................................21

*Pickering v. Board of Education*,
   391 U.S. 563 (1968) .......................................................................................................31

*Pollinger v. United States*,
    539 F. Supp. 2d 242 (D.D.C. 2008) ...................................................................2, 25

*Rice v. United States*,
    166 F.3d 1088 (10th Cir. 1999) .............................................................................22

*Rowley v. United States*,
    76 F.3d 796 (6th Cir. 1996) .....................................................................13, 21, 26

*Scahill v. D.C.*,
    909 F.3d 1177 (D.C. Cir. 2018) .........................................................................7, 29

*Tax Analysts v. I.R.S.*,
    97 F. Supp. 2d 13 (D.D.C. 2000), *aff'd*, 294 F.3d 71 (D.C. Cir. 2002).............2, 25

*Thomas v. United States*,
    890 F.2d 18 (7th Cir. 1989) ....................................................................................21

*United States v. Littlejohn*,
    Crim. No. 1:23-cr-0343 (D.C.D.) ..........................................................................17

*United States v. Robert Hunter Biden*,
    No. 23-mj-00274-MN (D. Del. July 31, 2023) ...............................................11, 12

*Venen v. United States*,
    38 F.3d 100 (3d Cir. 1994).....................................................................................18

*William E. Schrambling Accountacy Corp. v. United States*,
    937 F.2d 1485 (9th Cir. 1991) ...............................................................................20

**Rules/Statutes**

5 U.S.C. § 522(a) ..........................................................................................................6

5 U.S.C. § 2302(b)(8)(C) ..................................................................................4, 31, 32

26 U.S.C. § 6103 .................................................................................................*passim*

26 U.S.C. § 7431 ......................................................................................................3, 5

Cal. Gov't Code § 6253 (West Supp. 1990) ...............................................................21

Fed. R. Civ. P. 1 ............................................................................................................1

Fed. R. Civ. P. 12(b)(6)......................................................................................*passim*

Fed. R. Crim. P. 6(e) ...................................................................................................23

Fed. R. Evid. 201 .....................................................................................................8, 14

U.S. House of Representatives Rule XI.2(k)(7) ............................................................12

**Legislative Materials**

*Hearings Before the S. Comm. on Fin.*, 105th Cong. (1997)..........................................8, 9

H.R. Rep. No. 105-599 (1998).........................................................................................9

S.Rep. No. 94–938, 94th Cong., 2d Sess. 317 (1976), *reprinted in* 1976
    U.S.C.C.A.N. 3746 ...................................................................................................18

S. Rep. No. 105-174 (1998).............................................................................................9

S. Rep. No. 114-119 (2015)............................................................................................20

**Other Authorities**

Adam Goldman, *et al.*, *Hunter Biden Discloses He Is Focus of Federal Tax
    Inquiry*, N.Y. Times (Dec. 9, 2020) ........................................................................3

Brooke Singman, *IRS whistleblower is 'not a political person,' has documents to
    support Hunter Biden allegations: attorney*, Fox News (Apr. 20, 2023) ...............14

C-SPAN (June 22, 2023), https://www.c-span.org/video/?528915-101/rep-jason-
    smith-news-conference-hunter-biden-investigation ...............................................26

C-SPAN (Sept. 27, 2023), https://www.c-span.org/video/?530771-1/house-ways-
    means-committee-democrats-irs-whistleblowers-evidence......................................26

CBS News, *Hunter Biden addresses laptop reports, ongoing federal investigation
    into his taxes* (Apr. 5, 2021), https://www.cbsnews.com/video/hunter-biden-
    addresses-laptop-reports-ongoing-federal-investigation-into-his-taxes ...................3

*Congress needs 'additional investigation' into Biden family business dealings:
    Gary Shapley* (Aug. 1, 2023),
    https://www.foxnews.com/video/6332236977112 ...................................................30

Congressional Research Service, *Congressional Access to the President's Federal
    Tax Returns* (Mar. 15, 2019), *available at*
    https://crsreports.congress.gov/product/pdf/LSB/LSB10275 ..................................19

H. Comm. on Ways and Means, Interview of [Redacted] (June 1,
    2023)https://waysandmeans.house.gov/wp-
    content/uploads/2023/06/Whistleblower-2-Transcript_Redacted.pdf;....................30

H. Comm. on Ways and Means, "Meeting on Documents Protected Under
    Internal Revenue Code Section 6103" (June 22, 2023), *available at*
    https://waysandmeans.house.gov/event/meeting-on-documents-protected-
    under-internal-revenue-code-section-6103/..............................................................11

H. Comm. on Ways and Means, Interview of Darrell Waldon (Sept. 8, 2023), *available at* https://gop-waysandmeans.house.gov/wp-content/uploads/2024/03/HWM251550_Final_Redacted_Waldon-with-Exhibits.pdf;...................................................................................................27

H. Comm. on Ways and Means, Interview of Gary A. Shapley, Jr. (May 26, 2023), https://waysandmeans.house.gov/wp-content/uploads/2023/06/Whistleblower-1-Transcript_Redacted.pdf....................................30

H. Comm. on Ways and Means, Interview of Michael Batdorf (Sept. 12, 2023), *available at* https://gop-waysandmeans.house.gov/wp-content/uploads/2024/03/HWM255550_Final_Redacted_Batdorf-with-Exhibits.pdf....................................................................................................27

*Hearing With IRS Whistleblowers About the Biden Criminal Investigation Before the H. Comm. on Oversight and Accountability*, 118th Cong. 52 (July 19, 2023) .....................................................................................................27

Joint Committee on Taxation, *Background Regarding the Confidentiality and Disclosure of Federal Tax Returns* (Feb. 4, 2019), *available at* https://www.jct.gov/getattachment/4c176272-a1d4-468e-ba68-1c1c51a11d61/x-3-19-5159.pdf...........................................................................19

Ltr. from Mark D. Lytle to the Hon. Ron Wyden, et al. (Apr. 19, 2023), *available at* https://empowr.us/wp-content/uploads/2024/04/2023-04-19-Letter-to-Congress.pdf ............................................................................................4

Matt Zapotosky, et al., *Hunter Biden Confirms He Is Under Federal Investigation*, Wash. Post (Dec. 9, 2020)...............................................................3

*NBC News, April 20, 2023*, https://www.nbcnews.com/politics/politics-news/irs-agent-wants-whistleblower-protections-discuss-hunter-biden-probe-rcna80564....................15

Press Release, H. Comm. on Ways and Means, Ways and Means Committee Refers Lois Lerner to Department of Justice for Criminal Prosecution (Apr. 9, 2014), https://waysandmeans.house.gov/ways-and-means-committee-refers-lois-lerner-to-department-of-justice-for-criminal-prosecution ...............................19

Press Release, S. Comm. on Fin., Finance Committee Releases Bipartisan IRS Report (Aug. 5, 2015), https://www.finance.senate.gov/release/finance-committee-releases-bipartisan-irs-report ..........................................................20

Special Report with Brett Baier, April 20, 2023, https://www.foxnews.com/video/6325470127112 ...................................................15

Transcripts, The Lead with Jake Tapper, https://transcripts.cnn.com/show/cg/date/2023-07-20/segment/02...........................29

Intervenors Internal Revenue Service ("IRS") Criminal Investigations ("IRS-CI") Supervisory Special Agent Gary Shapley and IRS-CI Special Agent Joseph Ziegler, by and through their respective undersigned counsel, respectfully move this Court to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This Court's standing Rule in Civil Cases and the Federal Rules of Civil Procedure command that "[i]t is the responsibility of the parties, counsel, and the Court to 'secure the just, speedy, and inexpensive determination of every action and proceeding' in federal court." ECF No. 6; Fed. R. Civ. P. 1. To date, no party to this litigation has yet moved to dismiss the Amended Complaint filed by the Plaintiff in its entirety. The parties are clearly aware of 26 U.S.C. § 6103(f)—the provision of federal law authorizing whistleblowers to disclose tax return and return information related to "misconduct, maladministration, or taxpayer abuse" to certain specified committees of Congress. Yet, the Amended Complaint fails to address this glaring absence in the legal basis for Plaintiff Hunter Biden's claims.

Federal law expressly authorizes disclosures of return and return information to the U.S. House Committee on Ways and Means and its authorized agents (Shapley's and Ziegler's Counsel). Thus, as set out *infra*, there was no violation of Section 6103 based on Shapley's and Ziegler's disclosures to their legal counsel ("Counsel"), their subsequent disclosures to the Committee on Ways and Means, or the Committee on Ways and Means' subsequent decision to release the information to the public on its congressional website and in the Congressional Record.

The other "disclosures" about which Plaintiff Hunter Biden complains are not disclosures at all but merely: (1) communications, which contained no return or return information covered

1

by Section 6103, about potential future whistleblower disclosures, or (2) discussion in the media by Shapley, Ziegler, and their Counsel of information already lawfully placed in the public domain and widely disseminated by a Committee of the U.S. House of Representatives pursuant to its constitutional and statutory authorities.

The D.C. Circuit has held that previously secret grand jury information lawfully placed in the public domain loses its "character as 6(e) material." *See In Re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154-55 (D.C. Cir. 2007) ("We unseal the concurring opinion and the ex parte affidavits, however, only to the extent that they have been previously revealed. Grand jury material not yet publicly disclosed will remain redacted."). This same principle applies to the confidentiality provisions of Section 6103, as a majority of Circuits have recognized a public domain exception. The majority of decisions from the U.S. District Court for the District of Columbia addressing the public domain exception to Section 6103 have also recognized it. *See Glass v. United States*, 480 F. Supp. 2d 162, 166 (D.D.C. 2007); *Koerner v. United States*, 471 F. Supp. 2d 125, 128 (D.D.C. 2007); *Pollinger v. United States*, 539 F. Supp. 2d 242, 253 (D.D.C. 2008); *Tax Analysts v. I.R.S.*, 97 F. Supp. 2d 13, 19 (D.D.C. 2000), *aff'd*, 294 F.3d 71 (D.C. Cir. 2002).

Shapley and Ziegler—both seasoned IRS-CI special agents—engaged in protected whistleblowing conduct in exposing the preferential treatment Plaintiff Hunter Biden received from the U.S. Department of Justice ("DOJ"), the U.S. Department of Justice Tax Division ("DOJ Tax"), the Delaware U.S. Attorney's Office, and the IRS. In his Amended Complaint, Plaintiff Hunter Biden wrongly alleged that Shapley and Ziegler violated the tax secrecy and federal privacy statutes. Because their whistleblower activities were legal and authorized by statute, because they are deserving of the whistleblower protections built into federal law to

ensure no person is above the law, and because Plaintiff Hunter Biden fails to state a viable

claim, this Court should dismiss the Amended Complaint in its entirety pursuant to Federal Rule

of Civil Procedure 12(b)(6).

## **FACTUAL BACKGROUND**[1]

Plaintiff Hunter Biden alleges his "confidential return information" was improperly

disclosed in violation of 26 U.S.C. § 6103 by the IRS through statements made by Shapley,

Ziegler and their Counsel to the media in 2023. Section 7431 provides the civil remedy for an

improper disclosure under Section 6103.

Plaintiff Hunter Biden has been under investigation by the IRS since 2018, a fact which

he has personally publicized since 2020.[2] Shapley and Ziegler are two IRS-CI special agents

who worked on the Hunter Biden criminal tax investigation.

