**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:23-cv-02711 |
| UNITED STATES INTERNAL REVENUE | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PROPOSED INTERVENORS' JOINT REPLY**
**IN SUPPORT OF THEIR MOTION TO INTERVENE**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I.    Introduction ............................................................................................................. 1

II.   Argument ................................................................................................................. 1

    A.    An Abundance of Legal Authority Supports Intervention for the Initial Purpose of Seeking Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6) ................................. 5

    B.    Shapley and Ziegler Have Standing to Intervene as of Right ............................................ 7

    C.    This Court Can and Should Grant Permissive Intervention ............................................. 14

IV.   Conclusion ............................................................................................................. 16

CERTIFICATE OF SERVICE ......................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Ass'n of Am. Physicians & Surgeons, Inc. v. Food & Drug Admin.*, 539 F. Supp. 2d 4 (D.D.C. 2008) ................................................................................................................................... 5

*Boritz v. United States*, 685 F. Supp. 2d 113 (D.D.C. 2010) ............................................................ 4

*Butler v. Biocore Med. Tech., Inc.*, 348 F.3d 1163 (10th Cir. 2003) ............................................... 10

*Cal. Valley Miwok Tribe v. Salazar*, 281 F.R.D. 43 (D.D.C. 2012) ............................................ 5, 6

*Campaign Legal Ctr. V. Fed. Election Comm'n*, 466 F. Supp. 3d 141 (D.D.C. 2020) ........... 5, 6, 7

*Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129 (1967) ........................................ 9

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.,* 340 F.R.D. 1 (D.D.C. 2021) ............... 1

*Ctr. for Food Safety v. U.S. Env't Prot. Agency*, No. CV 23-1633 (CKK), 2024 WL 1299338 (D.D.C. Mar. 26, 2024) ................................................................................................................ 12

*E.E.O.C. v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621 (D.C. Cir. 1997) ............................. 4

*Fogg v. Ashcroft*, 254 F.3d 103 (D.C. Cir. 2001) ...........................................................................11

*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003) ..................................................2, 10, 11

*Jones v. Prince George's County Maryland* 348 F.3d, 1014 (D.C. Cir. 2003) ............................... 8

*Kyles v. Whitley*, 514 U.S. 419 (1995) .......................................................................................... 12

*Langeman v. Garland*, 88 F.4th 289 (D.C. Cir. 2023) ...................................................................... 4

*Meese v. Keene*, 481 U.S. 465 (1987) ........................................................................................ 2, 10

*Pierre v. Vasquez*, No. 20-51032, 2022 WL 68970 (5th Cir. Jan. 6, 2022) ................................... 10

*Scenic Am., Inc. v. U.S. Dep't of Transp.*, 983 F. Supp. 2d 170 (D.D.C. 2013) ......................... 5, 6

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................................. 10

*Stellar IT Sols., Inc. v. United States Citizenship & Immigr. Servs.*, No. CV 18-2015 (RC), 2019 WL 3430746 (D.D.C. July 30, 2019) ........................................................................... 14

*Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022) ................................................. 10

*Town of Chester v. Laroe Estates, Inc.* (No. 16-605) ........................................................ 7, 8

*United States v. Agurs*, 427 U.S. 97 (1976) ..................................................................... 12

*United States v. Biden*, Case No. 2:23-CR-599-MCS, Doc. 138 (July 24, 2024) ........................... 3

*US Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24 (D.D.C. 2022) .................................................. 10

**Statutes**

26 U.S.C. § 6103 ............................................................................................7, 8, 10, 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................ 2, 3, 5, 6, 15

Fed. R. Civ. P. 24(a)(2) .................................................................................. 2, 8

Fed. R. Civ. P. 24(b)(1)(B) ................................................................................. 1

Fed. R. Civ. P. 26 ........................................................................................ 13

Fed. R. Civ. P. 45 ........................................................................................ 13

Fed. R. Evid. 201 ......................................................................................... 4

## I.    Introduction

IRS-CI Supervisory Special Agent Gary Shapley and IRS-CI Special Agent Joseph Ziegler ("Agents") came forward and made protected disclosures about preferential treatment by the U.S. Department of Justice's Tax Division and the IRS during a criminal investigation of the President's son, Plaintiff Hunter Biden. Both Hunter Biden and the Tax Division oppose their intervention into this case.  For the reasons discussed below, the Agents have demonstrated that they have standing to intervene and, at the very least, this Court should exercise its discretion to grant intervention under the facts of this case.