Shapley and Ziegler made a series of legally protected whistleblower disclosures about

how DOJ and the IRS improperly deviated from normal investigative protocol due to politics,

failed to mitigate conflicts of interest, and misled the public to conceal the conflicts through false

testimony to Congress. They first directed their protected disclosures internally to IRS leadership

and subsequently blew the whistle to the DOJ Inspector General and the Treasury Department

Inspector General for Tax Administration. Subsequently, they made the same protected

whistleblower disclosures to the committees in Congress authorized by statute to receive such

---

[1] The facts recited here are drawn from the Amended Complaint. (ECF No. 15.) Shapley and Ziegler deny all allegations of wrongdoing and reserve all rights concerning denying specific allegations in the Amended Complaint if or when such responses are procedurally required.

[2] *See, e.g.*, Adam Goldman, *et al.*, *Hunter Biden Discloses He Is Focus of Federal Tax Inquiry*, N.Y. Times (Dec. 9, 2020), https://www.nytimes.com/2020/12/09/us/politics/hunter-biden-tax-investigation.html; Matt Zapotosky, *et al.*, *Hunter Biden Confirms He Is Under Federal Investigation*, Wash. Post (Dec. 9, 2020), https://www.washingtonpost.com/national-security/hunter-biden-under-federal-investigation/2020/12/09/3b7361be-3a64-11eb-9276-ae0ca72729be_story.html; CBS News, *Hunter Biden addresses laptop reports, ongoing federal investigation into his taxes* (Apr. 5, 2021), https://www.cbsnews.com/video/hunter-biden-addresses-laptop-reports-ongoing-federal-investigation-into-his-taxes.

disclosures containing confidential return information: the House Committee on Ways and Means and the Senate Committee on Finance ("authorized tax committees"). Each also has a pending retaliation complaint with the Office of Special Counsel whistleblower reprisal unit.

The Amended Complaint references an April 19, 2023 letter from Shapley's Counsel to the bipartisan leadership of the authorized tax committees, judiciary committees, and the co-chairs of the Whistleblower Protection Caucus. The letter requested that the Members of Congress facilitate an opportunity for Shapley to make protected disclosures under 26 U.S.C. § 6103(f)(5) and 5 U.S.C. § 2302(b)(8)(C) and testify to the authorized tax committees. (Am. Compl. ¶ 21.) The letter contained no confidential return information and nothing suggesting that the proposed § 6103(f)(5) whistleblower disclosures would relate to Plaintiff Hunter Biden. While various media outlets alleged the letter related to the investigation of Plaintiff Hunter Biden (*id*.), the letter itself did not, nor did Shapley or his Counsel.[3] Moreover, Section 6103(a)(3) provides for no basis to allege that statements of Counsel violated the statute.

In late May and early June 2023, Shapley and Ziegler testified in closed-door sessions before the U.S. House Committee on Ways and Means pursuant to Section 6103(f)(5). (Am. Compl. ¶¶ 7, 27, 29.) Following their testimony, the Committee on Ways and Means submitted the hearing transcripts and exhibits to the full U.S. House of Representatives on June 22, 2023 and publicly posted the materials on its congressional website pursuant to 26 U.S.C. § 6103(f)(4)(A). (*Id*. ¶¶ 31, 32.). In July 2023, Shapley and Ziegler testified before the U.S. House Committee on Oversight and Accountability regarding their testimony before the Committee on Ways and Means, which had already been publicly released and widely

---

[3] Ltr. from Mark D. Lytle to the Hon. Ron Wyden, et al. (Apr. 19, 2023), *available at* https://empowr.us/wp-content/uploads/2024/04/2023-04-19-Letter-to-Congress.pdf.

4

disseminated. (*Id*. ¶¶ 20, 38.) The Amended Complaint does not allege this testimony or Congress's public disclosure of the testimony violated Section 6103. (*Id*. ¶ 54.)

Instead, Plaintiff Hunter Biden bases his Section 7431 claim on the April 19, 2023 letter from Shapley's Counsel to various members of Congress, and on statements to the media between April 19, 2023 and August 11, 2023. (*Id*.) Specifically, he alleges Shapley, Ziegler, and their Counsel violated Section 6103 by making the following disclosures ("Alleged Disclosures"):

- 1) Counsel's April 19, 2023 letter to various members of Congress (*id*. ¶¶ 21, 54);

- 2) Counsel's April 19, 2023 appearance on the podcast John Solomon Reports (*id*. ¶¶ 22-23, 54);

- 3) Counsel's April 19, 2023 appearance on CBS News (*id*. ¶¶ 24, 54);

- 4) Counsel's April 20, 2023 appearance on Fox News (*id*. ¶¶ 25, 54);

- 5) Shapley's May 24, 2023 appearance on CBS News (*id*. ¶¶ 26, 54);

- 6) Shapley's June 28, 2023 appearance on Fox News (*id*. ¶¶ 33-35, 54);

- 7) Shapley's June 28, 2023 appearance on CBS News (*id*. ¶¶ 36, 54);

- 8) Shapley's June 29, 2023 appearance on John Solomon Reports (*id*. ¶¶ 37, 54);

- 9) Ziegler's July 20, 2023 appearance on CNN (*id*. ¶¶ 39, 54);

- 10) Shapley's and Ziegler's July 20, 2023 appearance on the podcast The Megyn Kelly Show (*id*. ¶¶ 40, 54);

- 11) Counsel's July 21, 2023 appearance on John Solomon Reports (*id*. ¶¶ 41, 54);

- 12) Ziegler's July 24, 2023 appearance on John Solomon Reports (*id*. ¶¶ 42, 54);

- 13) Counsel's July 26, 2023 appearance on Fox News (*id*. ¶¶ 43, 54);

- 14) Counsel's July 31, 2023 appearance on Fox News (*id*. ¶¶ 44, 54);

- 15) Shapley's August 1, 2023 appearance on Fox News (*id.* ¶ 45); and

- 16) Shapley's August 11, 2023 appearance on CNN (*id.* ¶¶ 46, 54).

Based on these allegations, Plaintiff Hunter Biden asserts two causes of action under (1) Section 7431 and (2) the Privacy Act, 5 U.S.C. § 522(a). On February 27, 2024, the IRS filed a partial motion to dismiss the Amended Complaint. (ECF No. 17.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a Complaint should be dismissed if it "fails to state a claim upon which relief can be granted." In this context, a plaintiff's factual allegations must surpass "the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard requires a plaintiff to plead facts that show "more than a sheer possibility that a defendant has acted unlawfully" through allegations that are more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). This Court must therefore give no credit to "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements." *Id*. In considering the sufficiency of a complaint's allegations, this Court may consider "the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record." *Boritz v. United States*, 685 F. Supp. 2d 113, 117 (D.D.C. 2010) (citing *E.E.O.C. v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C. Cir. 1997)). This Court "may also consider documents attached to a motion to dismiss if they are referred to in the complaint, integral to the claim(s), and if their authenticity is undisputed." *Langeman v. Garland*, 88 F.4th 289, 292 (D.C. Cir. 2023) (internal citations omitted).

Moreover, this Court is not bound to accept a plaintiff's inferences if such inferences are not supported by the allegations. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). When a complaint's allegations directly contradict exhibits attached to the complaint, matters subject to judicial notice, or other allegations in the complaint, this Court is not obligated to accept such allegations as true. *Scahill v. D.C.*, 909 F.3d 1177, 1186 (D.C. Cir. 2018) (quoting *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004)); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 109 (D.D.C. 2010) (quoting *Ning Ye v. Holder,* 644 F.Supp.2d 112, 116 (D.D.C. 2009)) ("[W]here some allegations in the complaint contradict other allegations, the conflicting allegations become 'naked assertions devoid of further factual enhancement . . . [, which therefore] cannot be presumed true.'").

Where an "entire case on review is a question of law, and only a question of law," the Court may "fully resolve any purely legal question on a motion to dismiss[.]" *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). As such, "there is no inherent barrier to reaching the merits at the 12(b)(6) stage." *Id*. (citations omitted). In such cases, "the sufficiency of the complaint is the question on the merits, and there is no real distinction in this context between the question presented on a 12(b)(6) motion and a motion for summary judgment." *Id*.

## **ARGUMENT**

I.    **THE AMENDED COMPLAINT FAILS TO ALLEGE A VIOLATION OF SECTION 6103 BASED ON INFORMATION DISCLOSED BY SHAPLEY AND ZIEGLER TO THEIR LEGAL COUNSEL OR SUBSEQUENTLY TO CONGRESS, OR BASED ON CONGRESS'S SUBSEQUENT RELEASE OF THE INFORMATION TO THE PUBLIC.**

The Amended Complaint does not allege Shapley or Ziegler violated Section 6103 by disclosing return information to their Counsel and then to the U.S. House Committee on Ways

and Means pursuant to the statutory protections of 26 U.S.C. § 6103(f)(5)—nor can it, because those actions were unambiguously consistent with federal law. Nor does the Amended Complaint allege that the Committee on Ways and Means violated Section 6103 when it voted to submit its findings to the full U.S. House of Representatives and publicly posted the transcripts and exhibits received from Shapley and Ziegler on its congressional website pursuant to 26 U.S.C. § 6103(f)(4)(A).

Indeed, based on Plaintiff Hunter Biden's allegations in the Amended Complaint, the documents incorporated by reference, and sources of which this Court can take judicial notice pursuant to Fed. R. Evid. 201, neither Shapley, Ziegler, nor the U.S. House Committee on Ways and Means violated Section 6103 by making these protected disclosures.

### A.  The Whistleblower Protections of 26 U.S.C. §§ 6103(f)(4)-(5).

Tax returns and return information are generally confidential. 26 U.S.C. § 6103(a). "Absolute confidentiality, however, is neither attainable nor desirable." *Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 791 F.2d 183, 184 (D.C. Cir. 1986). "Competing concerns, as the large number of exceptions enumerated in § 6103 attests, impel some compromise of the taxpayer's privacy." *Id*.

One such exception concerns whistleblowers. Section 6103(f)(5) affirmatively authorizes whistleblowers to disclose such information to authorized tax committees in Congress. 26 U.S.C. §§ 6103(f)(1), (5). And for good reason. Congress enacted whistleblower protections in 1998 in response to the September 1997 Senate Committee on Finance hearings that revealed retaliatory treatment of whistleblowers. *See Practices and Procedures of the Internal Revenue Service: Hearings Before the S. Comm. on Fin.*, 105th Cong. (1997). In its bill report, the Committee on Finance emphasized the importance for Congress "to have the opportunity to receive tax return

8

information directly from whistleblowers." S. Rep. No. 105-174, at 105 (1998). While the initial

whistleblower provisions covered only disclosure of IRS employee or taxpayer abuse, Congress

expanded the provision to cover disclosures of "possible misconduct, maladministration, or

taxpayer abuse." *IRS Oversight: Hearings Before the S. Comm. on Fin.*, 105th Cong. (1998);

H.R. Rep. No. 105-599, at 309 (1998) (Conf. Rep.).

### B. The Amended Complaint Fails to State a Claim Based on Information Disclosed Pursuant to 26 U.S.C. § 6103(f)(5).

Shapley and Ziegler made lawful, authorized, and protected disclosures to their Counsel

and to the Committee on Ways and Means strictly in accordance with Section 6103(f). Section

6103(f)(5) provides:

> Any person who otherwise has or had access to any return or return information
> under this section may disclose such return or return information to a committee
> referred to in paragraph (1) or any individual authorized to receive or inspect
> information under paragraph (4)(A) if such person believes such return or return
> information may relate to possible misconduct, maladministration, or taxpayer
> abuse.

26 U.S.C. § 6103(f)(5). Section 6103(f)(1) refers to the U.S. House Committee on Ways and

Means, the U.S. Senate Committee on Finance, and the Joint Committee on Taxation. 26 U.S.C.