## II.    Argument

When reading the opposition briefs filed by Hunter Biden and the IRS, it is easy to lose sight of the fact that the proposed intervenors are the two career IRS-CI special agents whose protected whistleblowing disclosures are the subject of this lawsuit. But instead of meaningfully responding to—let alone grappling with—the compelling basis for intervention set forth by Shapley and Ziegler, both opposition briefs largely boil down to the assertion that the Agents lack Article III standing. This argument is wrong because it is premised on an oversimplified and incorrect analysis of the facts of this case and the law. This Court should grant the pending motion to intervene—both because Shapley and Ziegler have Article III standing, and because permissive intervention does not require Article III standing.

*First*, at a minimum, this Court can and should grant permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1)(B), which does not require Article III standing. Shapley and Ziegler have clearly established subject matter jurisdiction, neither party disputes that the motion to intervene is timely, and the proposed intervenors have presented this Court with a claim or defense that has a question of law or fact in common with the main action. *See Ctr. for Biological Diversity v. U.S.*

1

*Fish & Wildlife Serv.,* 340 F.R.D. 1, 5 (D.D.C. 2021) (Sullivan, J.) (establishing these three factors for permissive intervention). Indeed, it is Shapley's and Ziegler's alleged conduct that is the sole subject of this litigation, and the fact that both the plaintiff *and* the defendant object to them having a seat at the litigation table to defend the legality of their conduct underscores precisely why they should be permitted to be there.

*Second*, this Court should grant intervention as of right pursuant to Fed. R. Civ. P. 24(a)(2), because Shapley and Ziegler have Article III standing. It is well settled that harm to reputation is sufficient to establish Article III standing in this context. *See, e.g., Foretich v. United States*, 351 F.3d 1198, 1211 (D.C. Cir. 2003) ("[I]njury to reputation can constitute a cognizable injury sufficient for Article III standing.") (citing *Meese v. Keene*, 481 U.S. 465 (1987)). In this case, the Amended Complaint specifically identifies the two proposed intervenors by name and accuses both of violating federal law. That alone establishes that Shapley and Ziegler have Article III standing because how this Court ultimately decides this case will necessarily impact their reputations. Moreover, Shapley and Ziegler stand to face immediate and concrete employment consequences as a result of what this Court decides in this case, which is also sufficient to satisfy Article III standing as an independent basis.

With respect to intervention, the decision before this Court ultimately turns on a straightforward question: will this litigation concerning whether Shapley and/or Ziegler violated federal tax secrecy laws benefit from having them as intervenor parties and thus permitting them to raise legal and factual issues that the named parties have not raised for this Court's consideration? As evidenced by the proposed Rule 12(b)(6) motion to dismiss that the Agents submitted with their motion to intervene, the answer is self-evident: Shapley and Ziegler will raise important, well-founded legal and factual issues in this action without otherwise interfering with

2

the efficient administration of this litigation. Despite misplaced *ad hominem* attacks on two of their undersigned legal counsel, the five attorneys collectively representing Shapley and Ziegler in this case include three former Department of Justice Tax Division trial attorneys, four former federal prosecutors, one former Associate Counsel in the Office of the White House Counsel, two attorneys who have served in various capacities with the U.S. House of Representatives and the United States Senate, one former Acting Special Counsel at the U.S. Office of Special Counsel, and one former Senate-confirmed member of the U.S. Merit Systems Protection Board— nominated to that position by President Biden, the plaintiff's father.

To be clear, it is not surprising that Hunter Biden opposes intervention, because it would allow this Court to rule on a motion to dismiss the entirety of his lawsuit under Fed. R. Civ. P. 12(b)(6) based on the fact that Shapley's and Ziegler's conduct, even as alleged in the pending Amended Complaint, was legal. As such, in his opposition, Hunter Biden spares no invective in launching misplaced *ad hominem* attacks against Shapley and Ziegler (*e.g.* calling them "disgruntled former case agents" attempting "to insert the same type of inflammatory and irrelevant political rhetoric that caused them to be removed from the agency's investigation of Mr. Biden in the first place") and even against one of Shapley's legal counsel in this case (stating he is somehow "using this matter to raise his public profile as he campaigns for a West Virginia House of Representatives seat"). *See* Doc. 30 at 5 and fn.1. These statements are patently false, and we encourage the Court to consider them as part of a pattern of retaliation and bullying by Plaintiff against the Agents.[1]

---

[1] In Hunter Biden's criminal tax case, the United States District Court for the Central District of California issued an order to show cause "why sanctions should not be imposed [against Hunter Biden's legal counsel in this case] for making false statements in the motion." *See United States v. Biden*, Case No. 2:23-CR-599-MCS, Doc. 138 (July 24, 2024) ("The misstatements in the current motion are not trivial.").