§ 6103(f)(1). Section 6103(f)(4)(A) provides that these committees "have the authority, acting

directly, or by and through . . . examiners or agents . . . to inspect returns and return

information."

Before making disclosures to their Counsel or to the authorized tax committees, Shapley

and Ziegler sought and received explicit written authorization. Thus, out of an abundance of

caution and respect for tax confidentiality, they sought clarity from the authorized tax

committees about whether and how they could first discuss their potential congressional

disclosures with their Counsel. *See* 26 U.S.C. §§ 6103(f)(4) and (5). As such, the Amended

Complaint does not and cannot allege Shapley and Ziegler violated Section 6103 by disclosing information to their Counsel prior to their testimony before the Committee on Ways and Means.

In that same vein, Shapley's May 26, 2023 testimony before the Committee on Ways and Means was conducted lawfully, according to the requirements of Section 6103. By Plaintiff Hunter Biden's own admission, Shapley testified in a closed-door executive session before a committee authorized by Section 6103(f)(5) to hear the testimony, and the Committee emphasized the testimony was confidential and not to be disclosed outside of the session. (Am. Compl. ¶ 27.) The Amended Complaint does not and cannot allege Shapley violated Section 6103 through these disclosures to the Committee on Ways and Means. (Am. Compl. ¶¶ 27-28.)

Likewise, Ziegler's June 1, 2023 testimony before the Committee on Ways and Means was also conducted lawfully, according to the requirements of Section 6103. Again, by Plaintiff Hunter Biden's own admission, Ziegler testified in a closed-door executive session before a committee authorized by Section 6103(f)(5) to hear the testimony, and the Committee emphasized the testimony was confidential and not to be disclosed outside of the session. (Am. Compl. ¶ 29.) The Amended Complaint does not and cannot allege Ziegler violated Section 6103 through these disclosures to the Committee on Ways and Means. (Am. Compl. ¶¶ 29-30.)[4]

In fact, in an Opposition that Committee Chairman Jason Smith filed in response to Plaintiff Hunter Biden's motion in a related criminal case in the United States District Court for the District of Delaware, Chairman Smith correctly explained that Shapley and Ziegler were

---

[4] Shapley and Ziegler also testified before the Committee on Oversight and Accountability on July 19, 2023 regarding their prior testimony before the Committee on Ways and Means. (Am. Compl. ¶ 38.) Although the Amended Complaint fails to state a claim based on this testimony, it appears to suggest this testimony was improper because the Committee on Oversight and Accountability is not one of the authorized tax committees. (*Id.*) However, for the reasons addressed *infra*, that suggestion is legally incorrect. Shapley and Ziegler's testimony before the House Oversight Committee, provided in strict conformance with Chairman Comer's instructions, was limited to information and testimony that had been lawfully released to the public by the Committee on Ways and Means and was a matter of public record and widely disseminated.

statutorily authorized to present their evidence before the Committee on Ways and Means under Section 6103(f)(5). *United States v. Robert Hunter Biden*, No. 23-mj-00274-MN at 9-11 (D. Del. July 31, 2023) [ECF No. 22-1]. Thus, Plaintiff Hunter Biden cannot base any claim for a violation of Section 6103 on Shapley's or Ziegler's disclosures to their Counsel or to the Committee on Ways and Means.

**C.  The Amended Complaint Fails to State a Claim Based on Information Disclosed Pursuant to 26 U.S.C. § 6103(f)(4)(A).**

Similarly, the Committee on Ways and Means made lawful disclosures strictly according to the provisions of Section 6103(f) when it released the information to the public. Section 6103(f)(4)(A) provides:

> Any committee described in paragraph (1) . . . shall have the authority, acting directly, or by or through such examiners or agents as the chairman of such committee or such chief of staff may designate or appoint, to inspect returns and return information at such time and in such manner as may be determined by such chairman or chief of staff. Any return or return information obtained by or on behalf of such committee pursuant to the provisions of this subsection may be submitted by the committee to the Senate or the House of Representatives, or to both.

After hearing testimony from Shapley and Ziegler, the Committee on Ways and Means debated whether to release the information to the full House of Representatives and to the public pursuant to Section 6103(f)(4)(A). On June 22, 2023, the Committee voted to submit the information to the full House and post the transcripts on its website.[5] (Am. Compl. ¶¶ 31-32.)

To be clear, the Amended Complaint does not allege the Committee violated Section 6103 by submitting the transcripts and exhibits to the full House or by publicly posting such information on its congressional website. (*Id*.) Nor can it, given that the release of this

---

[5] *See* H. Comm. on Ways and Means, "Meeting on Documents Protected Under Internal Revenue Code Section 6103" (June 22, 2023), *available at* https://waysandmeans.house.gov/event/meeting-on-documents-protected-under-internal-revenue-code-section-6103/.

information strictly followed the provisions of Section 6103(f)(4)(A). Furthermore, the Committee on Ways and Means was authorized to release the information to the full House of Representatives and to the public pursuant to U.S. House of Representatives Rule XI.2(k)(7). *United States v. Robert Hunter Biden*, No. 23-mj-00274-MN at 10-11. As such, Plaintiff Hunter Biden cannot base any alleged violation of Section 6103 on the Committee's release of the information to the public.[6]

Accordingly, there was no violation of Section 6103 based on Shapley's or Ziegler's disclosures to their Counsel; their subsequent disclosures to the Committee on Ways and Means; or the Committee on Ways and Means' release of the information to the public on its congressional website. Thus, any viable claim can only be based on public statements.[7]

## II.   THE 16 ALLEGED DISCLOSURES IN THE AMENDED COMPLAINT FAIL TO ADEQUATELY PLEAD A VIOLATION OF SECTION 6103.

Plaintiff Hunter Biden claims 16 alleged disclosures from Shapley, Ziegler, and their Counsel violated Section 6103. However, *none of those allegations* should survive dismissal. Although Alleged Disclosures 1 through 5 occurred prior to the House Committee on Ways and Means' lawful release of Plaintiff's taxpayer information, none contained Hunter Biden's taxpayer information. Thus, even accepting as true the facts alleged, Plaintiff Hunter Biden fails to plead a violation of Section 6103 for Alleged Disclosures 1 through 5.

Alleged Disclosures 6 through 16 are based on an inherently flawed premise: that it is a violation of Section 6103 to discuss with the media information already widely disseminated in

---

[6] *See Comm. On Ways and Means v. Dep't of the Treasury*, 575 F.Supp.3d 53, 84 (D.D.C. 2021)("It might not be right or wise to publish the returns, but it is the Chairman's right to do so. Congress has granted him this extraordinary power, and courts are loath to second guess congressional motives or duly enacted statutes.")

[7] Indeed, Hunter Biden appears to recognize this issue, as Count I of the Amended Complaint cites only the April 19, 2023 letter and statements to the media in support of his claimed violation of Section 6103. (Am. Compl. ¶ 54.)

the public domain after having been lawfully disclosed pursuant to 26 U.S.C. § 6103(f). This falls squarely within the public record exception recognized by the vast majority of federal circuit courts. *See, e.g., Lampert v. United States*, 854 F.2d 335, 338 (9th Cir. 1988) (In enacting Section 6103, "Congress sought to prohibit only the disclosure of *confidential* tax return information," thus, "[o]nce tax return information is made a part of the public domain [during judicial proceedings], the taxpayer may no longer claim a right of privacy in that information") (emphasis added); *Est. of Yaeger v. Comm'r*, 92 T.C. 180, 184–85 (1989) (citing *Lampert*, 854 F.2d at 337) (United States Tax Court explained, "[o]rdinarily, once the information has been revealed in a courtroom and becomes part of the record it can no longer be protected by section 6103"); *Rowley v. United States*, 76 F.3d 796, 801 (6th Cir. 1996) (disclosure of information in publicly-filed tax lien is no longer subject to Section 6103 protections).

The taxpayer information in Alleged Disclosures 6 through 16 had already been lawfully released to the public by the Committee on Ways and Means on June 22, 2023 pursuant to Section 6103(f)(4)(A). Thus, even accepting as true the facts alleged in the Amended Complaint, Plaintiff Hunter Biden fails to plead a violation of Section 6103 for Alleged Disclosures 6 through 16—requiring dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

A. **The Amended Complaint Fails to State a Claim Because, Prior to the Committee on Ways and Means' Release, Shapley and His Counsel Disclosed No Taxpayer Information, and Demonstrably False Allegations Otherwise Undermine Plaintiff's Claim.**

Alleged Disclosures 1 through 5 pre-date the Committee on Ways and Means' vote to publicly release Plaintiff Hunter Biden's tax information. (*See* Am. Compl. ¶¶ 21-26.) But not a single one identifies the subject of the IRS's investigation. In fact, comparing Alleged Disclosures 1 through 5 to the definition of return information, it is clear they do not constitute any type of information Section 6103 classifies as confidential.

Alleged Disclosure 1 (the April 19, 2023 letter to members of Congress) does not identify the subject of the investigation, where the investigation was being conducted, whose sworn testimony the whistleblowers believed will be contradicted, which public officials had conflicts of interest, or which political considerations allegedly influenced the investigation. (Am. Compl. ¶ 21). Plainly, it contains no information covered by Section 6103.

Because Plaintiff Hunter Biden cannot point to any portion of the letter in violation of Section 6103, the Amended Complaint adds the innuendo that "[v]arious media outlets, including NBC News, CBS News, and the Wall Street Journal, immediately reported that the letter was referring to the investigation of Mr. Biden." (*Id*.). Yet, the Amended Complaint not surprisingly does not allege that Shapley, Ziegler, or their Counsel disclosed the identity of the letter's subject to the media or anyone else. Nor could it in any credible fashion. In fact, Plaintiff Hunter Biden appears to hide from this Court key contrary facts in the public record: (1) Hunter Biden *himself* publicly disclosed, beginning on December 9, 2020 and at times thereafter, that he was under criminal investigation by the IRS (*See* Note 2, *Supra*), and (2) Plaintiff's counsel publicly confirmed that the April 19, 2023 letter related to his investigation in direct response to media speculation on that topic.[8] By contrast, Counsel for Shapley expressly refused to confirm the

---

[8] *See, e.g.,* Brooke Singman, *IRS whistleblower is 'not a political person,' has documents to support Hunter Biden allegations: attorney*, Fox News (Apr. 20, 2023), https://www.foxnews.com/politics/irs-whistleblower-not-political-person-has-documents-support-hunter-biden-allegations-attorney. ("It appears this IRS agent has committed a crime. It is a felony for an IRS agent to improperly disclose information about an ongoing tax investigation. . . Unfortunately, that is what has happened and is happening here in an attempt to harm my client.") This Court should take judicial notice of these facts pursuant to Fed. R. Evid. 201; *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (citing Fed. R. Evid. 201(b)) (cleaned up); *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140 (D.D.C. 2017) (taking judicial notice of allegedly defamatory article in deciding a Rule 12(b)(6) motion to dismiss).

subject of the IRS's investigation when asked by media about a statement made by Plaintiff's counsel attacking the whistleblower.[9]

Ignoring these facts, the Amended Complaint claims of Alleged Disclosure 2 that, in an interview with John Solomon Reports, Shapley's Counsel gave "any reasonable listener the impression" that Plaintiff Hunter Biden was the subject of the investigation before any information confirming his identity had been lawfully disclosed to the public. (Am. Compl. ¶ 23.)(*See* Note 9, *Supra*.). But the Amended Complaint does not allege Counsel revealed Plaintiff Hunter Biden's identity in this interview. Rather, as with the April 19, 2023 letter and the ensuing media coverage, the Amended Complaint asks this Court to infer such a fact based on nothing but mere speculation and conclusory assertion. Such assertions are also incredulous in light of both Hunter Biden's own December 2020 (and later) disclosures of the IRS criminal investigation into his own conduct. (Am. Compl. ¶ 22.)