What does stand out is that the IRS opposes intervention in a case where Shapley and Ziegler seek at the outset to secure an appropriate and complete dismissal of this lawsuit *against the IRS*. But instead of taking the position any litigant on the defense side of a civil lawsuit would take, the IRS *opposes dismissal* and purportedly wants "to wait for a fully developed factual record to present its defenses." Doc. 29 at 3.[2] In other words, the IRS *wants* the parties to engage in written discovery and depositions, even if unnecessary to resolve this case in its favor. Thus, it is the IRS's opposition to intervention—not the proposed intervenors attempt to have it dismissed entirely as a matter of law—that threatens to unnecessarily delay and inject irrelevant issues into this case by oddly inviting needless discovery that defendants would normally seek to avoid.

To that end, the IRS mischaracterizes the pending motion to intervene by framing the issue as who "has the right to decide [the IRS's] litigation strategy." *See* Doc. 29 at 1. But unless the IRS's "litigation strategy" is *not* to prevail in this case, it begs the question of why the IRS opposes enabling the two people whose conduct is at issue to have a seat at the table. In fact, against this unique backdrop, the IRS's opposition to intervention underscores that a clear conflict of interest exists, necessitating intervention in the first place: Shapley and Ziegler made protected

---

[2] The IRS further argued: "To resolve either argument [presented by intervenors] would require an extensive review of facts outside the current record, including the entire substance of each media appearance and comparing them with hundreds of pages of Congressional testimony to determine whether the Proposed Intervenors disclosed any non-public information." Govt. Opposition at 13 (DOC. 29). But the IRS fails to recognize that the disclosures of documents and testimony by the House Committee on Ways and Means is all a matter of public record whose accuracy cannot reasonably be questioned. So too are the media appearances referenced in Plaintiff's Amended Complaint. As such, this Court could take judicial notice of those records, and no discovery is needed to determine whether the Agents' statements referenced only those matters already made public by the Committee. *See generally,* Fed. R. Evid. 201 ("(b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). In considering the sufficiency of a complaint's allegations, this Court may consider "the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record." *Boritz v. United States*, 685 F. Supp. 2d 113, 117 (D.D.C. 2010) (citing *E.E.O.C. v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C. Cir. 1997)). This Court "may also consider documents attached to a motion to dismiss if they are referred to in the complaint, integral to the claim(s), and if their authenticity is undisputed." *Langeman v. Garland*, 88 F.4ᵗʰ 289, 292 (D.C. Cir. 2023) (internal citations omitted).

whistleblower disclosures to Congress, and the very parties against whom these two career federal agents blew the whistle (Hunter Biden, the IRS, and the Department of Justice's Tax Division) are collectively asking this Court to prevent them from defending the clear legality of their actions by intervening as parties in this litigation.

A.  **An Abundance of Legal Authority Supports Intervention for the Initial Purpose of Seeking Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

The IRS quibbles with the notion that Shapley and Ziegler seek this Court's consideration of a motion to dismiss this lawsuit, claiming it infringes on the Tax Division's ability to control its litigation strategy. But in this Circuit and even in this courthouse, motions to intervene for the purpose of filing a motion to dismiss are regularly granted. *See, e.g.*, *Campaign Legal Ctr. V. Fed. Election Comm'n*, 466 F. Supp. 3d 141, 148–50 (D.D.C. 2020); *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 983 F. Supp. 2d 170, 173 (D.D.C. 2013); *Cal. Valley Miwok Tribe v. Salazar*, 281 F.R.D. 43, 48 (D.D.C. 2012); *Ass'n of Am. Physicians & Surgeons, Inc. v. Food & Drug Admin.*, 539 F. Supp. 2d 4, 9 (D.D.C. 2008) (all considering Rule 12(b)(6) motions filed by intervenor-defendants). In other words, the fact that Shapley and Ziegler seek this Court's consideration of a motion to dismiss under Rule 12(b)(6) is not a reason to deny their motion to intervene; instead, this Court should grant the motion to intervene and consider the motion to dismiss on the merits after all parties have had an opportunity to respond.