Similarly, the Amended Complaint claims of Alleged Disclosure 4 that, in an interview with Bret Baier on Fox News, one of the Counsel "did not object or otherwise address" *Mr. Baier's characterization* of the investigation as being about Plaintiff Hunter Biden. (*Id*. ¶ 25) (emphasis added); *See also* Note 9 *supra*. But the Amended Complaint does not allege Counsel made this characterization, or that Mr. Baier received the information from Counsel. The Amended Complaint also alleges Mr. Baier speculated in the interview that the "senior political appointee" Shapley's Counsel referred to in the April 19, 2023 letter was the Attorney General, but the Amended Complaint does not allege Mr. Baier learned this fact from Shapley, Ziegler, or their Counsel. (*Id*.)

---

[9] *See NBC News, April 20, 2023*, https://www.nbcnews.com/politics/politics-news/irs-agent-wants-whistleblower-protections-discuss-hunter-biden-probe-rcna80564. *See also,* Special Report with Brett Baier, April 20, 2023, https://www.foxnews.com/video/6325470127112.

The Amended Complaint's claim of Alleged Disclosure 3 is that, in a CBS News interview, one of the Counsel "communicated the allegation of his client, then unnamed but understood to be Mr. Shapley, that 'typical steps that a law enforcement investigator would take were compromised because of political considerations.'" (*Id*. ¶ 24.) The Amended Complaint alleges Counsel stated that "the things [Mr. Shapley's] been through are very well documented in emails and other communications with the Department of Justice." (*Id*.) Neither of these statements contain any information identifying Plaintiff Hunter Biden or any of his return information and fall outside the scope of Section 6103's protections.

The Amended Complaint's claim of Alleged Disclosure 5 is that, in a CBS News interview, "Mr. Shapley stated that he became involved in the investigation in January 2020 and asserted that 'for a couple years, we'd been noticing these deviations in the investigative process. And I just couldn't, you know, fathom that DOJ might be acting unethically on this.'" (*Id*. ¶ 26.) The Amended Complaint states: "These statements publicly disclosed . . . whether the taxpayer's return was . . . [under] investigation by the DOJ." (*Id*.) But while Plaintiff Hunter Biden himself disclosed this fact on December 9, 2020, Alleged Disclosure 5 does not.

Thus, Alleged Disclosures 1 through 5 summarily fail. They plead no actual violation of Section 6013, and thus fail to state a claim upon which relief can be granted.

**B. The Amended Complaint Fails to State a Claim Because, After the Committee on Ways and Means' Lawful Public Release, Shapley, Ziegler, and their Counsel Only Discussed with the Media Information Already in the Public Domain.**

Alleged Disclosures 6 through 16 suffer from the fatal flaw that they are not disclosures at all. Once the information was lawfully released by the House Committee on Ways and Means pursuant to Section 6103(f)(4)(A) on June 22, 2023, it became a matter of public record no longer covered by the confidentiality provisions of Section 6103. As such, because these Alleged

Disclosures plead no violation of Section 6103, they too fail to state a claim upon which relief can be granted.

> 1. **Lawful Disclosures of Tax Information Create a Public Domain Exception to Section 6103.**

Plaintiff Hunter Biden improperly compares Shapley's and Ziegler's authorized, protected disclosures to unauthorized disclosures that led to the criminal conviction of Charles Littlejohn, an IRS contractor who stole protected tax information of thousands of taxpayers, including President Trump's tax returns, to make it available to the media. *United States v. Littlejohn*, Crim. No. 1:23-cr-0343 (D.C.D.). But Littlejohn's *unauthorized* disclosures were in an entirely different universe than Shapley's and Ziegler's *authorized* disclosures. Unlike Shapley and Ziegler, Littlejohn did not make protected disclosures to Congress under Section 6103(f)(5), nor did Littlejohn further disseminate information already publicly released by Congress pursuant to Section 6103(f)(4)(A).

The court presiding over Littlejohn's case described to him the Section 6103(f)(4)(A) process:

> Congress . . . in the Tax Reform Act of 1976 . . . established a comprehensive statutory scheme for disclosing tax records. And in general, tax records, *absent limited exceptions,* shall be confidential . . . . Now, the Committee on Ways and Means ultimately got permission to disclose—or it was found that they could, by the courts, disclose [President Trump's] tax returns, and . . . President Trump's tax returns were legally disclosed from his 2015 to 2020 tax returns. This is how we do things in this country. We have laws.

*United States v. Littlejohn*, Crim. No. 1:23-cr-0343, Tr. at 19:18-22 (D.D.C. Oct. 12, 2023). In doing so, the court recognized the legal channels for disclosure provided by Section 6103 to the Committee on Ways and Means, which in turn may decide whether to disclose such information to the public. Once return information has been lawfully placed in the public domain, legislative

history, federal circuit case law, and IRS protocols all make clear that the protections of Section

6103 no longer apply.

      **a.  The Legislative History of Section 6103 Underscores That Congress Intended for Some Situations to Warrant Disclosure of Return Information.**

Prior to the 1976 amendments to Section 6103, tax returns were public records, though

they could only be disclosed under special circumstances, and the IRS regularly provided

extensive tax return information to other government agencies. *See Venen v. United States*, 38

F.3d 100, 105 (3d Cir. 1994) (citations omitted). During the amendment process, lawmakers

expressed concern that those procedures "breache[d] a reasonable expectation of privacy on the

part of the American citizen with respect to such information." S.Rep. No. 94–938, 94th Cong.,

2d Sess. 317 (1976), *reprinted in* 1976 U.S.C.C.A.N. 3746. To restore confidence in the privacy

of taxpayer information, Congress revised Section 6103 to make tax return information

confidential "except in those limited situations delineated in the newly amended section 6103

where it was determined that disclosure was warranted." *Id*. In 1976, those limited situations that

provide a path for public disclosure of tax return information included Sections 6103(f)(4)(A).[10]

Congress clearly viewed this procedure as superseding the taxpayer's reasonable expectation of

privacy.

As a report prepared by the Staff of the Joint Committee on Taxation (one of the

authorized tax committees) for presentation to the House Committee on Ways and Means

(another of the authorized tax committees) noted of Section 6103(f):

> Any return or return information obtained by or on behalf of the Senate Committee
> on Finance or the House Committee on Ways and Means may be submitted by the
> committee to either the Senate or the House of Representatives, or to both. Such

---

[10] And, as described above, Congress amended the law in 1998 to add whistleblower disclosures under Section 6103(f)(5). In addition to what the IRS set out in its brief, the text of Section 6103(a)(3) plainly does not apply to the category (Section 6103(f)) of individuals into which "Representative A" or "Representative B" fall.  This requires dismissal on an entirely separate but equally compelling ground.

submission *does not require the Senate or House of Representatives to be sitting in closed executive session*.

Joint Committee on Taxation, *Background Regarding the Confidentiality and Disclosure of Federal Tax Returns* at 13 (Feb. 4, 2019), *available at*

https://www.jct.gov/getattachment/4c176272-a1d4-468e-ba68-1c1c51a11d61/x-3-19-5159.pdf

(emphasis added).

      Similarly, the Congressional Research Service further explained:

> As written, there do not appear to be any textual limitations in Section 6103(f) on the re-disclosure from the tax committees to the House or the Senate. Importantly, unlike the limitation applicable to the tax committees, the statute does not state that the full House or Senate be in closed executive session to receive tax return information from the tax committees. Additionally, while previous versions of Section 6103(f) had limited disclosures to the chambers to those that were either 'relevant or useful,' Congress amended the statute in 1976 to remove those qualifiers.

Congressional Research Service, *Congressional Access to the President's Federal Tax Returns* at 5 (Mar. 15, 2019), *available at* https://crsreports.congress.gov/product/pdf/LSB/LSB10275.

Thus, Congress has recognized that submissions to the full Senate or House of Representatives are properly public.

      For example, on April 19, 2014, the House Committee on Ways and Means sent DOJ a criminal referral letter for IRS Commissioner Lois Lerner that included return information of 51 taxpayers protected by Section 6103, and voted to submit the letter to the House of Representatives. The Committee posted that letter on its congressional website with a press release.[11]

---

[11] Press Release, H. Comm. on Ways and Means, Ways and Means Committee Refers Lois Lerner to Department of Justice for Criminal Prosecution (Apr. 9, 2014), https://waysandmeans.house.gov/ways-and-means-committee-refers-lois-lerner-to-department-of-justice-for-criminal-prosecution.

Similarly, on August 5, 2015, the Senate Committee on Finance voted to submit to the

Senate its report of an investigation into the IRS. The report stated:

> In preparing this report of the investigation, the Finance Committee has decided, after careful consideration and after consultation with the Senate Legal Counsel's office, to include limited taxpayer information available to the Senate and the public, by making a formal submission to the Senate under section 6103(f)(4)(A). We have decided to do so for several reasons.
>
> First, this approach is clearly permissible under section 6103. Although the principal purpose of section 6103 is to protect taxpayer-specific information, section 6103 also clearly contemplates the need for the public disclosure in compelling circumstances, and it establishes a formal and carefully considered process for a release: a submission by one of the tax committees to the House or Senate.

S. Rep. No. 114-119, at 13 (2015). The Finance Committee posted this report on its

congressional website along with a press release.[12]

### b. A Majority of the Circuit Courts of Appeals Embrace the Public Domain Exception to Section 6103.

Courts have thus recognized that in enacting Section 6103, "Congress sought to prohibit

only the disclosure of *confidential* tax return information." *Lampert*, 854 F.2d at 338 (emphasis

added). Logically, "[o]nce tax return information is made a part of the public domain [during

judicial proceedings], the taxpayer may no longer claim a right of privacy in that information."

*Id*. Thus, as the U.S. Tax Court has recognized, "[o]rdinarily, once the information has been

revealed in a courtroom and becomes part of the record it can no longer be protected by section

6103." *Est. of Yaeger*, 92 T.C. at 184–85 (citing *Lampert*, 854 F.2d at 337).

In *William E. Schrambling Accountancy Corp. v. United States*, the Ninth Circuit extended

*Lampert*'s judicial proceedings principle to information contained in notices of tax liens. 937

F.2d 1485, 1489 (9th Cir. 1991). In reaching this conclusion, the Ninth Circuit considered the

---

[12] Press Release, S. Comm. on Fin., Finance Committee Releases Bipartisan IRS Report (Aug. 5, 2015), https://www.finance.senate.gov/release/finance-committee-releases-bipartisan-irs-report.

"effect of recording the lien," *i.e.* to release the information into public records "open for public inspection" and which "'every citizen has a right to inspect.'" *Id.* (citing Cal. Gov't Code § 6253 (West Supp. 1990)). "Recording the information in the County Recorder's office thus exposes the information to as much, if not greater, publicity than publication in a judicial proceeding." *Id.*

The Sixth Circuit followed *Schrambling* to hold the United States was not liable for disclosure of return information previously disclosed in tax liens. *Rowley*, 76 F.3d at 801. The court reasoned that this type of disclosure "is designed to provide public notice and is thus qualitatively different from disclosures made in judicial proceedings, which are only incidentally made public." *Id.* Additionally, while not contained in a published opinion, the Third Circuit affirmed the district court's adoption of a Report and Recommendation that concluded a press release revealing an indictment was not an unauthorized disclosure because the information was already a matter of public record. *See Barnes v. United States*, 17 F.3d 1428 (3d Cir. 1994), *aff'g* 1991 U.S. Dist. LEXIS 21633.