In *Scenic America*, for example, a plaintiff filed a lawsuit against four federal defendants: the U.S. Department of Transportation, the Federal Highway Administration, the Secretary of Transportation, and the Federal Highway Administrator. *Scenic Am., Inc.*, 983 F. Supp. 2d at 172. The district court permitted a private trade group to intervene. *Id.* (describing the intervenor as being "in the passenger seat" of the litigation). The federal defendants filed a motion to dismiss

the case—and, on entirely separate and independent grounds, the intervenor filed a different motion to dismiss. *Id*. at 173. Judge Boasberg considered both motions to dismiss on the merits and denied them. *Id*. ("For the foregoing reasons, the Court will deny Defendants' *and Intervenor's* Motions to Dismiss Plaintiff's Complaint.") (emphasis added). Shapley and Ziegler cite *Scenic Am., Inc.* for this proposition in their motion to intervene; however, neither Hunter Biden nor the IRS even acknowledged this legal authority in their responses. *See* Docs. 29 and 30.

Similarly, in *California Valley Miwok Tribe*, Judge Roberts granted a motion to intervene as of right and ordered the intervenor's proposed motion to dismiss under Rule 12(b)(6) to be coordinated with the resolution of the parties' other motions pending before the court. *Cal. Valley Miwok Tribe*, 281 F.R.D. at 48. Neither Hunter Biden nor the IRS addressed this decision. *See* Docs. 29 and 30. And in *Association of American Physicians*, Judge Bates granted an intervenor's motion to dismiss the case under Rule 12(b)(6). *Ass'n of Am. Physicians & Surgeons, Inc.*, 539 F. Supp. 2d at 9.

Once again, no response from the plaintiff or the defendant was put forth. *See* Docs. 29 and 30.  Instead, in their respective responses, Hunter Biden cherry-picks a single case that is cited in the pending motion to intervene on this legal issue: *Campaign Legal Ctr. v. Fed. Election Comm'n*. In a footnote, the plaintiff attempts to distinguish this case by arguing the circumstances are different because here, "a government-defendant is ready, willing, and able to defend the lawsuit and there is no risk of a default judgment." *See* Doc. 30 at 7. And the IRS broadly asserts throughout its brief that because it is defending this case, no one should be permitted to intervene. But the analysis of *Campaign Legal Ctr. v. Fed. Election Comm'n.* misses the mark. In *Association of American Physicians*, for example, a government agency—the FDA—was "ready, willing, and able to defend the lawsuit." *Id*. And the same is true with *Scenic America* (four federal

governmental defendants) and *California Valley Miwok Tribe* (the U.S. Department of the Interior). In other words, whether a governmental defendant is fully participating in litigation does not factor into whether a separate individual or entity may intervene. But furthermore, as in *Campaign Legal Center*, the intervenors here seek to intervene to defend the legality of their actions by filing appropriate pre-trial motions; the IRS will not adequately defend their interests, as evidenced by the fact that the IRS did not raise the public domain exception for this Court's consideration or file an appropriate motion to dismiss the Section 6103 count despite the law warranting such a motion.

The bottom line is this: the legal authority that is on point weighs heavily in favor of permitting Shapley and Ziegler to intervene so that, *inter alia*, this Court can consider grounds to dismiss this lawsuit at this stage in the litigation and so that, if this litigation progresses, they can continue to raise important factual and legal issues for the Court's consideration that have not been raised by either party.

**B.      Shapley and Ziegler Have Standing to Intervene as of Right**

Almost the entirety of both opposition briefs focuses on whether Shapley and Ziegler have Article III standing. And while both parties cite a number of cases in support of broad legal propositions, neither party meaningfully recognizes precisely *why* and *how* Shapley and Ziegler have Article III standing based on the controlling legal precedent and the unique facts of this case.