The Seventh Circuit has adopted a "hybrid approach" by which it looks to the "immediate source" of the disclosed information to determine if the information is afforded confidential treatment. If the "immediate source of the information is a return, or some internal document based on a return," then the information is still confidential under Section 6103. *Thomas v. United States*, 890 F.2d 18, 21 (7th Cir. 1989). Conversely, "when the immediate source is a public document lawfully prepared by an agency that is separate from the Internal Revenue Service and has lawful access to tax returns," the information is no longer confidential. *Id.* The Fifth, Eighth, and Tenth Circuits have followed the Seventh Circuit in adopting this "immediate source" approach. *See Johnson v. Sawyer*, 120 F.3d 1307, 1318–19 (5th Cir. 1997); *Noske v.*

*United States*, No. 92-2761, 1993 WL 264531, at *2 (8th Cir. July 15, 1993); *Rice v. United States*, 166 F.3d 1088, 1091 (10th Cir. 1999).

In this instance, public disclosure by the House Committee on Ways and Means is the equivalent of a third-party agency disclosure like that referenced in *Thomas*. Thus, the Fifth, Seventh, Eight, and Tenth Circuits, like the decisions from the Third, Sixth, and Ninth Circuits, all support the proposition that, once confidential return information is made lawfully public by a properly designated committee of Congress, such information loses its protections under Section 6103.

The Fourth Circuit presents the only decision that reached an opposite conclusion on this issue, but only in one case and only in circumstances materially distinguishable from this case. In *Mallas v. United States*, the Fourth Circuit strictly construed Section 6103 to hold the United States can be liable for disclosure of tax return information even where that information was already disclosed in public judicial proceedings, because Section 6103 did not include a specific statutory exception once information is already available to the public. 993 F.2d 1111, 1120 (4th Cir. 1993).

*Mallas* does not involve Congress's "disclosure . . . authorized by a specific statutory exception," *id.*, and is thus not relevant to the instant case. As noted in *Mallas*, "Congress strictly circumscribed the contexts in which Government officers or employees may disclose such information." *Id.* One of those "exception[s] . . . set forth by Congress in section 6103," *id.*, is through disclosure to the public under Section 6103(f)(4)(A). Here, the Committee on Ways and Means followed that process, resulting in a lawful disclosure of return information to the public. Because *Mallas* does not address that particular exception, it is inapposite here.

The reasons for the disclosure of information here are also greatly distinguishable from *Mallas*. In *Mallas*, the return information had been disclosed in prior judicial proceedings that, while technically open to the public, did not involve purposeful disclosures targeted at the public. Here, as in *Rowley*, the return information was released specifically for the benefit of the public's awareness and knowledge. The Committee posted the transcripts publicly on its website (Am. Compl. ¶¶ 31-32) and encouraged the public to read the information. That the Committee received the information through Section 6103's whistleblower provision in Subsection (f)(5) only strengthens the case that the Court should defer to Congress's reasoning in using its statutory exception to disclose the information. To hold their disclosure has no effect on the confidentiality of the information would completely contradict the purpose of Section 6103(f) and implicate broader First Amendment issues. *Lampert*, 854 F.2d at 338 ("Only a strict, technical reading of the statute supports the taxpayers' position . . . . While generally our duty is to give effect to the literal language of a statute, we are not obligated to do so when reliance on that language would defeat the purposes of the statute.").

  **c. The D.C. Circuit Has Embraced the Public Domain Exception in the Context of Grand Jury Secrecy—Making it Likely to Follow the Same Principle in Section 6103.**

Even in the grand jury context—where secrecy is of paramount concern and is given profound deference by courts—the D.C. Circuit has spoken forcefully about the fact that public disclosures from witnesses and counsel waive the confidentiality protections of Fed. R. Crim. P. 6(e). *See In re Grand Jury Subpoena, Judith Miller*, 493 F.3d at 154–55. "Although not every public disclosure waives Rule 6(e) protections, one can safely assume that the 'cat is out of the bag' when a grand jury witness…discusses his role on the CBS Evening News." *Id.* (citations omitted). *See also In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) ("There must come a time,

however, when information is sufficiently widely known that it has lost its character as Rule 6(e) material. The purpose in Rule 6(e) is to preserve secrecy. *Information widely known is not secret*.") (emphasis added). According to a search of the news service Critical Mention, from June 22, 2023 (the date of the Committee on Ways and Means' lawful and public release) to June 28, 2023 (the date of Alleged Disclosure 6), approximately 3,956 different online, print, radio, and television news stories covered the information released by the Committee, including stories in all 50 states and 41 other countries around the world.[13]

The logic of *Miller* and *North* recognizing a public record exception for grand jury information applies equally to tax return information lawfully in the public record. Because Section 6103 only protects *confidential* taxpayer information, the lawful public disclosure of such information renders it no longer confidential and thus no longer protected by Section 6103.

The D.C. Circuit has not expressly weighed in on the public domain exception outside of the grand jury context, where it has unambiguously recognized this principle. However, courts in this District have favorably cited *Schrambling* to find no Section 6103 violations in other contexts where the record in dispute was already a part of the public domain. *See Glass v. United States*, 480 F. Supp. 2d 162, 166 (D.D.C. 2007) ("'The recording of a federal tax liens in the County Recorder's Office . . . places information in the liens . . . into the public domain. Because information in the public domain is no longer confidential there can be no violation of Section 6103 and, consequently, no liability for disclosure of such information under Section 7431.'") (quoting *Schrambling*, 937 F.2d at 1489-90); *Koerner v. United States*, 471 F. Supp. 2d 125, 128

---

[13] Although Critical Mention is a paid service for measuring public news references (of which the Court may take judicial notice), a selection of the news sources from that time period can be found by a search of Google News. *See* https://www.google.com/search?q=gary+shapley&sca_esv=5d51b42a17f98a69&sca_upv=1&rlz=1C1ONGR_enUS 1047US1047&tbs=cdr:1,cd_min:6/22/2023,cd_max:6/28/2023&tbm=nws&ei=UiRGZtPrGdygptQPtI- fwAw&start=0&sa=N&ved=2ahUKEwjT3Oq9vJKGAxVckIkEHbTHB8g4ChDy0wN6BAgFEAQ&biw=1280&bih =631&dpr=3.

(D.D.C. 2007) (same); *Pollinger v. United States*, 539 F. Supp. 2d 242, 253 (D.D.C. 2008) ("The

Court agrees with [*Schrambling*'s] analysis, and concludes that Plaintiff cannot state an

unauthorized disclosure claim based upon the various notices of liens and levies."). *See also Tax*

*Analysts v. I.R.S.*, 97 F. Supp. 2d 13, 19 (D.D.C. 2000), *aff'd*, 294 F.3d 71 (D.C. Cir. 2002)

(recognizing the "public record exception to 6103" in *Schrambling* in the FOIA context).

Though a D.C. District Court has cited *Mallas* in a previous Section 7431 case, the underlying facts of that case were distinguishable from this case. In *Bancroft Global Development v. United States*, this Court relied on *Mallas* to decline to dismiss a Section 7431 claim for improper disclosure because "there is a chance that [the recipients] learned of the IRS audit from Plaintiffs themselves," suggesting that disclosures from the taxpayer do not remove the confidentiality protections of Section 6103. 330 F. Supp. 3d 82, 101 (D.D.C. 2018). Here, Plaintiff Hunter Biden admits where the public learned this information: through the procedures provided by Congress via Section 6103(f). (Am. Compl. ¶¶ 31-32.) And the Committee on Ways and Means certainly succeeded in its goal of benefiting the public's awareness and knowledge.

### d.  IRS Policy on the Public Domain Exception to Section 6103 is Consistent with the Majority of Circuit Courts of Appeals.

The Internal Revenue Manual instructs IRS employees on the public domain exception to

Section 6. "The purpose of the IRM is to provide instructions to staff . . . relat[ing] to

administration and operation of the IRS for all business units." IRM Purpose and Use,

1.11.6.2(2). In light of the clear bulk of case law, the IRM states that "IRS policy permits and

encourages press releases and responses to media inquiries regarding enforcement activities that

have become a matter of public record." *See* Information Available for Media Use, IRM 9.3.2.6

(06-05-2006)("4. Any disclosure of return information under this provision is made pursuant to

the 'public record exception' recognized by most circuit courts.").

2. **Congress, the IRS, and the Public All Understood the Information Released by the Committee on Ways and Means Was No Longer Protected by Section 6103.**

   a. **Congress Viewed Shapley's and Ziegler's Disclosures as Losing Section 6103 Protection After Being Voted Out to the Public Domain.**

In this case, members of Congress recognized that Plaintiff Hunter Biden's tax return information disclosed in the whistleblowers' testimony lawfully became part of the public record upon a vote of the Committee on Ways and Means. Several members of Congress on both sides of the aisle gave media interviews about the closed June 22, 2023 executive session after the Committee voted to make the proceedings public. They all confirmed the intention behind the release of the information was to make the public aware of Shapley's and Ziegler's protected whistleblower disclosures.[14] These statements concerning Plaintiff Hunter Biden's return information (and for which he has not sued under Section 6103) underscore the purposeful publicity "designed to provide public notice" behind these disclosures. *Rowley*, 76 F.3d at 801; *Schrambling*, 937 F.2d at 1489. And members of Congress on both sides of the aisle encouraged Americans to review the transcripts themselves.

Other committees also recognized that the Ways and Means release allowed for public discussion of its contents. During the subsequent July 19, 2023 hearings before the Committee on Oversight and Accountability, Chairman James Comer stated:

> I would like to remind the members in the public that Section 6103 of the Tax Code makes taxpayer information confidential, except in certain circumstances. One of

---

[14] See, e.g., "Rep. Jason Smith News Conference on Hunter Biden Investigation," C-SPAN (June 22, 2023), https://www.c-span.org/video/?528915-101/rep-jason-smith-news-conference-hunter-biden-investigation ("Only the Ways and Means Committee has the ability to report this information legally to the full House of Representatives and thereby make it known to the American public. Doing so is an important step in preventing future misconduct, encouraging other whistleblowers to come forward and considering possible future legislative reforms.") (emphasis added); "House Ways and Means Committee Democrats on IRS Whistleblowers Evidence," C-SPAN (Sept. 27, 2023), https://www.c-span.org/video/?530771-1/house-ways-means-committee-democrats-irs-whistleblowers-evidence ("And I thought that under questioning their arguments really didn't stand up, but you'll have a chance to review when you look at the transcripts.") (Rep. Richard Neal) (emphasis added); *see also id.* ("There are transcripts, but I invite you to sift through it and find anything that points a finger with direct evidence against President Biden.") (Rep. Lloyd Doggett) (emphasis added).

those exceptions is the process the Ways and Means Committee used to receive testimony from these whistleblowers and report transcripts of their testimony to the full House of Representatives to make that information public. These whistleblowers have gone above and beyond to submit information to Congress in accordance with the law, and we are grateful to them for that. ***The witnesses can only testify to tax information that has already been released through proper procedures through the Ways and Means Committee.*** This means that in some instances they may have to decline to answer a question and instead submit additional information to the Ways and Means Committee at a later date through the appropriate process.

They are each accompanied by counsel to address questions that arise on Section 6103 and are not present today to provide testimony or answer members' questions. I ask members to respect that process and requirements of Section 6103.