As a threshold matter, neither the IRS nor Hunter Biden engage with the fact that the only way to square the Supreme Court's decision in *Town of Chester* with its disposition is to recognize that intervenors do *not* need to establish standing when they seek the same relief as a party with standing. In fact, this is *precisely* what the United States itself argued to the Supreme Court in an *amicus* brief in *Town of Chester*: "Other actions—such as presenting written or oral legal arguments supporting the claims of the original parties—would not require such a showing [of

Article III standing].” *See* Brief for the United States as Amicus Curiae Supporting Petitioner, *Town of Chester v. Laroe Estates, Inc.* (No. 16-605) at 16. In this case, the government appears to have taken the exact opposite position that it did before the Supreme Court. To be fair, there is no doubt that there exists language in binding legal precedent to suggest that, for intervention as of right, an intervening defendant must establish Article III standing.

Nevertheless, this Court need not even resolve the threshold issue of whether Shapley and Ziegler are required to establish Article III standing. Both the IRS and Hunter Biden argue extensively that these two federal agents cannot individually be sued for alleged violations of Section 6103 and that their injuries are no more than speculative. But as set out in the pending motion to intervene, the test is *not* whether they could have initiated the lawsuit or been named as a defendant in the first place. “In a motion to intervene under Rule 24(a)(2), the question is not whether the applicable law assigns the prospective intervenor a cause of action.” *Jones v. Prince George’s County, Maryland*, 348 F.3d 1014, 1017–18 (D.C. Cir. 2003). “As the Rule’s plain text indicates, intervenors of right need only an ‘interest’ in the litigation—not a ‘cause of action’ or ‘permission to sue.’” *Id*. (quoting Fed. R. Civ. P. 24(a)(2)). It is difficult to imagine more concrete injuries to establish Article III standing than those injuries Shapley and Ziegler face here: injuries to their reputations, their careers as federal law enforcement agents, and retaliatory and adverse collateral consequences that have already been initiated against them *by the IRS*—the defendant in this lawsuit.

Instead of addressing the concrete ways in which this litigation will continue to have a direct impact on Shapley and Ziegler, the IRS relies on a generic slippery slope argument: “If these potential harms are sufficient injuries to intervene, *all* federal employees accused of violating [Section] 6103 possess standing to intervene in an action against the United States under [Section]

7431(a)." Doc. 29 at 6. The reality is federal employees accused of violating the tax secrecy statute may very well have standing to intervene in a civil action against the United States. But many federal employees may not. It depends upon the specific facts of those cases, which are not relevant here. What is relevant is that this case is a once-in-a-generation fact pattern: IRS agents blow the whistle against a federal investigation into the sitting President's son, subsequently share with media outlets facts from the investigation that have already been disclosed by the U.S. House of Representatives Committee on Ways and Means by way of its website, and the target of the investigation sues the IRS under the theory that the two whistleblowers violated his tax secrecy and privacy rights. The fact that the IRS fails to acknowledge the unique backdrop of this case and instead relies on broad slippery slope arguments takes the wind out of the sails of its opposition to intervention.

In *this* case, the two well-respected career federal law enforcement agents blew the whistle against the IRS (the investigating agency), the Department of Justice's Tax Division, and the U.S. Attorney for the District of Delaware (the prosecuting authorities). The Agents' claims established that the plaintiff in this case was receiving preferential treatment because he is the sitting President's son. Since making these protected whistleblower disclosures, the Agents have been attacked—including by counsel for Plaintiff. As a result, the Agents clearly have standing to intervene to defend the legality of their conduct and their own reputations when the two entities on which they blew the whistle are the defendant (the IRS) and the defendant's counsel (the Department of Justice's Tax Division).

To be sure, the Supreme Court has long made clear that, under Rule 24(a)(2), if a proposed intervenor "would be substantially affected *in a practical sense* by the determination made in an action, he should, as a general rule, be entitled to intervene." *Cascade Nat. Gas Corp. v. El Paso*

*Nat. Gas Co.*, 386 U.S. 129, 134 n.3 (1967) (emphasis added). In this case, Shapley and Ziegler have raised at least three concrete ways this case would affect them "in a practical sense." *Id.*