*Hearing With IRS Whistleblowers About the Biden Criminal Investigation Before the H. Comm. on Oversight and Accountability*, 118th Cong. 52 (July 19, 2023) (Statement of Hon. J. Comer) (emphasis added). In the hearing, Democrats and Republicans alike asked Shapley and Ziegler public questions regarding the material released by the Committee on Ways and Means. On multiple occasions, the whistleblowers *declined* to answer the Representatives' questions in that setting to the extent the questions called for information not in the material released by the Committee on Ways and Means. Instead, they indicated they would need to submit any still-confidential details to the Committee on Ways and Means pursuant to Section 6103(f)(5).

> **b. The IRS Viewed Shapley's and Ziegler's Disclosures as Losing Section 6103 Protection After Being Voted Out to the Public Domain.**

Consistent with the IRM, after the Committee on Ways and Means' lawful June 22, 2023 release pursuant to Section 6103(f)(4)(A), the IRS allowed the Committee on Ways and Means to interview Shapley's and Ziegler's IRS supervisors *in a non-Section 6103 setting* concerning the information in the public domain about its investigation into Plaintiff Hunter Biden.[15] The

---

[15] *See* H. Comm. on Ways and Means, Interview of Darrell Waldon (Sept. 8, 2023), *available at* https://gop-waysandmeans.house.gov/wp-content/uploads/2024/03/HWM251550_Final_Redacted_Waldon-with-Exhibits.pdf; H. Comm. on Ways and Means, Interview of Michael Batdorf (Sept. 12, 2023), *available at* https://gop-waysandmeans.house.gov/wp-content/uploads/2024/03/HWM255550_Final_Redacted_Batdorf-with-Exhibits.pdf.

IRS supervisors' testimony reflects the IRS's view that return and return information related to the IRS investigation of Plaintiff Hunter Biden was no longer confidential after it had been lawfully released to the public.

### c. Alleged Disclosures 6 through 16 Contain No Confidential Information Protected by Section 6103.

Even accepting as true the facts pleaded in the Amended Complaint, a careful examination of the Amended Complaint reveals that, in each of Alleged Disclosures 6 through 16, neither Shapley, Ziegler, nor their Counsel revealed any information not already lawfully disclosed to the public by the Committee on Ways and Means pursuant to Section 6103(f)(4)(A). (*See id*. ¶¶ 33-46.) Thus, because Congress deliberately and legally placed the information in the public domain, and because the "immediate source" was the information disclosed by Congress, there can be no violation of Section 6103 on the facts alleged in the Amended Complaint. Rather, the Whistleblower Protection Act and the First Amendment protected Shapley's and Ziegler's right to discuss this information.

Alleged Disclosure 11, like Alleged Disclosure 1, was merely an indication from Counsel that Ziegler intended to make further protected disclosures to Congress. (*Id*. ¶ 41.) It contained no return information and clearly did not violate Section 6103.

Of the remaining Alleged Disclosures that Plaintiff Hunter Biden alleges contained return information (Alleged Disclosures 6 through 10 and 12 through 16),[16] there are only two which the Amended Complaint attempts to allege *were not already in the public domain*: Alleged Disclosures 9 and 15. (*Id*. ¶¶ 39, 45.) Yet the Amended Complaint's claims about these Alleged Disclosures directly contradict documents incorporated by reference in the Amended Complaint.

---

[16] *See* Exhibit 1 (summary of Alleged Disclosures 6 through 10 and 12 through 16 and how each of the Alleged Disclosures was already in the Committee on Ways and Means' release of information).

Because this Court can take judicial notice of such documents, this Court is not obliged to presume them as true. *Scahill*, 909 F.3d at 1186 (quoting *Kaempe*, 367 F.3d at 963); *Acosta*, 711 F. Supp. 2d at 109 (quoting *Ning Ye*, 644 F. Supp. 2d at 116). And, in fact, contrary to the Amended Complaint's assertions, both Alleged Disclosure 9 and 15 involved information that had already been released by the Committee on Ways and Means and was thus a matter of public record.

The Amended Complaint alleges Disclosure 9 occurred when Ziegler stated in an interview on CNN that he recommended felony and misdemeanor charges for tax years 2017 through 2019, contrasting that statement with his testimony before the Committee on Ways and Means that he only recommended misdemeanor charges in 2017. (Am. Compl. ¶ 39.) However, there was no contradiction and no new information not previously released. The Amended Complaint stretches and mischaracterizes Ziegler's statement in an effort to find a violation where none exists.

According to a CNN transcript of the interview, Jake Tapper asked: "Do you know of criminal charges against Hunter Biden that were not filed that definitively there is evidence, proof that they should be filed, that he should be facing justice for?" Ziegler responded: "So, again, meeting with the attorney, assigned attorneys, we all—and that included Department of Justice tax attorneys[—]all agreed for felony and misdemeanor tax charges *related to* 2017, 2018, and 2019. I didn't see that in the charging document that was filed in Delaware."[17]

Ziegler was simply saying that, within the years covered by the plea agreement, felony tax charges had *also* been recommended in some of those years, which is clear from the full context of the interview. He was not revealing a new felony charge recommendation for 2017

---

[17] Transcripts, The Lead with Jake Tapper, https://transcripts.cnn.com/show/cg/date/2023-07-20/segment/02 (emphasis added).

omitted from his Ways and Means testimony. All of the information about charging recommendations was extensively and accurately established in the materials the Committee on Ways and Means voted to release.[18]

The Amended Complaint also asserts that Alleged Disclosure 15 occurred when Shapley stated in an interview on Fox News that FBI General Counsel Jason Jones could substantiate his allegations, which he did not disclose during his testimony before the Committee. (Am. Compl. ¶ 45.) However, the Amended Complaint completely misinforms this Court about what Shapley actually said, which is easily established by simply reviewing the interview cited in the Complaint. It obviously contradicts the Complaint's claim. Shapley prefaced Alleged Disclosure 15 by a clear reference to "the FBI SSA that testified in front of House Ways and Means Committee," not to the FBI General Counsel.[19] Nowhere in the interview did Shapley reference the FBI General Counsel, much less make new claims that Jones would corroborate Shapley's testimony. Moreover, even if he had, that would not be a disclosure of confidential return information as defined by Section 6103.

The Amended Complaint's explicit differentiation of Alleged Disclosures 9 and 15 from the rest of the Alleged Disclosures is a tacit and telling admission that the rest of the Alleged Disclosures were not disclosures of confidential return information at all but rather references to information already public in the Committee on Ways and Means' previous lawful and public release. By claiming that "Mr. Ziegler did not disclose that he proposed felony tax charges for 2017 in his statements to the Committee on Ways and Means" (*id*. ¶ 39), and that Shapley "did

---

[18] *See, e.g.*, H. Comm. on Ways and Means, Interview of [Redacted] (June 1, 2023), at 33, https://waysandmeans.house.gov/wp-content/uploads/2023/06/Whistleblower-2-Transcript_Redacted.pdf; H. Comm. on Ways and Means, Interview of Gary A. Shapley, Jr. (May 26, 2023), at 42, https://waysandmeans.house.gov/wp-content/uploads/2023/06/Whistleblower-1-Transcript_Redacted.pdf.

[19] *See* Fox News, *Congress needs 'additional investigation' into Biden family business dealings: Gary Shapley* (Aug. 1, 2023), https://www.foxnews.com/video/6332236977112. The FBI employee's interview was in fact conducted by the House Committee on Oversight and Accountability.

not disclose this confidential return information in his testimony to the Committee on Ways and Means" (*id*. ¶ 45), the Amended Complaint implicitly concedes that, not only were the disclosures to Congress lawful, but so were any subsequent statements by Shapley and Ziegler simply repeating information already in the Ways and Means prior lawful public release.

> **d.  If Not Prohibited by Section 6103 or Other Restrictions, the First Amendment and the Whistleblower Protection Act Protect a Government Employee's Right to Discuss Facts of Concern.**

Because these Alleged Disclosures were not *prohibited* by Section 6103, they were in fact *protected* by the First Amendment and the Whistleblower Protection Act.

The First Amendment to the United States Constitution states: "Congress shall make no law . . . abridging the freedom of speech . . . ." While citizens do forego some speech protections when they become public employees, the Supreme Court has recognized since at least 1968 public employees' First Amendment "right to speak on issues of public importance[.]" *Pickering v. Board of Education*, 391 U.S. 563, 575 (1968). In recent years, the Supreme Court has held that "[t]he First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). In that case, the Court noted "the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion." *Id*.

Further, noting that "exposing governmental inefficiency and misconduct is a matter of considerable significance," the Court in *Garcetti* highlighted "the powerful network of legislative enactments—such as whistle-blower protection laws . . . —available to those who seek to expose wrongdoing." *Id*. at 425. Under 5 U.S.C. § 2302(b)(8)(A) of the Whistleblower Protection Act, a covered federal agency may not take or fail to take, or threaten to take or fail to take, a personnel

action with respect to any employee or applicant for employment because of any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences: (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law. Because Section 2302(b)(8)(A), unlike (B) or (C), does not specify *to whom* the disclosure must be made, it has long been understood to protect disclosures to the media. *See, e.g., Dep't of Homeland Sec. v. MacLean*, 135 S.Ct. 913 (2015) (whistleblower disclosures to news media protected by Whistleblower Protection Act unless "specifically prohibited by law"); *Chambers v. Dep't of Interior*, 602 F.3d 1370, 1379 (Fed. Cir. 2010) (whistleblower's statements to a *Washington Post* reporter protected under Whistleblower Protection Act); *Huffman v. Office of Personnel Mgmt.*, 263 F.3d 1341, 1351 (Fed. Cir. 2001) ("Horton itself and the legislative history of the WPA recognize that disclosures to the press are protected.").

Here, since Shapley's and Ziegler's disclosures to the media were not prohibited by Section 6103, the Whistleblower Protection Act gave them a right to discuss with the media the information they believed constituted gross mismanagement and an abuse of authority, like the mishandling of the Hunter Biden investigation.

### III.   BECAUSE THE STATEMENTS OF SHAPLEY AND ZIEGLER WERE LAWFUL AND COMPLIED WITH SECTION 6103, PLAINTIFF'S ALLEGATION RELATED TO THE PRIVACY ACT (5 U.S.C. § 552a(b)) MUST ALSO BE DISMISSED.

In Count II of his Amended Complaint, Plaintiff Hunter Biden alleges that "the IRS unlawfully disclosed, or failed to take reasonable steps to prevent its personnel [Shapley and Ziegler] from unlawfully disclosing, Mr. Biden's records—his confidential return information— without his prior written consent and for no statutorily permitted purpose, in violation of 5

U.S.C. § 552a(b)." (Amended Complaint ¶ 67) This allegation is a mere extension of the Section 6103 allegations. For the reasons discussed *supra*, Shapley's and Ziegler's Alleged Disclosures were lawful and in compliance with Section 6103(f), and therefore were not an unlawful disclosure of Plaintiff Hunter Biden's confidential return information.

Therefore, as a matter of law, Count II should also be dismissed.

## CONCLUSION

The Amended Complaint identifies 16 statements, made by Shapley, Ziegler or their Counsel, alleged as improperly disclosing return or return information in violation of Section 6103. For the reasons discussed above, none of those statements, as a matter of law, amount to violations of Section 6103. Each statement either contained no reference to return or return information covered by Section 6103 (Alleged Disclosures 1 through 5, and 11) or simply reiterated information that had been lawfully disclosed to the public in the first instance pursuant to authorization in Sections 6103(f)(5) and (4)(A) (Alleged Disclosures 6 through 10, and 12 through 16). The Amended Complaint's allegations that Shapley and Ziegler overstepped the bounds of the Committee on Ways and Means' public disclosures with Alleged Disclosure 9 and 15 fail on the basis of facts in documents incorporated by reference in the Amended Complaint and subject to judicial notice.