*First*, it is well-settled that injury to a party's reputation is sufficient to confer Article III standing. *See e.g.*, *Foretich*, 351 F.3d at 1211 ("[I]njury to reputation can constitute a cognizable injury sufficient for Article III standing.") (citing *Meese*, 481 U.S. at 465); *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146, 1151 (7th Cir. 2022) ("Intangible harms are concrete if the plaintiff's alleged injury bears a 'close relationship' to the sort of harms traditionally recognized by American courts, *such as reputational harm*.") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330(2016)) (emphasis added); *see also Strickland v. United States*, 32 F.4th 311, 353 (4th Cir. 2022) ("The Supreme Court has acknowledged a constitutional liberty interest in one's reputation."); *Pierre v. Vasquez*, No. 20-51032, 2022 WL 68970, at *2-3 (5th Cir. Jan. 6, 2022) ("[T]he reputational harm associated with registering as a sex offender is adequate to support standing."); *Butler v. Biocore Med. Tech., Inc.*, 348 F.3d 1163, 1168-69 (10th Cir. 2003) ("[D]amage to an attorney's professional reputation is a cognizable and legally sufficient injury.").

In this case, the Amended Complaint identifies Shapley and Ziegler by name, accuses them both of violating federal laws, and then asks for a ruling that necessarily presupposes that they violated the federal tax secrecy statute, 26 U.S.C. § 6103. Thus, Shapley's and Ziegler's basis for Article III standing is even more compelling than the routine non-profit or trade association where courts correctly find standing even though the intervening parties are not even named—explicitly or implicitly—in the lawsuit. To say the resolution of this case will affect Shapley's and Ziegler's reputations is an understatement. Indeed, even in the defamation context, it is defamation *per se*— whereby reputational harm is presumed as a matter of law—when a defendant "has falsely accused the plaintiff of particularly bad conduct, *such as committing an unlawful act* . . . ." *US Dominion,*

10

*Inc. v. Byrne*, 600 F. Supp. 3d 24, 30 (D.D.C. 2022).  And that is precisely what the plaintiff has done in this case: falsely accuse Shapley and Ziegler of committing unlawful acts. As that is a *per se* reputational injury for purposes of defamation, it should certainly be sufficient to establish an injury to their reputations. *See e.g.*, *Foretich*, 351 F.3d at 1211 ("[I]njury to reputation can constitute a cognizable injury sufficient for Article III standing."). This alone establishes Article III standing.

*Second*, the fact that an adverse finding in this case can impact employment action is sufficient to establish standing. The IRS tiptoes around this point by asserting that Shapley and Ziegler would be entitled to administrative due process before the IRS could take adverse employment actions against them. But that is not the real question. Based on black-letter Supreme Court precedent, the real question is whether they would be harmed "in a practical sense" by a federal court's finding that they violated Section 6103 while employed as IRS-CI special agents. In this case, a decision by a federal district court that Shapley and/or Ziegler violated Section 6103 could be relied on by an agency factfinder and deciding official in any disciplinary case. Critically, the IRS does not dispute that such a finding could at the very least be *considered* in an administrative employment proceeding; in actuality, the U.S. Merit Systems Protection Board would give it great weight, and their decisions are subject to substantial deference by the courts. *See, e.g., Fogg v. Ashcroft*, 254 F.3d 103, 112 (D.C. Cir. 2001) (court's review of U.S. Merit Systems Protection Board is subject to substantial deference, "upsetting it only if it was arbitrary and capricious or an abuse of discretion, or if it was unsupported by substantial evidence"). That is sufficient to establish standing.

*Third*, if this Court were to find Shapley and Ziegler violated federal tax secrecy laws, that finding would necessarily interfere with their ability to perform their jobs. Given the nature of their

employment—investigating federal criminal cases with an expectation that they are material witnesses in every case they investigate—an adverse finding by this Court regarding Shapley's and Ziegler's conduct *will* inevitably lead prosecutors to make *Giglio* and *Henthorn* disclosures in cases in which they are witnesses. This will necessarily impact their abilities to do their jobs and to proceed, and advance, in their careers.  Moreover, once federal law enforcement agents are placed on the "Henthorn" list, so to speak, they are typically reassigned away from investigations where they could be called as witnesses in order to avoid such a circumstance.