Because the Amended Complaint's Section 6103 claim (Count I) fails, the Privacy Act claim (Count II) also fails.

Based on the foregoing, the Court should grant Shapley's and Ziegler's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: May 17, 2024                    Respectfully submitted,

                                       /s/ *Mark D. Lytle*
                                       Mark D. Lytle (D.C. Bar No. 1765292)

                                       **NIXON PEABODY LLP**
                                       Mark D. Lytle (*pro hac vice*)
                                       799 9th Street NW, Suite 500
                                       Washington, DC 20001
                                       (202) 585-8000
                                       mlytle@nixonpeabody.com

                                       /s/ *Tristan L. Leavitt*
                                       Tristan L. Leavitt (Id. Bar No. 8801)

                                       **EMPOWER OVERSIGHT**
                                       Tristan L. Leavitt (*pro hac vice*)
                                       11116 Fairfax Boulevard, Suite 500 #1076
                                       Fairfax, VA 22030
                                       tl@empowr.us

                                       /s/ *Justin K. Gelfand*
                                       Justin K. Gelfand (D.C. Bar No. 90023996)

                                       /s/ *Gregory P. Bailey*
                                       Gregory P. Bailey (D.C. Bar No. 1781925)

                                       **MARGULIS GELFAND, LLC**
                                       Justin K. Gelfand (*pro hac vice*)
                                       Gregory P. Bailey
                                       7700 Bonhomme Avenue, Suite 750
                                       St. Louis, MO 63105
                                       (314) 390-0234
                                       justin@margulisgelfand.com
                                       greg@margulisgelfand.com

                                       *Attorneys for Gary Shapley*

/s/ *John P. Rowley III*
John P. Rowley III (D.C. Bar No. 392629)

**SECIL LAW PLLC**
John P. Rowley III
1701 Pennsylvania Ave., N.W., Suite 200
Washington, D.C. 20006
(202) 642-0679
jrowley@secillaw.com

*Attorney for Joseph Ziegler*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 17, 2024, I filed the foregoing document with the Clerk of Court using

the CM/ECF electronic filing system, which will send notification to all counsel of record.


/s/ *Gregory P. Bailey*
**MARGULIS GELFAND, LLC**
Gregory P. Bailey
7700 Bonhomme Avenue, Suite 750
St. Louis, MO 63105
(314) 390-0234
(314) 485-2264
greg@margulisgelfand.com

Exhibit 1 - Case No. 1:23-cv-02711

| Ways and Means June 22, 2023 Release | Alleged Disclosure 6 (June 28, 2023) |
|---|---|
| "So there was an electronic search warrant for iCloud backup, and these messages were in that backup and provided from a third party, from iCloud. . . . [S]ince it's electronic, it would go to one of the computer analysis folks, and then they would put it in a readable format, and then it would go through filter review." (Shapley Tr. at 159)<br><br>"There was an Apple iCloud. . . . [I]t had to go through a filter team, a filter AUSA. So they're filtering out any attorney-client privilege documents. And then ultimately we on the team, on the investigative team, would get the documents to review for relevancy or nonrelevancy." (Ziegler Tr. at 22-23)<br><br>"I know that we wanted to get location data because I went to the prosecutors with this, and they, again, came back at me with: Well, how do we know that? He could just be lying and claiming that the dad -- that his dad's there, but his dad is not there." (Ziegler Tr. at 105)<br><br>"[W]hen agents saw this in late August, September of 2020, we went to the prosecutors. We said, we got to ask questions about this, we got to figure this out, we got to -- like, what's going on with this? And the response was, No. No, we're not going to do it. You want to know why? And it makes a little bit of sense, right? Well, we don't know if he was lying that his father was sitting next to him, right? So then we said, well, let's get the location data for the messages, and if they're co-located, then we're on better ground here, right? . . . And they [said], no, we're not going to do that." (Shapley Tr. at 163) | "Mr. Shapley discussed WhatsApp messages purportedly sent and received by Mr. Biden. Mr. Shapley stated that 'when we received the attorney-client filter-reviewed copy of information from the search warrant to Apple which produced that document, we went back to the prosecutors and we requested to take various investigative steps, and they were not supported.'" (¶ 33) |
| "[O]n an October 22nd, 2020, pros team call, AUSA Wolf stated that United States Attorney David Weiss had reviewed the affidavit for search warrant of Hunter Biden's residence and agreed that probable cause had been achieved." (Shapley Tr. at 17) | "Later in the same interview, Mr. Shapley asserted that prosecutors in Mr. Biden's investigation 'stated that probable cause had been achieved.'" (¶ 34) |
| "[A]fter former Vice President Joseph Biden became the presumptive Democratic nominee for President in early April 2020, career DOJ officials dragged their feet on the IRS taking these investigative steps. By June 2020, those same career officials were already delaying overt investigative actions. This was well before the typical 60- to 90-day period when DOJ would historically stand down before an election." (Shapley Tr. at 13)<br><br>"We're like . . . we need to come out and go overt with the tax case. And I remember there were always times to where we were always on an impending election cycle. It was always the election being brought up. In early 2020, it was the [primaries]. I think that Iowa was the very first one where we weren't sure what we were allowed to do or we weren't -- it was always wait and see." (Ziegler Tr. at 23)<br><br>"And, ultimately, we never were able to do the walk by the residence until after the election." (Ziegler Tr. at 25) | "Mr. Shapley opined that critical steps in the federal investigation into Mr. Biden were 'put on the back burner' as the presidential election approached" (¶ 34) |
| "The purposeful exclusion of the 2014 and 2015 years sanitized the most substantive criminal conduct and concealed material facts." (Shapley Tr. at 25)<br><br>"This recommended felony tax evasion charges, that's 7201, is tax evasion, and 7206(1) is a false tax return, also a felony, for the tax years 2014, 2018, and 2019." (Shapley Tr. at 42) | "'[T]he most substantive felony charges were left off the table.'" (¶ 34) |
| "As early as March 6th, 2020, I sent a sensitive case report up through my chain of command at IRS reporting that by mid-March the IRS would be ready to seek approval for physical search warrants in California, Arkansas, New York, and Washington, D.C. Special Agent [REDACTED] drafted an April 1st, 2020, affidavit establishing probable cause for these physical search warrants. . . . By June 2020, those same career officials were already delaying | "Mr. Shapley went on to state that he sought to obtain and execute warrants to search Mr. Biden's property between April and June 2020." (¶ 34) |

| | |
|---|---|
| overt investigative actions. . . . On a June 16th, 2020, call Special Agent and I had with our chain of command up to the Director of Field Operations, I pointed out that if normal procedures had been followed we already would have executed search warrants, conducted interviews, and served document requests." (Shapley Tr. at 13) | |
| "This recommended felony tax evasion charges, that's 7201, is tax evasion, and 7206(1) is a false tax return, also a felony, for the tax years 2014, 2018, and 2019." (Shapley Tr. at 42)<br><br>"So 2014 -- it would have been false return and evasion of assessment that we were looking into. So 7206(1) -- Title 26, [U.S.C. Section] 7206(1), and Title 26, [U.S.C. Section] 7201." (Ziegler Tr. at 62)<br><br>"So 2018 was the false tax return year." (Ziegler Tr. at 102) | "Mr. Shapley asserted that Mr. Biden should have been charged with tax evasion for 2014, false tax returns for 2018 and 2019" (¶ 35) |
| "So essentially for 2014, we had found that Hunter didn't report any of the money he earned from Burisma." (Ziegler Tr. at 64)<br><br>"Hunter Biden still has not reported approximately $400,000 in income from Burisma . . . ." (Shapley Tr. at 25) | "Mr. Biden did not report income from certain foreign entities." (¶ 35) |
| **Ways and Means June 22, 2023 Release** | **Alleged Disclosure 7 (June 28, 2023)** |
| "Yeah, so, 2014 is -- the elements are met, absolutely should have been charged, any other case I ever worked with similar fact patterns, similar acts of evasion and similar tax due and owing." (Shapley Tr. at 93) | "Mr. Shapley asserted that punishment for Mr. Biden's conduct was warranted: 'if this was any other person, they likely would have already served their sentence.'" (¶ 36) |
| "But he was expensing personal expenses, his business expenses. So, I mean, everything, there was a payment that -- there was a $25,000 to one of his girlfriends and it said, 'golf membership.' And then we went out and followed that money it was for a sex club membership in LA. . . . There were multiple examples of prostitutes that were ordered basically, and we have all the communications between that where he would pay for these prostitutes, would book them a flight where even the flight ticket showed their name. And then he expensed those." (Shapley Tr. at 96-97)<br><br>"He deducted payments that were made to who he called his West Coast assistant, but she was essentially a prostitute. He made payments -- there's an $18,000 wire that is made to one of these individuals, and on the wires they say $8,000 in wage and $10,000 in golf -- $10k golf club member deposit. And we know that that $10,000 went to pay for a sex club. He went to a sex club, and we've talked to the person that owned that sex club, and they confirmed that he was there. And the guy has to pay $10,000, and the girl -- whoever is referring him there doesn't have to pay anything. So that was deducted on the tax return. . . . He tried to -- or he deducted expenses for hotel rooms for one of his drug dealers or what we believed to be one of his drug dealers." (Ziegler Tr. at 103-04) | "Mr. Shapley cited to alleged '[p]ersonal expenses that were taken as business expenses—prostitutes, sex club memberships, hotel rooms for purported drug dealers'" (¶ 36) |
| "Q  And are you able to share details or estimates of the scope of the liability the taxpayer had to the U.S. Government or the loss to the U.S. Government in each of these tax years?<br>A  I probably couldn't itemize it off the top of my head, but altogether it was around $2.2 million.<br>Q  Spanning 2014 through 2019 tax years?<br>A  Yes . . . ." (Shapley Tr. at 52-53) | "[C]laimed that 'from 2014 to 2019 [Mr. Biden owed] $2.2 million [in unpaid taxes].'" (¶ 36) |
| **Ways and Means June 22, 2023 Release** | **Alleged Disclosure 8 (June 29, 2023)** |
| "Q  [B]ased on the conclusion in your report, the elements for [26 U.S.C. § 7201] were met in tax years 2014, 2018, and 2019. Is that correct?<br>A  That's correct." (Shapley Tr. at 48) | "Mr. Shapley stated that 'the evidence that we collected that, that were, mashed up with the elements of the criminal violations. . . those elements were met and then some. If |