Remarkably, the Department of Justice attempts to sidestep this cognizable, concrete injury by inaccurately stating Shapley and Ziegler "acknowledge this theoretical harm is speculative." *See* Doc. 29 at 7. But that is not what Shapley and Ziegler argue—and it is certainly not true. Rather, Shapley and Ziegler acknowledge (as they must) that a district court in any given case may or may not allow impeachment on these grounds, but that binding Supreme Court precedent (*United States v. Agurs*, 427 U.S. 97 (1976) and *Kyles v. Whitley*, 514 U.S. 419 (1995)) make disclosure a certainty by an ethical prosecutor. In other words, the law requires prosecutors to make such disclosures. This strikes at the heart of the issue now before this Court: Shapley and Ziegler have standing because they will suffer actual injuries traceable to the pending Amended Complaint. *Ctr. for Food Safety v. U.S. Env't Prot. Agency*, No. CV 23-1633 (CKK), 2024 WL 1299338, at *3 (D.D.C. Mar. 26, 2024) (finding standing is "essentially self-evident" where a party's property "is the object of the action at issue" and finding an injury in fact where a party "stands to suffer a substantial economic injury"). Shapley's and Ziegler's future employment *with the IRS, or any other law enforcement body,* and their respective ability to continue doing their jobs, would be adversely affected by a finding by a federal court that they violated the federal tax

secrecy statute. Thus, they have standing to defend the legality of their conduct as they seek to do in this case, and there is no good reason the IRS would want to prevent them from doing so.

Finally, there is a fourth ground for Shapley's and Ziegler's Article III standing in this case, and it arises directly from the opposition briefs filed by Hunter Biden and the IRS: both the plaintiff and the defendant want to proceed to discovery in this case, and that provides an even more concrete reason Shapley and Ziegler have standing to participate in this litigation. As intervenor parties, they would have the opportunity to raise legal and factual issues, objections, and defenses that would impact the scope of discovery; as third-party witnesses, on the other hand, they would be more limited under the Federal Rules of Civil Procedure. *Compare, e.g.,* Fed. R. Civ. P. 26 and 45. In other words, there are different arguments an intervening party can raise with respect to discovery as compared to a third-party witness—and different times in the litigation at which those arguments may be raised. *See id*.

Ultimately, Shapley and Ziegler have Article III standing—and, by extension, a legally cognizable interest in this litigation. They are necessarily at the heart of this litigation because it is *their conduct* that is alleged to have violated federal law in the Amended Complaint. To be clear, this lawsuit is profoundly frustrating to them because they complied with federal law, put duty over self throughout the process, and had the courage to disclose the extent to which the IRS and the Department of Justice's Tax Division gave preferential treatment to Hunter Biden. Now, they seek to intervene as parties in this lawsuit to defend their actions as lawful—arguments the IRS *should* be making but inexplicably is *not* making. But Hunter Biden, the Department of Justice's Tax Division, and the IRS all curiously ask this Court to prevent them from having a seat at the litigation table while fully expecting they will be critical witnesses in this proceeding.

13

### C.   This Court Can and Should Grant Permissive Intervention

Both Hunter Biden and the IRS correctly and expressly recognize that this Court has the discretion to grant Shapley and Ziegler permissive intervention in this action. To that end, Hunter Biden argues that the agents' "conduct makes it clear that they intend to turn this lawsuit into a circus, starring themselves." Doc. 30 at 11. And the IRS argues permissive intervention will cause "unnecessary delay" and allow Shapley and Ziegler "to inject irrelevant issues into this case." Doc. 29 at 11. This Court should reject both arguments.

Hunter Biden asks this Court to consider this motion to intervene similarly to the way in which it considered—and denied—a motion to intervene in *Stellar IT Sols., Inc. v. United States Citizenship & Immigr. Servs.*, No. CV 18-2015 (RC), 2019 WL 3430746, at *1 (D.D.C. July 30, 2019). But what happened in *Stellar IT Sols., Inc.* is a far cry from this case.  In *Stellar IT Sols., Inc.*, an entity that was denied an H-1B visa did not bring its own lawsuit under the Administrative Procedure Act against U.S. Citizenship and Immigration Services, and instead sought "to intervene in a suit that was previously filed by another company involving a different H-1B petition." *Id*. This Court understandably concluded that "intervention under these circumstances is inappropriate because it would result in undue delay, and because the two companies' cases are factually distinct." *Id*. In this case, unlike in *Stellar IT Sols, Inc.*, Shapley and Ziegler are not trying to litigate their claims in the context of a lawsuit that has nothing to do with them. Rather, this lawsuit is solely predicated on the theory that Shapley and Ziegler violated federal tax secrecy laws. The cases are not "factually distinct." *Id*. There is one case with one set of facts.