Exhibit 1 - Case No. 1:23-cv-02711

| | |
|---|---|
| "Q [B]ased on this report, elements for [26 U.S.C. § 7203] were met in 2015, 2016, 2017, 2018, and 2019. Is that correct?<br>A That's correct, yes." (Shapley Tr. at 48)<br><br>"Q [T]he elements for [26 U.S.C. § 7206(1)] were met in tax years 2014, 2018, and 2019. Is that correct?<br>A That's correct, yes." (Shapley Tr. at 49)<br><br>"Yeah, so 2014 is -- the elements are met, absolutely should have been charged, any other case I ever worked with similar fact patterns, similar acts of evasion and similar tax due and owing." (Shapley Tr. at 93) | these facts were from the local businessman or the neighbor next door, they would have been charged and they would have already had their entire sentence.'" (¶ 37) |
| "Q And are you able to share details or estimates of the scope of the liability the taxpayer had to the U.S. Government or the loss to the U.S. Government in each of these tax years?<br>A I probably couldn't itemize it off the top of my head, but altogether it was around $2.2 million.<br>Q Spanning 2014 through 2019 tax years?<br>A Yes . . . ." (Shapley Tr. at 52-53)<br><br>"[A] $2.2 million case for 95 percent of the IRS CI special agents would be a huge case for them. . . . So this is generally considered within IRS CI to be a big case." (Shapley Tr. at 73) | "Mr. Shapley also asserted that Mr. Biden had not paid sufficient taxes from 2014 through 2019." (¶ 37) |
| **Ways and Means June 22, 2023 Release** | **Alleged Disclosure 9 (July 20, 2023)** |
| "So in October of 2021, we had what was called a tax summit to where we all met together. When I say "we all," so the prosecutors, so Jack Morgan and Mark Daly from DOJ Tax, Lesley Wolf and Carly Hudson from the U.S. Attorney's Office in Delaware. So at that time we decided what charges we were going to push forward in the prosecution report. So we all made the decision on that we were going to move forward with 2014, 2015, 2016, 2017, 2018, and 2019. And it would be felony counts related to 2014 and felony counts related to 2018. That was the decision made at that time." (Ziegler Tr. at 32-33) | "Mr. Ziegler stated that 'the four assigned prosecutors to [Mr. Biden's] case agreed with recommending felony and misdemeanor charges for Hunter Biden.'" (¶ 39) |
| "[W]e proposed charges for Title 26 United States Code . . . . 2017 was [Title 26, U.S.C. §] 7203, failure to timely file and pay tax. 2018 was [Title 26, U.S.C. §] 7201, evasion of assessment and payment; [Title 26, U.S.C. §] 7203, failure to timely file and pay tax; and [Title 26, U.S.C. §] 7206(1), false return. So just to be clear, failure to timely file and pay tax - - that's a misdemeanor. And false return -- false return and evasion are felonies. . . . And then 2019 was failure to timely file and pay." (Ziegler Tr. at 62) | "Mr. Ziegler also stated that he recommended that Mr. Biden should be charged with 'felony and misdemeanor tax charges related to 2017, 2018 and 2019' for evasion of income tax." (¶ 39) |
| **Ways and Means June 22, 2023 Release** | **Alleged Disclosure 10 (July 20, 2023)** |
| "I am blowing the whistle because the Delaware U.S. Attorney's Office, Department of Justice Tax, and Department of Justice provided preferential treatment and unchecked conflicts of interest in an important and high-profile investigation of the President's son, Hunter Biden." (Shapley Tr. at 10)<br><br>"Yeah, so, 2014 is -- the elements are met, absolutely should have been charged, any other case I ever worked with similar fact patterns, similar acts of evasion and similar tax due and owing." (Shapley Tr. at 93) | "For example, Mr. Shapley stated that Mr. Biden 'got preferential treatment and if it was a business owner on the corner, he or she wouldn't have gotten that special treatment and he probably would have been in jail already.'" (¶ 40) |
| **Ways and Means June 22, 2023 Release** | **Alleged Disclosure 12 (July 24, 2023)** |
| "2018 was so significant because, at the same time he is writing his book, he is having the returns prepared. And the statements in his book completely contradicted what was being deducted on his tax return. He essentially said in his book that he was in a drug-addled haze | "Mr. Ziegler asserted that there were 'deduction[s] that [were] taken on [Mr. Biden's] tax return' that contradicted statements made in his book of business" (¶ 42) |

| | |
|---|---|
| and was essentially learning how to cook crack, was some of the quotes in the book." (Ziegler Tr. at 103) | |
| "So essentially for 2014, we had found that Hunter didn't report any of the money he earned from Burisma. So the reason why this is important is because Hunter set it up this way, to not -- to essentially earn the money through his friend's corporation and then have his friend pay him back half of the money as loans, quote, unquote, loans." (Ziegler Tr. at 64)<br><br>"I have brought up that if we went based on an evasion theory, that he evaded these taxes -- so one more step to this is Hunter to his counsel told them about this scheme. So basically said -- Devon Archer was handling the taxes and I was taking some of the money as loans. So there's documentation of this and the date, everything. So we viewed that as he's lying to his attorney. He's telling his attorney exactly what happened, and he's trying to cover it up." (Ziegler Tr. at 66)<br><br>"He also tried to -- the money that he earned from Hudson West III, he tried to say that that was a loan. Same thing we have all going back to Burisma -- I'm loaning from my own capital in the company -- even though he didn't put any capital in the Hudson West III. It was zero. So he was trying to say that it was a loan. But the accountants were so good that they really dug into it, and they were like: No, no, no, you can't deduct this -- or you can't take this as a loan on your tax return." (Ziegler Tr. at 104)<br><br>"[W]e spent so much time working through the issue and showing how it wasn't a loan at all. There's no indication of it whatsoever. Again, I go back to -- you can't loan yourself your own income." (Ziegler Tr. at 164)<br><br>"A [W]hen Eric Schwerin realizes there's money coming in, Hunter Biden is telling him, 'No, this is a loan, it's a loan, it's a loan, it's a loan,' and then eventually Eric Schwerin is talking with Momtazi, who is the accountant for Devon Archer and Rosemont Seneca Bohai, and they start talking. And that's when Eric Schwerin realizes that this is actual income, and he's like, 'We're going to have to book this as income.' And there's multiple communications in the evidence that talk about that.<br>Q  So this was an affirmative scheme by the taxpayer to avoid paying taxes?<br>A  This is, like, textbook, I learned at basic training nominee stuff." (Shapley Tr. at 58-59) | "[A]lleged that Mr. Biden incorrectly described certain payments as loans, which constituted 'clear cut tax evasion.' Mr. Ziegler . . . . opined that Mr. Biden's activities demonstrated 'a willful intent to either deceive or make it so that income is not reported.'" (¶ 42) |
| "So Hunter Biden had had a lot of tax issues, even predating all of this stuff. Back in 2002, he filed his Form 1040 late-filing and owing over $100,000 in taxes; 2003, owed more than $100,000 dollars in taxes; 2004, late-filed and owed more than $20,000 in taxes; and 2005, late filed his personal return and owed over $100,000 in taxes." (Ziegler Tr. at 62) | "Mr. Ziegler stated that Mr. Biden had 'delinquent taxes' going back to the early 2000s" (¶ 42) |
| **Ways and Means June 22, 2023 Release** | **Alleged Disclosure 13 (July 26, 2023)** |
| The criminal tax investigation of Hunter Biden, led by the United States Attorney's Office for the District of Delaware, has been handled differently than any investigation I've ever been a part of for the past 14 years of my IRS service. (Shapley Tr. at 11) | "Shapley Representative A stated that Mr. Shapley 'wanted the proper authorities to see what happened that was different from all of his fourteen years in, ya know, working as an IRS agent.'" (¶ 43) |
| "[T]hey were not doing the right thing, but I could not fathom concluding that the United States Attorney's Office or DOJ Tax were in the wrong. . . . My choice was to turn a blind eye to their malfeasance and not sleep or to put myself in the crosshairs by doing the right thing." (Shapley Tr. at 30-31)<br><br>"I'm not coming to the House Ways and Means Committee when a prosecutor says we can't do one search warrant. That's just not -- I'm not going to do -- I'm never going to do that, right? This is a series of events over 3 years where every single thing was to obstruct the | "Shapley Representative A continued later in the interview: '[t]here really needs to be a Special Counsel, this has really been too messed up. There needs to be a Special Counsel who not only can decide what to do with the Bidens, the Biden Family, the President, in terms of charges, but also write a report about what happened behind the scenes here, so it never happens again because clearly a lot of wrong things were done. And we're hoping that Congress will be able to get to the bottom of it and flush out |

| investigation. Every single thing limited evidence that we were able to obtain." (Shapley Tr. at 134) | what caused the preferential treatment, the wrong decisions on investigative steps.'" (¶ 43) |
|---|---|
| **Ways and Means June 22, 2023 Release** | **Alleged Disclosure 14 (July 31, 2023)** |
| "[A]fter all these pros team calls we would have a follow-up call. And sometimes FBI agents would be on there as well. And it was basically talking about the strategy and it often became like, Wow, they are not letting us do this. Can you believe they said that? Like that type of thing. . . . [E]ach time we were, like, Wow, they didn't let us do the search warrant. Like she said -- to overcome probable cause with a search warrant is, like, that is it, right? That is really, like, okay, well, you are going to go do it, because we want evidence that is unfiltered, right? But the whole point is we were like, well, there is no way they are not going to charge [this]. The evidence is there. They say the evidence is there. And we just really couldn't believe that they would be doing something wrong. It was a very heavy burden to overcome from my experience and training to be, like, wow, there is something going on here." (Shapley Tr. at 88) | "Shapley Representative A opined that 'there needs to be a Special Counsel to step in and not only figure out what to do with Hunter Biden and the Biden family and President Biden, but also to write a report about, about what happened internally with this investigation and how did all of these investigative steps get declined in a context where, ya know, agents who are veterans, who are just trained to follow the money and they are told not to do things. So, I absolutely do think that would make sense in this case.'" |
| **Ways and Means June 22, 2023 Release** | **Alleged Disclosure 15 (August 1, 2023)** |
| "[T]he Assistant United States Attorney, Lesley Wolf, told us . . . a lot of evidence in our investigation would be found in the guest house of former Vice President Biden, but said there is no way we will get that approved." (Shapley Tr. at 14-15)<br><br>"Based on guidance provided by the prosecutors on a recurring basis to not look into anything related to President Biden, there is no way of knowing if evidence of other criminal activity existed concerning Hunter Biden or President Biden." (Shapley Tr. at 16-17)<br><br>"There were multiple times where Lesley Wolf said that she didn't want to ask questions about dad. And dad was kind of how we referred to him. We referred to Hunter Biden's father, you know, as dad." (Shapley Tr. at 119) | "Mr. Shapley also appeared on Fox News and discussed Mr. Biden, stating: 'They can go talk to the individuals involved and they can get to the bottom of it because every time that we needed to ask questions about President Biden's involvement in relation to the business dealings, we just weren't allowed to do that.'" (¶ 45) |
| "[T]he night before, December 7th, 2020, I was informed that FBI headquarters had notified Secret Service headquarters and the transition team about the planned actions the following day. This essentially tipped off a group of people very close to President Biden and Hunter Biden and gave this group an opportunity to obstruct the approach on the witnesses." (Shapley Tr. at 19) | "Mr. Shapley alleged that FBI General Counsel, Jason Jones 'was given a letter the Sunday before [his July 17 deposition before the House Oversight Committee] from DOJ basically telling him not to talk. I know that he could have confirmed additional material facts on this investigation. And he did confirm the FBI headquarters notifying the transition team and Secret Service.'" (¶ 45) |
| **Ways and Means June 22, 2023 Release** | **Alleged Disclosure 16 (August 11, 2023)** |
| "I am blowing the whistle because the Delaware U.S. Attorney's Office, Department of Justice Tax, and Department of Justice provided preferential treatment and unchecked conflicts of interest in an important and high-profile investigation of the President's son, Hunter Biden." (Shapley Tr. at 10) | "Mr. Shapley again went on CNN's 'The Source' with Kaitlan Collins and repeated many of his prior comments, stating again that Mr. Biden was 'provided preferential treatment'" (¶ 46) |
| "[T]he Delaware U.S. Attorney's Office . . . provided preferential treatment . . . . If search warrants or witness interviews or document requests that include the actual subjects' names are not allowed, for example, that is simply a deviation from the normal process that provided preferential treatment, in this case to Hunter Biden. The case agent on this case is one of the best agents in the entire agency. Without his knowledge and persistence, DOJ would have prevented the investigative team from collecting enough evidence to make an informed assessment . . . . I am alleging, with evidence, that DOJ provided preferential treatment, slow-walked the investigation . . . ." (Shapley Tr. at 10-11) | "'[the United States Attorney's Office] stymied investigative steps.'" (¶ 46) |