Indeed, it is not Shapley or Ziegler who "intend to turn this lawsuit into a circus, starring themselves." Doc. 30 at 11. It is Hunter Biden who is the ringmaster of this lawsuit, which may very well be a circus—but the show need not go on if Shapley and Ziegler can intervene and move

for dismissal, because even the allegations as pled are not violations of the tax secrecy statute. No discovery is necessary if the court can consider and grant intervenors' motion to dismiss now, because all the disclosures complained of were authorized as a matter of law.

Critically, Shapley and Ziegler moved to intervene to, at the outset, inject a profoundly relevant issue into this case that had not previously been raised by Hunter Biden or the IRS: that their disclosures that are at the heart of this litigation were legally protected, that their subsequent statements to the media fall within the public domain exception, and that the relevant legal authority calls for dismissal. Those are each questions of law that should be decided by the court in the Defendant's favor on the current record—but each of the current parties ignored them. As set out in their proposed Rule 12(b)(6) motion, Shapley and Ziegler cited an abundance of important legal authority that neither the plaintiff nor the defendant brought to this Court's attention, seeking relief that would benefit the named defendant (the IRS). But instead of even acknowledging this legal authority, the IRS takes issue with Shapley's and Ziegler's position that the Department of Justice's Tax Division has a conflict of interest in adequately representing the interests of the proposed intervenors in this case. The bottom line is that granting the pending motion to intervene would not cause "unnecessary delay" or "inject irrelevant issues into this case"; rather, it would cause this Court to consider at the outset whether the plaintiff has pleaded a viable cause of action in the first place. When coupled with the fact that the IRS has *already* retaliated against Shapley and Ziegler, it is hardly a stretch to say the IRS has an inherent and institutional conflict of interest that at the very least should be remedied by permitting Shapley and Ziegler to intervene and to raise appropriate arguments for this Court's consideration. Indeed, at its core, all that granting the pending motion does is enable this Court to *consider* arguments not raised by Hunter Biden or the IRS.

## IV.     Conclusion

Based on the foregoing and based on the arguments raised in the motion to intervene, Shapley and Ziegler ask this Court to grant the pending motion.

Dated: August 7, 2024                             Respectfully submitted,

                                                  /s/ Mark D. Lytle
                                                  Mark D. Lytle (D.C. Bar No. 1765292)
                                                  **NIXON PEABODY LLP**
                                                  Mark D. Lytle
                                                  799 9th Street NW, Suite 500
                                                  Washington, DC 20001
                                                  (202) 585-8000
                                                  mlytle@nixonpeabody.com

                                                  /s/ Tristan L. Leavitt
                                                  Tristan L. Leavitt (Id. Bar No. 8801)
                                                  **EMPOWER OVERSIGHT**
                                                  Tristan L. Leavitt (admitted *pro hac vice*)
                                                  11116 Fairfax Boulevard, Suite 500 #1076
                                                  Fairfax, VA 22030
                                                  tl@empowr.us

                                                  /s/ Gregory P. Bailey
                                                  Justin K. Gelfand (D.C. Bar No. 90023996)
                                                  Gregory P. Bailey (D.C. Bar No. 1781925)
                                                  **MARGULIS GELFAND, LLC**
                                                  Justin K. Gelfand (admitted *pro hac vice*)
                                                  Gregory P. Bailey
                                                  7700 Bonhomme Avenue, Suite 750
                                                  St. Louis, MO 63105
                                                  (314) 390-0234
                                                  (314) 485-2264
                                                  justin@margulisgelfand.com

                                                  *Attorneys for Gary Shapley*

/s/ *John P. Rowley III*
John P. Rowley, III (D.C. Bar No. 392629)
**SECIL LAW PLLC**
John P. Rowley, III
1701 Pennsylvania Ave., N.W., Suite 200
Washington, D.C. 20006
(202) 642-0679
jrowley@secillaw.com

*Attorney for Joseph Ziegler*

17

**CERTIFICATE OF SERVICE**

I certify that on August 7, 2024, I filed the foregoing document with the Clerk of Court

using the CM/ECF electronic filing system, which will send notification to all counsel of record.

/s/ *Gregory P. Bailey*
Gregory P. Bailey (D.C. Bar No. 1781925)
**MARGULIS GELFAND, LLC**
Gregory P. Bailey
7700 Bonhomme Avenue, Suite 750
St. Louis, MO 63105
(314) 390-0234
(314) 485-2264
greg@margulisgelfand.com